## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

William Kelly

     Plaintiff,

v.

Corizon Health, Inc., et al.

     Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

---

MARGOLIS & CROSS
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
*Attorneys for Plaintiff*
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590
ian@lawinannarbor.com

TANOURY, NAUTS, MCKINNEY, & DWAIHY, PLLC
Paul J. Dwaihy (P66074)
Christopher Kwiecien (P77878)
Attorneys for Todd Bostwick, M.D.
38777 Six Mile Rd., Ste. 101
Livonia, MI 48152
(313) 964-4500
Paul.dwaihy@tnmdlaw.com
Christopher.kwiecien@tnmdlaw.com

CHAPMAN LAW GROUP
Jonathan C. Lanesky (P59740)
Nicholas B. Pillow (P83927)
*Attorneys for Corizon Health, Inc.,*
*Quality Correctional Care of Michigan,*
*Richard Bohjanen, M.D.; Ravi Yarid, D.O.;*
*Danielle Alford, P.A., Joshua Kocha, P.A.,*
*and Leila Ghasemi, N.P.*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
jlanesky@chapmanlawgroup.com
npillow@chapmanlawgroup.com

---

## PLAINTIFF'S RESPONSE TO DEFENDANT CORIZON HEALTH INC.'S MOTION FOR SANCTIONS, DISMISSAL, AND TO HOLD HIS ATTORNEYS IN CONTEMPT

Plaintiff William Kelly, by and through his attorneys, Laurence H. Margolis and Ian T. Cross, states the following for his Response to Defendant Corizon Health, Inc.'s Motion for Sanctions:

1. Admitted.

2. Admitted.

3. Admitted.

4. Admitted.

5. Admitted.

6. Admitted.

7. Admitted.

8. Denied.

9. Denied. All of the information in Paragraphs 83-87 of Plaintiff's Complaint was already publicly available, already known to Plaintiff's counsel, and in fact, <u>was pled in the Amended Complaint in the *Jackson* matter</u> before any discovery was exchanged. The information in Paragraphs 88-90 was also obtained from publicly-available documents, and <u>is not even contained in the confidential materials that Defendant alleges Plaintiff's counsel gleaned it from.</u>

10. Denied. All of the information has long been publicly available. Some of the information is not even contained in Defendant's confidential document.

11. Denied. Plaintiff's counsel did not violate a protective order. All of the information in Paragraphs 83-90 of Plaintiff's Complaint has long been publicly available.

12. Denied. Plaintiff's Complaint contains no information that was not already publicly available.

13. Plaintiff denies that he or his counsel violated a protective order.

14. Plaintiff denies that he or his counsel violated a protective order.

15. This paragraph states a legal conclusion to which no response is required. The cited case speaks for itself.

16. Denied. Defendant has put forth no evidence that Plaintiff's counsel violated a protective order, Defendant's allegations are demonstrably false, and Defendant knew or should have known that its allegations were false at the time it filed this motion. Imposition of sanctions on Plaintiff or his counsel is wholly inappropriate under these circumstances. Plaintiff's counsel have already been forced to expend significant time and resources responding to this frivolous motion.

17. Admitted.

*/s/Ian T. Cross*
Ian T. Cross (P83367)
Attorney for Plaintiff
402 W. Liberty St.
Ann Arbor MI 48103
(734) 994-9590
ian@lawa2.com

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

William Kelly,

      Plaintiff,

v.

Corizon Health, Inc., et al.

      Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

---

## BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT CORIZON HEALTH INC.'S MOTION FOR SANCTIONS, DISMISSAL, AND TO HOLD HIS ATTORNEYS IN CONTEMPT

# TABLE OF CONTENTS

**SECTION**                                                                          **PAGE NO.**

**Table of Contents**…………………………………...………                **ii.**

**Index of Exhibits** …………………………………………                **iii.**

**Statement of Issues Presented**………...……………………………             **v.**

**Table of Authorities**…………………………...……….…………            **vi.**

**Introduction**……………………………………………..                **1**

## <u>Argument</u>

**I)** Defendants' assertion that Plaintiff's counsel learned the information contained in paragraphs 83-90 of Plaintiff's Complaint from the 2017 UM Manual is demonstrably false……………………………….…....             **1**

**II)** Plaintiff's counsel could not have learned the information pled in Paragraphs 88-89 from the 2017 UM Manual, because this information is not even contained in the 2017 UM Manual..………….………...……             **6**

**III)** All of the information pled in Paragraphs 83-90 of Plaintiff's Complaint has long been publicly available..………..…………...……             **8**

**IV)** Defendant Corizon leveled its baseless accusation in a manner that forced Plaintiff's counsel to waste considerable time scrutinizing every sentence of a 588-page exhibit..……………………………………            **14**

**Conclusion**…………………………………………………..                **17**

<u>INDEX OF EXHIBITS</u>

**Exhibit A**: *Amended Complaint in Jackson v. Corizon Health, Inc., filed January 3, 2020*

**Exhibit B:** *Email from Plaintiff's Counsel to Corizon's Counsel, April 5, 2021*

**Exhibit C**: *Plaintiff's Supplemental Response to Defendant Corizon's Request to Produce #14 in Jackson v. Corizon Health, Inc., April 5, 2021*

**Exhibit D**: *Excerpt from Corizon's Statement of Work Contract Activities for Michigan DOC Contract (Public Copy) October 23, 2020*

**Exhibit E**: *Excerpt from Corizon's Proposal to the State of Maryland, May 10, 2017*

**Exhibit F:** *Excerpt from Corizon's Proposal to the State of Kansas, September 16, 2013*

**Exhibit G**: *Excerpt from Corizon's Proposal to the State of Tennessee, November 8, 2012*

**Exhibit H**: *Excerpt from Corizon's Proposal to the State of Indiana, February 1, 2021*

**Exhibit I**: *Excerpt of Deposition of Corizon RMD Dr. Robert Lacy in Spiller v. Stieve, et. al.*

**Exhibit J:** *Excerpt of Deposition of Corizon UMMD Dr. Keith Papendick in Wright v. Corizon Health, Inc. et. al.*

**Exhibit K**: *Excerpt of Deposition of Corizon UMMD Dr. Keith Papendick in Lashuay v. DeLine. et. al.*

**Exhibit L**: *Excerpt of Deposition of Corizon SMD Dr. Albert Maier in Hoffer, et. al. v. Jones, et. al.*

**Exhibit M**: *Introduction to Utilization Management*

**Exhibit N:** *Definition of Medically Necessary Care*

**Exhibit O**: *Michigan DOC and Quality Correctional Care of Michigan, PC Specialty Consultation (407) Standard Operating Protocol*

**Exhibit P**: *Corizon Internal Documents Filed in Lashuay v. DeLine, et. al. on November 15, 2019*

**Exhibit Q**: *Corizon (Provider Info) Manual Chapter 3: Dealing with Programs, Rules, and People*

**Exhibit R**: *Corizon (Provider Info) Manual Chapter 5: Medical Practice in the Correctional System*

**Exhibit S**: *Corizon (Provider Info) Manual Chapter 8: Medical Necessity Defined*

**Exhibit T**: *Corizon Health Policy and Procedure – Authorization for Outpatient Referrals – All States, filed November 15, 2019 in Lashuay v. DeLine, et. al.*

**Exhibit U**: *Corizon "Nursing Within the Walls" Training Manual, available at CorizonNewHires.com (last accessed May 15, 2022)*

**Exhibit V**: *Excerpt of Deposition of Corizon RMD Dr. Steven Bergman, filed by Plaintiff's Counsel on February 5, 2020 in Jackson v. Corizon Health, Inc.*

## <u>STATEMENT OF ISSUES PRESENTED</u>

1. Has all of the information pled in Paragraphs 83-90 of Plaintiff's Complaint long been publicly available?

> Plaintiff Answers: **YES**
> Defendant May Answer: **NO**

2. Did Plaintiff's counsel plead, and file publicly-available documents containing, the same information pled in Paragraphs 83-87 of Plaintiff Kelly's Complaint in the previous action, *Jackson v. Corizon Health Inc.,* in January and February of 2020 before any discovery was exchanged between the parties?

> Plaintiff Answers: **YES**
> Defendant May Answer: **NO**

3. Is the information pled in Paragraphs 88-90 of Plaintiff's Complaint even contained in Defendant Corizon's discovery materials?

> Plaintiff Answers: **NO**
> Defendant May Answer: **YES**

4. Did Plaintiff's counsel obtain documents containing the information in Paragraphs 88-89 of Plaintiff's Complaint via a FOIA request in March of 2021, <u>and then produce those documents to Defendant's counsel during discovery in the *Jackson* matter,</u> such that Defendant Corizon actually knew how Plaintiff's counsel obtained the information when it filed this motion?

> Plaintiff Answers: **YES**
> Defendant May Answer: **NO**

## TABLE OF AUTHORITIES

1. *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795 (6th Cir. 2017)……...14

2. *Jennings v. Bodrick,* U.S. Dist. LEXIS 26014 (S.D. Ohio 2010)…………….....15

3. *Logan v. Twp. of W. Bloomfield*, U.S. Dist. LEXIS 127692
(E.D. Mich. 2018)……………………………………………………………....16

4. *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585 (6th Cir. 1987)……………….14

5. *Paterek v. Vill. of Armada*, 801 F.3d 630, 643 (6th Cir. 2015)……………......1

6. *Sanchez-Figueroa v. Banco Popular de Puerto Rico*, 527 F.3d 209
(1st Cir. 2008)…………………………………………………………………….15

**INTRODUCTION**

At the very onset of this litigation, Defendant Corizon seeks to hold Plaintiff's counsel in contempt. On a motion for civil contempt, "the moving party bears the burden of proof in showing by clear and convincing evidence that the allegedly contumacious party violated a prior order of the district court." *Paterek v. Vill. of Armada*, 801 F.3d 630, 643 (6th Cir. 2015). Not only has Corizon failed to put forth any evidence that Plaintiff's counsel violated a protective order; its allegations are blatantly and demonstrably false. Further, Defendant Corizon knew or should have known that its allegations were false at the time it filed this motion.

**ARGUMENT**

I.     **Defendants' assertion that Plaintiff's counsel learned the information contained in paragraphs 83-90 of Plaintiff's Complaint from the 2017 Corizon Utilization Management Manual is demonstrably false.**

Defendant alleges that Plaintiff's counsel must have learned the information contained in Paragraphs 83-90 of Plaintiff's Complaint (**ECF No. 1, PageID.23-25**) from the 2017 Corizon Utilization Management Manual. But a cursory review of the pleadings in the *Jackson* matter demonstrates that Plaintiff's counsel already knew this information long before any documents were produced in that case. Plaintiff's counsel filed an Amended Complaint in *Jackson v. Corizon Health, Inc.*

1

on January 3, 2020. (**2:19-cv-13382 ECF No. 12, PageID.183-202**) (**Ex. A**). Defendant admits that it produced the 2017 Corizon Utilization Management Manual to Plaintiff's counsel over ten months later, on November 13, 2020. (**ECF No. 14, PageID.239**).  A comparison of the allegedly improper allegations in this case, Paragraphs 83-90 of the Complaint (**ECF No. 1, PageID.23-24**), with the allegations pled on January 3, 2020 in the Amended Complaint in *Jackson v. Corizon Health, Inc.* demonstrates that Plaintiff's counsel were aware of, and published, similar details of Corizon's Utilization Management process long before Corizon ever produced documents to Plaintiff's counsel. Compare the following paragraphs from each pleading:

## A) Paragraph 83:

> 83.At all times relevant to this action, Defendant Corizon's medical providers at Michigan prisons were allowed to order a prisoner transported to the ER in the case of a medical emergency. But they were not allowed to make any referrals to specialists without seeking and obtaining prior authorization from Defendant Corizon's Utilization Management department.

*Kelly v. Corizon Health, Inc*., (**ECF No. 1, PageID.23)**.

Compare with paragraphs 30-31 of the Amended Complaint in *Jackson*:

2

30. The MPs employed by Corizon are typically Physician's Assistants or Nurse Practitioners. Corizon's MPs cannot refer a prisoner for any off-site care, such as appointments with specialists, MRIs, surgeries, etc. without obtaining prior approval from Corizon's Utilization Management office in Lansing, Michigan.

31. When a Corizon MP wants to refer a prisoner to a specialist or surgeon, the MP fills out a "407 request" detailing the MP's clinical findings and reasons for requesting the referral.

*Jackson v. Corizon Health, Inc.,* (**2:19-cv-13382 ECF No. 12, PageID.189-190**).

## B) Paragraph 84:

84.The purpose of Defendant Corizon's prior-approval Utilization Management process for specialist referrals was to limit the volume of specialty care provided to prisoners, in order to save money for Defendant Corizon.

*Kelly v. Corizon Health, Inc.,* (**ECF No. 1, PageID.23**).

Compare with Paragraphs 78 and 83 in *Jackson*:

78. Since Defendant Corizon Health, Inc. is a for-profit corporation, and it is paid the same amount per month for each prisoner regardless of the care it provides, Defendant Corizon Health, Inc. has a strong financial incentive to deny medical care to Michigan prisoners whenever possible.

83. Defendant Corizon Health, Inc., through its final decisionmaker Defendant Keith Papendick, refused to reverse Plaintiff's colostomy in order to avoid paying for the procedure, so that it could retain a larger portion of the prisoner healthcare payments it received from the State of Michigan as corporate profit.

3

*Jackson v. Corizon Health, Inc.,* (**2:19-cv-13382 ECF No. 12, PageID.199-200)**.

## C) Paragraph 85:

85. Corizon's Utilization Management staff scrutinized each referral request to determine if the requested service was "medically necessary," meaning necessary to prevent potential loss of life or limb or to necessary to enable the prisoner to complete activities of daily living. Corizon's Utilization Management staff also evaluated whether a less expensive treatment plan could be implemented by the Corizon/Quality Correctional Care of Michigan, P.C. employees on site.

*Kelly v. Corizon Health, Inc*., et. al. (**ECF No. 1, PageID.23**).

Compare with Paragraphs 45 and 46 in *Jackson*:

45. Dr. Papendick also does not approve 407 requests if he finds that "medical necessity" is not demonstrated for the requested treatment.

46. Dr. Papendick considers treatment to be "medically necessary" only if failure to provide the treatment would create risks to life or limb, or would create difficulty with Activities of Daily Living ("ADLs").

*Jackson v. Corizon Health, Inc.,* (**2:19-cv-13382 ECF No. 12, PageID.192**).

## D) Paragraph 86:

86. If Utilization Management staff believed that the requested specialty care could be avoided, they "ATP'd" the request. "ATP" stands for "Alternative Treatment Plan." Utilization Management staff would instruct the on-site

4

provider to administer Utilization Management's "alternative treatment plan" to the inmate, instead of the requested referral to a specialist.

*Kelly v. Corizon Health, Inc*., et. al. (**ECF No. 1, PageID.23-24**).


Compare with Paragraphs 35, 36, and 39 in *Jackson*:

> 35. Dr. Papendick initially has three options for responding to a 407 request: Approve, Alternative Treatment Plan ("ATP"), or Need More Information ("NMI").

> 36. When Dr. Papendick needs more information on a 407, he emails his request for additional information to the on-site treatment team. Once he receives the requested information, typically via email, the 407 request is then either approved or "ATP'd."

> 39. When Dr. Papendick does not approve a 407 request, he must issue an Alternative Treatment Plan to the on-site MP.

*Jackson v. Corizon Health, Inc.,*  (**2:19-cv-13382 ECF No. 12, PageID.191**).


**E) Paragraph 87:**

> 87.Corizon employees at Corizon's Brentwood, Tennessee headquarters monitored specialist-referral activity for the individual primary-care providers working in Michigan prisons, including the number of specialist referrals requested by each medical provider, and the percentage of each provider's requests that were "ATP'd."

*Kelly v. Corizon Health, Inc*., *et. al.* (**ECF No. 1, PageID.24**).


Compare with Paragraph 38 in *Jackson*:

5

38. Corizon's Utilization Management Office for Michigan submits reports to corporate management detailing the number of 407 requests that are approved vs. ATP'd, with breakdowns by facility and by requesting [medical provider]. Dr. Papendick's supervisors base their assessments of his performance, at least in part, on the percentage of 407 requests that he approves.

*Jackson v. Corizon Health, Inc.,* (**2:19-cv-13382 ECF No. 12, PageID.191**).

Because Plaintiff's counsel filed the Amended Complaint in *Jackson* before receiving any discovery from Defendant Corizon, Plaintiff's counsel must have known these facts prior to receiving Defendant's discovery materials.

## II. Plaintiff's counsel could not have learned the information contained in Paragraphs 88-89 from the 2017 Corizon UM Manual, because that information is not contained in the 2017 Corizon UM Manual.

Defendant alleges that, "it is clear that the information could not possibly have come from anywhere else as some phrases are copied verbatim from the UM manual." (**ECF No. 14, PageID.243**). With respect to the information contained in Paragraph 88-89, the opposite is true: Plaintiff's counsel could not have learned this information from the 2017 UM Manual, because the 2017 UM Manual does not contain the information.

6

Paragraphs 88-89 of Plaintiff's Complaint concern Corizon's current data analytics tool, ImpactPro. Defendants' 588-page exhibit contains no mention of ImpactPro.[1] But Corizon's attorneys should have no difficulty determining where Plaintiff's counsel learned of ImpactPro and its functionality: Documents describing ImpactPro were produced by Plaintiff's counsel, to Defendant in the *Jackson* litigation, after they were obtained via a Michigan Freedom of Information Act ("FOIA") request in March of 2021.   (See **Ex. B-** *Email from Plaintiff's counsel to Defendant's counsel, April 5, 2021*; **Ex. C-** *Supplemental Response to Defendant's Request to Produce #14 in Jackson v. Corizon Health, Inc., April 5, 2021*; **Ex. D-** *Excerpt from Statement of Work Contract Activities (Public Copy)*).   Allegations in Paragraph 88, for example, are taken almost verbatim from the text on Page 9 and Page 198 of the Statement of Work Contract Activities. The information contained in Paragraph 89 of Plaintiff's Complaint can be readily discerned by examining the graphs displayed above the text on Page 198.

---

1   Examination of Corizon's bid packets for public contracts suggest that Corizon had not yet acquired ImpactPro in 2017. Technical Proposals submitted to state governments in 2017 and prior years make no mention of ImpactPro, and instead reference a different data analytics tool, InGauge. See, e.g. **Ex. E** (Maryland 2017); **Ex. F** (Kansas 2013); **Ex. G** (Tennessee 2012). Proposals submitted in 2020 and later years tout the capabilities of ImpactPro without mentioning InGauge. **Ex. D** (Michigan 2020); **Ex. H** (Indiana 2021).

### III. All of the information pled in Paragraphs 83-90 of Plaintiff's Complaint has long been publicly available.

Defendant Corizon claims to have suffered irreparable harm as a result of

Plaintiff filing his Complaint:

> Defendant Corizon has been irreparably damaged by Plaintiff's Counsel's unscrupulous behavior, as, in today's modern age, once information is made available in the public forum there is no way of tracking it and purging it in order to cure the issue caused by Plaintiff's Counsel's blatant violation. In other words, once the proverbial bell had been rung, it cannot be un-rung.

**ECF No. 14, PageID.240**.

But this "proverbial bell" had been rung many times, long before Plaintiff filed his

Complaint in this matter on March 19, 2022. For example, the fact that Corizon

tracks ATP rates for individual providers, (Paragraph 87) (**ECF No. 1, PageID.24**),

and the fact that a high ATP rate reflects poorly on the performance of a Corizon

medical provider,[2] (Paragraph 90) (**ECF No. 1, PageID.24**), have been available on

PACER since at least April 16, 2020, when a transcript of the deposition of

Corizon Regional Medical Director Dr. Robert Lacy was filed in *Spiller v. Stieve*

*et. al.,* 1:19-cv-00533 (W.D. Mich.). In that deposition, Dr. Lacy testified:

> **we track to see -- we track to see what percentages people are getting of approvals and denials**, because we want people to achieve something like a 90 -- 90 percent approval rate, so **if they are getting, like, a 50 percent approval rate, then they are not doing something right.** Either they are not filling it out right with the

---

2   Additionally, this fact is not stated in the 2017 Corizon UM Manual.

8

information that we need **or they are asking for too many things that are just, you know, unnecessary,** they are not doing the steps that could be done in the right order, so in that case, we would go back and try to retrain that person.

**Ex. I**: Deposition of Dr. Robert Lacy, **1:19-cv-00533 ECF No. 52-3, PageID.542-543** (emphasis added).

The fact that Corizon's Utilization Management Department, "scrutinized each referral request to determine if the requested service was 'medically necessary,' meaning necessary to prevent potential loss of life or limb or to necessary to enable the prisoner to complete activities of daily living," (Paragraph 85) (**ECF No. 1, PageID.23**) has been publicly available on PACER since at least October 15, 2018, when a transcript of a deposition of Corizon Utilization Management Medical Director Dr. Keith Papendick was filed in *Wright v. Corizon Health, Inc. et. al.*, 2:16-cv-12113 (E.D. Mich.). In that deposition, Dr. Papendick testified:

> Q. Okay. And so would you have any criteria for determining whether some cases referred to or given an alternative treatment plan?
>
> A. **Medical necessity. Medical necessity primarily is difficulty with activities of daily living, risks to life or limb.**

**Ex. J**: Deposition of Dr. Keith Papendick in *Wright*, **2:16-cv-12113 ECF No. 77-7, PageID.2286** (emphasis added).

9

Similar testimony also became available on May 1, 2019, when another deposition of Dr. Papendick was published to PACER in *Lashuay v. DeLine, et. al.,* 1:17-cv-13581 (E.D. Mich.):

<u>Dep. page 58</u>

14 Q And how do you define "medically necessary"?

15 **A Risk to loss of life or limb or deficit in ADLs, activities**
16 **of daily living.**

17 Q Would medically necessary also include the risk of permanent
18 disability limiting, for example, the ability to earn a
19 living?

20 **A I -- probably not.** I guess there could be a situation where
21 that would be the case.

**Ex. K**: Deposition of Dr. Keith Papendick in *Lashuay,* **1:17-cv-13581 ECF No. 92-12, PageID.2158** (emphasis added).

The fact that "the purpose of Defendant Corizon's prior-approval Utilization Management process for specialist referrals was to limit the volume of specialty care provided to prisoners, in order to save money for Defendant Corizon," (Paragraph 84) (**ECF No. 1, PageID.23**), has been publicly available on PACER since at least August 15, 2019, when a transcript of a deposition of former Corizon Site Medical Director Dr. Albert Maier was filed in *Hoffer. et. al. v. Jones, et. al,* 4:17-cv-00214 (N.D. Fla.). In that deposition, Dr. Maier testified:

10

Q  Okay. So in addition -- are you of the belief that Corizon was not providing direct acting antivirals to inmates with hepatitis C solely to save money?

A Yes.

Q  Are you of the belief that Corizon was not providing hernia surgeries to inmates with painful hernias in order to save money?

    MR. NEFF: Objection.

A Yes.

. . .  And says, Go ahead and treat Mr. Maier. Dr. Shah says he needs it. He's an F3, whatever. And I would approve that. And from me, that would then go to utilization management. Now, with Corizon, those were -- if it was Corizon, they'd shoot it down right away, because they were not going to buy the drug. They'd come up with an alternative treatment plan. The same thing would happen with Wexford -- or resubmit in six months, preferably after the patient is dead.

**Ex. L**: Deposition of Dr. Albert Maier, (**1:17-cv-24567 Document 136-1 Entered on FLSD Docket 08/15/2019, Page 43, 88 of 156).**

Not only has the testimony of numerous Corizon employees explaining Corizon's utilization management process long been publicly available, but many of Corizon's relevant proprietary documents themselves are also available to the general public on PACER. For example, a 30(b)(6) deposition of Corizon filed on September 17, 2018 in *Estate of Franklin v. Heyns, et. al.*, 2:16-cv-13587 (E.D.

11

Mich.) contains a number of attached exhibits, including a document bearing the Corizon logo entitled, "Introduction to Utilization Management," (**Ex. M**)[3] (**2:16-cv-13587 ECF No. 86-16, PageID.12659**) a document entitled "Definition of Medically-Necessary Care," (**Ex. N**) (**2:16-cv-13587 ECF No. 86-16, PageID.12660**) and a document entitled "Michigan DOC and Quality Correctional Care of Michigan, PC Specialty Consultation (407) Standard Operating Protocol." (**Ex. O**) (**2:16-cv-13587 ECF No. 86-16, PageID.12661-12663**). Similar documents were filed on November 15, 2019 in *Lashuay v. DeLine, et. al.*, 1:17-cv-13581 (E.D. Mich.). (**Ex. P**)[4] (**1:17-cv-13581 ECF No. 113-11, PageID.3592-3605**). As early as November of 2013, several chapters of a Corizon training manual for medical providers were publicly filed in *Davidson v. Corizon, Inc.*, 6:11-cv-03929 (N.D. Ala.). (**Ex. Q**; **Ex. R**; **Ex. S**).[5] Defendant Corizon itself published a similar document, its 33-page "Nursing Within the Walls" training manual, on CorizonNewHires.com, a public website.[6] Another document, entitled

---

3   Compare this document with Bates 00361 of Defendant's Exhibit 4.

4   Compare the last page of this document with Bates 00363 of Defendant's Exhibit 4.

5   The *Davidson* court quoted text from these materials in its publicly-available Opinion and Order denying Corizon's Motion for Summary Judgment, explaining that they create "a question of fact whether Corizon, in accordance with its policies, delayed sending Mr. Davidson to an outside specialist to increase profits[.]" *Davidson v. Corizon, Inc.*, 2015 U.S. Dist. LEXIS 89527 at *19-*21 (N.D. Ala. 2015).

6   *See*   https://corizonnewhires.com/wp-content/uploads/2019/03/Nursing-Within-the-Walls-booklet-PDF.pdf. Last accessed 5/15/22 (**Ex. U**).

"Corizon Health Policy & Procedure -- Authorization for Outpatient Referrals – All States," was filed on November 15, 2019 in *Lashuay.* (**Ex. T**) (**ECF No. 113-10, PageID.3588-3591**). This publicly-available document bears a striking resemblance to Bates 00018-00022 of Defendant's Exhibit 4, the 2017 Corizon Utilization Management Manual.

In short, a wealth of detailed information concerning Corizon's Utilization Management policies and procedures had already been available on PACER long before Plaintiff's counsel ever exchanged discovery with Corizon. Prospective litigants could already get, "a mile head start on bringing *Monell* claims against Defendant Corizon," (**ECF No. 14, PageID.245**) by reviewing the pleadings, deposition transcripts, affidavits, motions, and exhibits filed in some of the approximately 2,400 Eighth-Amendment claims brought against Corizon every year. <u>Defendant even knew that Plaintiff's counsel obtained the information in this manner</u>: on February 5, 2020, months before any discovery materials were produced, Plaintiff's counsel cited to, and filed, portions of several deposition transcripts from the *Lashuay* and *Wright* cases in their response to the Corizon

13

Defendant's Motion to Dismiss in *Jackson*.[7] (**2:19-cv-13382 ECF No. 21, PageID.393-395**).

## **IV. Defendant Corizon leveled its baseless accusation in a manner that forced Plaintiff's counsel to waste considerable time scrutinizing every sentence of a 588-page exhibit.**

Defendant Corizon moves to strike Plaintiff's Complaint, dismiss this case, and hold Plaintiff's counsel in contempt. "Contempt is serious." *Gascho v. Global Fitness Holdings, LLC*, 875 F.3d 795, 799 (6th Cir. 2017). "A party that seeks civil contempt sanctions must demonstrate by clear and convincing evidence that the opposing party knowingly 'violated a definite and specific order of the court.'" *Id.* at 800 (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987). As discussed *supra*, Plaintiff's counsel clearly learned the information pled in Paragraphs 83-90 from publicly-available sources long before Corizon produced its confidential document. But the burden was not on the respondents to prove their innocence. *The movant* is responsible for proving by clear and convincing evidence

---

7  In the response filed February 5, 2020, Plaintiff's counsel wrote: "Dr. Bergman's testimony also provides helpful background information about Corizon's operations and the healthcare delivery process within the MDOC." (**2:19-cv-13382 ECF No. 21, PageID.394**). Plaintiff's counsel cited and attached portions of a transcript of a deposition of Corizon Regional Medial Director Dr. Steven Bergman. This transcript contains almost all of the information pled in Paragraphs 83-87 of the *Kelly* Complaint. (**Ex. V**) (**2:19-cv-13382 ECF No. 21-3, PageID.411-417**).

14

that Plaintiff's attorneys violated an order of the Court, and in that task, Corizon has utterly failed.

Prior to moving to hold opposing counsel in contempt for copying text from a document under a protective order into a pleading in a subsequent case, one would expect a reasonably diligent attorney to: 1) actually read the confidential document, 2) compare it to the pleading, and 3) identify the text that has been copied. Instead, Corizon's attorneys merely alleged, "the information could not possibly have come from anywhere else as some phrases are copied verbatim from the UM manual." (**ECF No. 14, PageID.243**). They proffered a 588-page exhibit, did not cite to any specific page(s) within the exhibit, and failed to identify what "phrases" they claim are repeated verbatim from the exhibit. They invite the Court and Plaintiff's counsel to compare the entire 588-page exhibit to paragraphs 83-90 of the Complaint to find the unspecified copied phrases, which they conclusorily allege Plantiff's counsel could not have possibly seen elsewhere. (**ECF No. 14, PageID.243**).

A party's "failure to cite specific pages leaves this Court groping unaided for factual needles in a documentary haystack and unfairly shift[s] the burdens of litigation to the court." *Jennings v. Bodrick*, 2010 U.S. Dist. LEXIS 26014 at *6 (S.D. Ohio 2010) (citing and quoting *Sanchez-Figueroa v. Banco Popular de*

15

*Puerto Rico*, 527 F.3d 209, 213 (1st Cir. 2008)). In these circumstances, "[t]he Court has no duty to scour the record to find factual support for a party's claims." *Logan v. Twp. of W. Bloomfield*, 2018 U.S. Dist. LEXIS 127692 at *2 (E.D. Mich. 2018). Defendant's counsel could have pointed out the language that they allege was copied from the 2017 UM Manual. They could have presented for filing only those pages of the Manual containing the relevant text, or cited to specific pages within their exhibit. They did not. Indeed, it is clear that Corizon's attorneys did not even read through the 2017 UM Manual themselves prior to filing this motion. If they had reviewed the entire document, they would not have accused Plaintiff's counsel of obtaining information about Corizon's ImpactPro data analytics system (Paragraphs 88-89) from the 2017 UM Manual, since the 2017 UM Manual makes no mention of ImpactPro.

In order to respond to these serious allegations, Plaintiff's counsel was forced to conduct a tedious, line-by-line review of Defendant's entire 588-page exhibit, comparing each sentence in the exhibit to Paragraphs 83-90 of the Complaint in search of any allegedly copied phrases. Plaintiff's counsel was able to identify four distinctive phrases that Defendant might be referring to: "Alternative Treatment Plan," "life or limb," "medically necessary," and "activities of daily living." Some of these phrases are terms of art within the healthcare

16

industry. As explained *supra* in Section I, all of these phrases were also included, verbatim, in the Amended Complaint in *Jackson*, filed long before Defendant produced the 2017 UM Manual.

## CONCLUSION

For all the foregoing reasons, Defendant Corizon's Motion should be denied in its entirety.

*/s/Ian T. Cross*
Ian T. Cross (P83367)
Attorney for Plaintiff
402 W. Liberty St.
Ann Arbor MI 48103
(734) 994-9590
ian@lawa2.com

17