## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

William Kelly

     Plaintiff,

v.

Corizon Health, Inc., et al.

     Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

---

MARGOLIS & CROSS
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
*Attorneys for Plaintiff*
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590
ian@lawinannarbor.com

TANOURY, NAUTS, MCKINNEY, &
DWAIHY, PLLC
Paul J. Dwaihy (P66074)
Christopher Kwiecien (P77878)
Attorneys for Todd Bostwick, M.D.
38777 Six Mile Rd., Ste. 101
Livonia, MI 48152
(313) 964-4500
Paul.dwaihy@tnmdlaw.com
Christopher.kwiecien@tnmdlaw.com

CHAPMAN LAW GROUP
Jonathan C. Lanesky (P59740)
Nicholas B. Pillow (P83927)
*Attorneys for Corizon Health, Inc.,*
*Quality Correctional Care of Michigan,*
*Richard Bohjanen, M.D.; Ravi Yarid, D.O.;*
*Danielle Alford, P.A., Joshua Kocha, P.A.,*
*and Leila Ghasemi, N.P.*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
jlanesky@chapmanlawgroup.com
npillow@chapmanlawgroup.com

---

## AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT DANIELLE ALFORD, P.A.

STATE OF MICHIGAN         )
                                   ) SS
COUNTY OF JACKSON       )

Danielle Alford, P.A. being first duly sworn, deposes and states as follows:

1. At all times pertinent to Plaintiff's complaint in the above captioned matter, and for the year preceding the alleged malpractice, I was a licensed Physician Assistant practicing in the state of Michigan and devoting a majority of my professional time to active clinical practice as a Physician Assistant.

2. I am familiar with the applicable standard of care for a Physician Assistant practicing in Jackson County, Michigan.

3. The applicable standard of care is what a Physician Assistant of ordinary learning, training and skill, would or would not do when presented with circumstances the same or similar to those alleged in Plaintiff's complaint, or stated another way, what another reasonable and competent Physician Assistant would or would not have done in treating a patient like William Kelly in a prison setting like Duane Waters Hospital.

4. I have reviewed all pleadings and medical records provided to me by Defense Counsel, including Plaintiff's Notice of Intent to file claim, Plaintiff's Complaint, as well as pertinent medical records of William Kelly from the Michigan Department of Corrections.

5. In forming the opinions contained herein, I relied on the above-described pleadings and medical records along with my medical education, training, and experience as a physician assistant of eight (8) years.

## FACTUAL SUMMARY OF CARE PROVIDED

6. I provided medical care to Plaintiff William Kelly while he was an inmate at Duane Waters Hospital from September 2020 through November 2020. During that time, I saw Mr. Kelly approximately three (3) times for medical evaluation/treatment.

7. On September 25, 2020, I had my first interaction with Mr. Kelly regarding his recent September 2020 diagnosis of a left renal mass. Prior to that visit I had spoken with the P.A. from Capitol Urological Associates regarding Mr. Kelly's diagnostic course and recommendations for follow-up plans. At that visit, Mr. Kelly appeared to be stable and in no distress. Per the recommendation of the Capitol Urology P.A., I switched Mr. Kelly from a straight catheter to a foley catheter, ordered the catheter flushed every six (6) hours, placed a request for Mr. Kelly to have a same day cystogram with urology, ordered Ultram for pain, ordered repeat labs, and requested Mr. Kelly's medical records and imaging discs for his upcoming urology consultation.

8. On October 6, 2020, Mr. Kelly was scheduled for his urology consultation. Although it is the responsibility of the MDOC nurse scheduler to ensure that consulting physicians receive all necessary documentation and imaging for an appointment, prior to the October 6, 2020, appointment several emails were sent by myself and N.P. Leila Ghasemi to ensure that Mr. Kelly's imaging CD was provided

3

to Capitol Urological Associates in advance of the appointment. In response to my emails, I was informed that Capitol Urological Associates supposedly already had the disc. However, Capitol Urological Associates claimed they did not receive Mr. Kelly's imaging disc and accordingly refused to see/evaluate him. This issue was rectified, and Mr. Kelly was seen and evaluated at Capitol Urological Associates on October 15, 2020.

9. On October 16, 2020, I saw Mr. Kelly for a follow-up and discussed his urology appointment from the day prior. A review of the Capital Urological Associates office note informed me Mr. Kelly would need a kidney biopsy and a follow-up appointment with urology. Accordingly, I submitted a consultation request for Mr. Kelly to have a kidney biopsy at Capitol Urological Associates. That request was approved on October 20, 2020.

10. On November 21, 2020, I saw Mr. Kelly for the last time. Mr. Kelly had tested positive for COVID-19 as part of a facility wide test on November 17, 2020. Mr. Kelly reported no symptoms, but because of the positive test had to be quarantined through November 27, 2020. Due to the quarantine, Mr. Kelly's CTA appointment for November 23, 2020 had to be cancelled. Accordingly, I emailed the MDOC nurse scheduler informing her of Mr. Kelly's positive test and the need to cancel his November 23, 2020 appointment,  however, I had no part in rescheduling Mr. Kelly's appointment.

4

## MANNER OF COMPLIANCE WITH STANDARD OF CARE

11. I disagree with the opinions and conclusions set forth in Plaintiff's Complaint as to my alleged violations of the standard of care in evaluating and/or treating William Kelly between September 2020 and November 2020.

12. After a review of the pleadings, documents, and relevant medical records, it is my professional opinion that I, Danielle Alford P.A., complied with the applicable standard of care in all respects regarding my care and treatment of William Kelly between September 2020 and November 2020.

13. Contrary to the allegation in Plaintiff's Complaint, when presented with Mr. Kelly and his suspected malignant renal mass, I took appropriate steps to ensure that Mr. Kelly received all necessary diagnostic testing and medical treatment, as recommended by Capitol Urological Associates, in a timely manner. However, due to the exigencies of the time and the shutdown of offsite medical consultations and movement of inmates in response to the COVID-19 pandemic, as ordered by Governor Gretchen Whitmer, the timeline of care for all inmates was elongated. Additionally, Mr. Kelly's own COVID-19 diagnosis in November 2020 further elongated his timeline of care.

## NO PROXIMATE CAUSE

5

14. It is my opinion that, contrary to the allegation in the Complaint, there is no proximate cause between the alleged injuries claimed by the Plaintiff and the actions and/or omissions by Defendant, Danielle Alford, P.A.

15. Contrary to the allegation in the Complaint, the alleged injuries, and damages in this case are not related Defendant, Danielle Alford, P.A.'s care and treatment.

16. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

17. This Affidavit of Meritorious Defense is filed in accordance with MCL § 600.2912(e).

Dated: _06/15/2022_

_____ pA·c
Danielle Alford, P.A.

Subscribed and sworn to before me this
_15th_ day of _June_ 2022.

_____, Notary Public
County of _Jackson_
Acting in the County of _Jackson_
My Commission Expires: _2-9-2026_

Pamela Tingay
Notary Public, State of Michigan
County of Jackson
My Commission Expires: February 9, 2026
Acting In County of Jackson

6