# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

William Kelly

    Plaintiff,

v.

Corizon Health, Inc., et al.

    Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

---

MARGOLIS & CROSS
Ian T. Cross (P83367)
Laurence H. Margolis (P69635)
*Attorneys for Plaintiff*
214 S. Main St., Suite 200
Ann Arbor, MI 48104
(734) 994-9590
ian@lawinannarbor.com

TANOURY, NAUTS, MCKINNEY, &
DWAIHY, PLLC
Paul J. Dqaihy (P66074)
Christopher Kwiecien (P77878)
Attorneys for Todd Bostwick, M.D.
38777 Six Mile Rd., Ste. 101
Livonia, MI 48152
(313) 964-4500
Paul.dwaihy@tnmdlaw.com
Christopher.kwiecien@tnmdlaw.com

CHAPMAN LAW GROUP
Jonathan C. Lanesky (P59740)
Nicholas B. Pillow (P83927)
*Attorneys for Corizon Health, Inc.,*
*Quality Correctional Care of Michigan,*
*Richard Bohjanen, M.D.; Ravi Yarid, D.O.;*
*Danielle Alford, P.A., Joshua Kocha, P.A.,*
*and Leila Ghasemi, N.P.*
1441 West Long Lake Rd., Suite 310
Troy, MI 48098
(248) 644-6326
jlanesky@chapmanlawgroup.com
npillow@chapmanlawgroup.com

---

## AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT LEILA GHASEMI, N.P.

STATE OF MICHIGAN            )
                                        ) SS
COUNTY OF JACKSON       )

Leila Ghasemi, N.P. being first duly sworn, deposes and states as follows:

1. At all times pertinent to Plaintiff's complaint in the above captioned matter, and for the year preceding the alleged malpractice, I was a licensed nurse practitioner practicing in the state of Michigan and devoting a majority of my professional time to active clinical practice as a nurse practitioner.

2. I am familiar with the applicable standard of care for a nurse practitioner practicing in Jackson County, Michigan.

3. The applicable standard of care is what a nurse practitioner of ordinary learning, training and skill, would or would not do when presented with circumstances the same or similar to those alleged in Plaintiff's complaint, or stated another way, what another reasonable and competent nurse practitioner would or would not have done in treating a patient like William Kelly in a prison setting like Duane Waters Hospital.

4. I have reviewed all pleadings and medical records provided to me by Defense Counsel, including Plaintiff's Notice of Intent to file claim, Plaintiff's Complaint, as well as pertinent medical records of William Kelly from the Michigan Department of Corrections.

2

5. In forming the opinions contained herein, I relied on the above-described pleadings and medical records along with my medical education, training, and experience as a nurse practitioner of four (4) years.

## FACTUAL SUMMARY OF CARE PROVIDED

6. I provided medical care to Plaintiff William Kelly while he was an inmate at Duane Waters Hospital from September 2020 through November 2020. During that time, I saw Mr. Kelly approximately six (6) times for medical evaluation/treatment.

7. On September 24, 2020, I performed Mr. Kelly's initial evaluation following his transfer to Duane Waters Hospital. At that visit, based on a review of Mr. Kelly's previous medical records I was aware of Mr. Kelly's urological history and immediately submitted an urgent request for a urology consultation and called to confirm that Capital Urological Associates would see Mr. Kelly.

8. On September 28, 2020, I evaluated Mr. Kelly for complaints of penile discharge. On examination, no discharge was noted, and I instructed Mr. Kelly to inform the medical providers if he had any further discharge so a sample could be obtained and tested.

9. On October 6, 2020, Mr. Kelly was scheduled for his urology consultation. Although it is the responsibility of the MDOC nurse scheduler to ensure that

3

consulting physicians receive all necessary documentation and imaging for an appointment, prior to the October 6, 2020, several emails were sent by myself and P.A. Danielle Alford to ensure that Mr. Kelly's imaging CD was provided to Capital Urological Associates in advance of the appointment. On October 6, 2020 we were notified by MDOC staff that that UP Health had sent out the disc via FED EX on September 30, 2020. However, Capital Urological Associates claimed they did not receive Mr. Kelly's imaging disc and accordingly refused to see/evaluate him. On October 8, 2020, in response to our previous emails, we were notified that Capital Urological Associates had had the CD. This issue was rectified, and Mr. Kelly was seen and evaluated at Capital Urological Associates on October 15, 2020.

10. On October 20, 2020, I received a phone call from urologist Dr. Stockall asking that Plaintiff receive an MRI of the abdomen as soon as possible to then be followed with a robotic assisted radical nephrectomy. Accordingly, I submitted an urgent request for an MRI which was approved same day. All such appointments are coordinated through the MDOC patient services, and it is my understanding that attempts were made to contact local hospitals who commonly work with MDOC to see if they had availability. Henry Ford could not get Mr. Kelly in for at least two (2) weeks, and McLaren of Greater Lansing stated they may be able to get him in in a week.

11. On November 4, 2020, I received the results of Mr. Kelly's MRI and called Capital Urological Associates to ensure they were aware the results were in and that they review them.

12. On November 10, 2020, I received a phone call from Dr. Stockall at Capital Urological Associates advising that he still wished to perform a nephrectomy but needed to verify it was safe to do so with regards to Mr. Kelly's renal vasculature. Accordingly, Dr. Stockall advised that he would like Mr. Kelly to receive a CTA. I placed a request for Mr. Kelly to undergo the CTA which was approved the next day and scheduled for November 23, 2020.

13. On November 21, 2020, Mr. Kelly had tested positive for COVID-19 as part of a facility wide test on November 17, 2020. Due to the quarantine, Mr. Kelly's CTA appointment for November 23, 2020, had to be cancelled and rescheduled, however, I had no part in cancelling and rescheduling Mr. Kelly's appointment.

## MANNER OF COMPLIANCE WITH STANDARD OF CARE

14. I disagree with the opinions and conclusions set forth in Plaintiff's Complaint as to my alleged violations of the standard of care in evaluating and/or treating William Kelly between September 2020 and November 2020.

15. After a review of the pleadings, documents, and relevant medical records, it is my professional opinion that I, Leila Ghasemi, N.P., complied with the applicable

5

standard of care in all respects regarding my care and treatment of William Kelly between September 2020 and November 2020.

16. Contrary to the allegation in Plaintiff's Complaint, when presented with Mr. Kelly and his suspected malignant renal mass, I took appropriate steps to ensure that Mr. Kelly received all necessary diagnostic testing and medical treatment, as recommended by Capital Urological Associates, in a timely manner. However, due to the exigencies of the time and the shutdown of offsite medical consultations and movement of inmates in response to the Covid-19 pandemic, as ordered by Governor Gretchen Whitmer, the timeline of care for all inmates was elongated. Additionally, Mr. Kelly's own COVID-19 diagnosis in November 2020 further elongated his timeline of care.

## NO PROXIMATE CAUSE

17. It is my opinion that, contrary to the allegation in the Complaint, there is no proximate cause between the alleged injuries claimed by the Plaintiff and the actions and or omissions by Defendant, Leila Ghasemi, N.P.

18. Contrary to the allegation in the Complaint, the alleged injuries, and damages in this case are not related to Defendant, Leila Ghasemi, N.P.'s care and treatment.

19. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

20. This Affidavit of Meritorious Defense is filed in accordance with MCL § 600.2912(e).

Dated: 6/16/22

_____
Leila Ghasemi, N.P.

Subscribed and sworn to before me this
16th day of June 2022.

_____, Notary Public
County of Jackson
Acting in the County of Jackson
My Commission Expires: 2-9-2024

Pamela Tingay
Notary Public, State of Michigan
County of Jackson
My Commission Expires: February 9, 2026
Acting in County of Jackson

7