UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

William Kelly

    Plaintiff,

v.

Corizon Health, Inc., et al.

    Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

| MARGOLIS & CROSS | CHAPMAN LAW GROUP |
|---|---|
| Ian T. Cross (P83367) | Jonathan C. Lanesky (P59740) |
| Laurence H. Margolis (P69635) | Nicholas B. Pillow (P83927) |
| *Attorneys for Plaintiff* | *Attorneys for Corizon Health, Inc., Quality Correctional Care of Michigan, Richard Bohjanen, M.D.; Ravi Yarid, D.O.; Danielle Alford, P.A., Joshua Kocha, P.A., and Leila Ghasemi, N.P.* |
| 214 S. Main St., Suite 200 | |
| Ann Arbor, MI 48104 | |
| (734) 994-9590 | |
| ian@lawinannarbor.com | |
| | 1441 West Long Lake Rd., Suite 310 |
| TANOURY, NAUTS, MCKINNEY, & DWAIHY, PLLC | Troy, MI 48098 |
| Paul J. Dqaihy (P66074) | (248) 644-6326 |
| Christopher Kwiecien (P77878) | jlanesky@chapmanlawgroup.com |
| Attorneys for Todd Bostwick, M.D. | npillow@chapmanlawgroup.com |
| 38777 Six Mile Rd., Ste. 101 | |
| Livonia, MI 48152 | |
| (313) 964-4500 | |
| Paul.dwaihy@tnmdlaw.com | |
| Christopher.kwiecien@tnmdlaw.com | |

### AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT JOSHUA KOCHA, P.A.

STATE OF MICHIGAN       )
                                ) SS
COUNTY OF MARQUETTE  )

Joshua Kocha, P.A. being first duly sworn, deposes and states as follows:

1. At all times pertinent to Plaintiff's complaint in the above captioned matter, and for the year preceding the alleged malpractice, I was a licensed Physician Assistant practicing in the state of Michigan and devoting a majority of my professional time to active clinical practice as a Physician Assistant.

2. I am familiar with the applicable standard of care for a Physician Assistant practicing in Marquette County, Michigan.

3. The applicable standard of care is what a physician assistant of ordinary learning, training and skill, would or would not do when presented with circumstances the same or similar to those alleged in Plaintiff's complaint, or stated another way, what another reasonable and competent physician assistant would or would not have done in treating a patient like William Kelly in a prison setting like Marquette Branch Prison.

4. I have reviewed all pleadings and medical records provided to me by Defense Counsel, including Plaintiff's Notice of Intent to file claim, Plaintiff's Complaint, as well as pertinent medical records of William Kelly from the Michigan Department of Corrections.

5. In forming the opinions contained herein, I relied on the above-described pleadings and medical records along with my medical education, training, and experience as a physician assistant of thirteen (13) years.

2

## FACTUAL SUMMARY OF CARE PROVIDED

6. I provided medical care to Plaintiff William Kelly while he was an inmate at Marquette Branch Prison from April 2020 through September 2020. During that time, I saw Mr. Kelly approximately ten (10) times for medical evaluation/treatment.

7. On April 3, 2020, I had my first interaction with Mr. Kelly regarding his recent March 2020 diagnosis of renal infarct. At that visit Mr. Kelly appeared to be in no distress. After evaluating Mr. Kelly, along with the March 2020 CTA demonstrating the renal infarct and the recommendations on treatment of the renal infarct, I prescribed Mr. Kelly six (6) months of anticoagulation therapy.

8. I did not see Mr. Kelly on either May 28 or 29, 2020 for his complaints of gross hematuria.

9. On July 2, 2020, I saw Mr. Kelly for a routine chronic care visit to follow up on his existing medical conditions. Between May 29, 2020 and July 2, 2020, Mr. Kelly had undergone a CBC and urinalysis which both came back largely normal except showing some slight anemia, which was a chronic issue for Mr. Kelly. Based on my prior evaluation of Mr. Kelly and his renal infarct, it was my intent to have Mr. Kelly evaluated by urology and ordered additional labs, including another urinalysis to look for occult blood in Mr. Kelly's urine.

    a. At the time of Mr. Kelly's July 2, 2020, visit, based on Mr. Kelly experiencing a singular episode of gross hematuria, I viewed the previously diagnoses renal infarct and gross hematuria to be separate medical issues to be evaluated individually.

    b. At the time of Mr. Kelly's July 2, 2020, due to the exigencies of the times caused by the COVID-19 pandemic at its height, restrictions were put in place precluding offsite consultations unless absolutely medically necessary.

10. On July 29, 2020, I saw Mr. Kelly again to discuss the results of his recent labs, which all returned negative for any acute process. At this visit, based on Mr. Kelly's unexplained episode of gross hematuria, serial negative labs, and prior diagnosis of a renal infarct, I still wanted Mr. Kelly to be evaluated by urology. Based on the unexplained episode of gross hematuria and the negative labs showing no issues with Mr. Kelly's kidneys, my concern was, in worst case scenario, that Mr. Kelly had bladder cancer. That day I submitted an urgent request for Mr. Kelly to be seen for a urology consult. The consult request was approved on July 30, 2020.

11. On August 20, 2020, I saw Mr. Kelly for a new issue related to point tenderness at the epididymal head of his left testicle. Due to the clinical presentation (no swelling, pinpoint pain, and being on the left side), I did not believe this to be

related to the previous incident of hematuria, or suspect kidney cancer, as testicular issues related to kidney cancer usually relate to blood flow and result in swelling of the entire testicle, typically on the right side. I provided Mr. Kelly with Motrin for the pain and instructing him to notify medical if his pain did not improve in five (5) to seven (7) days.

12. On August 31, 2020, I saw Mr. Kelly in follow-up for his testicular issue. At this visit, Mr. Kelly showed some swelling and expansion of his pain and tenderness over the entirety of his left testicle. Based on the clinical presentation, I suspected an epididymitis infection, ordered Bactrim as an antibiotic, and expected the issue to be addressed at Mr. Kelly's urology consult which had been approved.

13. On September 8, 2020, I saw Mr. Kelly in follow-up. At that time, Mr. Kelly had not had any additional episodes of gross hematuria since the singular incident in May 2020. Mr. Kelly reported that the pain and swelling to his left testicle was improved. At the time of this visit Mr. Kelly was scheduled to see a urologist but had not seen the urologist because the urology office we worked with at the time was down a surgeon and was booking out months in advance due to COVID-19 related issues.

14. On September 17, 2020, I saw Mr. Kelly related to another episode of gross hematuria with associated blood clots and urine retention. Prior to my evaluation, Mr. Kelly had been sent to the emergency room and had returned to Marquette

Branch Prison catheterized. A CT performed at the hospital that morning revealed a mass in Mr. Kelly's lower left kidney. Mr. Kelly returned to Marquette Branch Prison feeling better but continued to retain urine and produce blood clots in his urine, accordingly, after my evaluation, I sent Mr. Kelly back to the emergency room.

15. On September 18, 2020, I saw Mr. Kelly for the last time in follow-up. At this visit, based on the results of the CT the day prior, I suspected Mr. Kelly may have kidney cancer. I called several urologists in the Marquette area and emailed numerous individuals within the correctional system to try to have Mr. Kelly seen. Because we were unable to have Mr. Kelly evaluated by a urologist in the Marquette area in a timely manner, Mr. Kelly was transferred to the Duane Waters Hospital to receive an elevated level of care and hopefully a urology consult with a physician in the Jackson area.

## **MANNER OF COMPLIANCE WITH STANDARD OF CARE**

16. I disagree with the opinions and conclusions set forth in Plaintiff's Complaint as to my alleged violations of the standard of care in evaluating and/or treating William Kelly between April 2020 and September 2020.

17. After a review of the pleadings, documents, and relevant medical records, it is my professional opinion that I, Joshua Kocha P.A., complied with the applicable

standard of care in all respects regarding my care and treatment of William Kelly between April 2020 and September 2020.

18. Contrary to the allegation in Plaintiff's Complaint, I did not delay a work-up to determine the cause of Mr. Kelly's episode of gross hematuria for two (2) months. I did not see Mr. Kelly May 28 or 29, 2020 when he first presented with a complaint of a single episode of gross hematuria. Further, Mr. Kelly did not complain of any further episodes of hematuria at any of my visits with him between May 28, 2020, and September 17, 2020.

19. Contrary to the allegation in Plaintiff's Complaint, a Physician Assistant of ordinary judgment, learning, or skill practicing in Marquette, Michigan, or a similar community, when presented with a patient with similar symptoms and presentation as Mr. Kelly would not seek to rule out kidney or bladder cancer. At the time of Mr. Kelly's complaints of testicular pain and swelling, he had a recent CTA confirmed diagnosis of a renal infarct in his left kidney requiring no further diagnosis, had experienced a single, resolved episode of gross hematuria over two (2) months prior to the complaints of testicular pain, and had returned several normal labs.

## **NO PROXIMATE CAUSE**

20. It is my opinion that, contrary to the allegation in the Complaint, there is no proximate cause between the alleged injuries claimed by the Plaintiff and the actions and or omissions by Defendant, Joshua Kocha, P.A.

21. Contrary to the allegation in the Complaint the alleged injuries, and damages in this case are not related Defendant, Joshua Kocha, P.A.'s care and treatment.

22. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

23. This Affidavit of Meritorious Defense is filed in accordance with MCL § 600.2912(e).

Dated: 6/15/22

_____
Joshua Kocha, P.A.

Subscribed and sworn to before me this
__15__ day of __June__ 2022.

_____, Notary Public
County of Marquette
Acting in the County of Marquette
My Commission Expires: 10/6/25

ERIK JOHNSON
NOTARY PUBLIC, STATE OF MI
COUNTY OF MARQUETTE
MY COMMISSION EXPIRES Oct 6, 2025
ACTING IN COUNTY OF Marquette