UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

William Kelly

    Plaintiff,

v.

Corizon Health, Inc., et al.

    Defendants.

Case No: 2:22-cv-10589
District Judge: Terrance G. Berg
Magistrate Judge: David R. Grand

| MARGOLIS & CROSS<br>Ian T. Cross (P83367)<br>Laurence H. Margolis (P69635)<br>*Attorneys for Plaintiff*<br>214 S. Main St., Suite 200<br>Ann Arbor, MI 48104<br>(734) 994-9590<br>ian@lawinannarbor.com<br><br>TANOURY, NAUTS, MCKINNEY, & DWAIHY, PLLC<br>Paul J. Dqaihy (P66074)<br>Christopher Kwiecien (P77878)<br>Attorneys for Todd Bostwick, M.D.<br>38777 Six Mile Rd., Ste. 101<br>Livonia, MI 48152<br>(313) 964-4500<br>Paul.dwaihy@tnmdlaw.com<br>Christopher.kwiecien@tnmdlaw.com | CHAPMAN LAW GROUP<br>Jonathan C. Lanesky (P59740)<br>Nicholas B. Pillow (P83927)<br>*Attorneys for Corizon Health, Inc., Quality Correctional Care of Michigan, Richard Bohjanen, M.D.; Ravi Yarid, D.O.; Danielle Alford, P.A., Joshua Kocha, P.A., and Leila Ghasemi, N.P.*<br>1441 West Long Lake Rd., Suite 310<br>Troy, MI 48098<br>(248) 644-6326<br>jlanesky@chapmanlawgroup.com<br>npillow@chapmanlawgroup.com |

## AFFIDAVIT OF MERITORIOUS DEFENSE ON BEHALF OF DEFENDANT RAVI YARID, D.O.

STATE OF GEORGIA    )
    ) SS
COUNTY OF GWINNETT    )

Ravi Yarid, D.O., being first duly sworn, deposes and states as follows:

1. At all times pertinent to Plaintiff's complaint in the above captioned matter, and for the year preceding the alleged malpractice, I was a licensed Physician practicing in the state of Michigan and devoting a majority of my professional time to the active clinical practice of correctional medicine.

2. I am familiar with the applicable standard of care for a Physician practicing correctional medicine in in Jackson County, Michigan.

3. The applicable standard of care is what a physician of ordinary learning, training and skill practicing correctional medicine would or would not do when presented with circumstances the same or similar to those alleged in Plaintiff's complaint, or stated another way, what another reasonable and competent physician would or would not have done in treating a patient like William Kelly in a prison setting like Robert G. Cotton Correctional Facility.

4. I have reviewed all pleadings and medical records provided to me by Defense Counsel, including Plaintiff's Notice of Intent to file claim, Plaintiff's Complaint, as well as pertinent medical records of William Kelly from the Michigan Department of Corrections.

5. In forming the opinions contained herein, I relied on the above-described pleadings and medical records along with my medical education, training, and experience as a physician of twenty (20) years.

2

## FACTUAL SUMMARY OF CARE PROVIDED

6. I provided medical care to Plaintiff William Kelly while he was an inmate at Robert G. Cotton Correctional Facility from December 2020 through July 2021. At that time Mr. Kelly had a presumed diagnosis of renal cell carcinoma and was being followed by urology and eventually oncology.

7. On December 10, 2020, I performed a chart review on Mr. Kelly related to his recent transfer to Robert G. Cotton Correctional Facility. I indicated in my review that Mr. Kelly had not been seen in the clinic yet, but urology had requested Mr. Kelly be seen again before his renal mass biopsy and nephrectomy. Accordingly, I submitted a request for Mr. Kelly to receive a urology follow-up appointment. That request was approved same day.

8. On December 15, 2020, Mr. Kelly underwent an Abdominal CT imaging study. It is my understanding that this Abdominal CT was an incorrect study and was supposed to be a CT Angiogram was changed by the facility, McLaren Greater Lansing, to the abdominal CT.

9. On December 28, 2020, I performed another chart review on Mr. Kelly, related to his complaints of epidydimal flare pain. Because Mr. Kelly already had a medical provider appointment scheduled for the next week, I prescribed him 60mg of Toradol for pain and follow-up as scheduled.

3

10. On January 07, 2021 I received a call from P.A. Clapper with Capitol Urological Associates advising that he was trying to schedule Mr. Kelly's approved nephrectomy, which had been delated due to COVID, as soon as possible, but needed to determine the extent of a thrombus in Mr. Kelly's left renal vein to determine if they would need to involve vascular surgery. P.A. Clapper requested that Mr. Kelly receive a venacavagram urgently. Accordingly, I submitted an urgent request for Mr. Kelly to receive a venacavagram. That request was approved same day.

11. On February 02, 2021, I received another phone call from P.A. Clapper with Capitol Urological Associates advising that vascular surgery had changed their position about the imaging study they needed completed and requested Mr. Kelly receive a CT angiogram as was supposed to be completed in December 2020. P.A. Clapper stated that this would be the last change in Mr. Kelly's course and that once completed Mr. Kelly would receive his nephrectomy. Accordingly, I submitted an urgent request to change Mr. Kelly's approved venacavagram to a CT angiogram. That request was approved same day.

12. On February 11, 2021, I performed another chart review on Mr. Kelly regarding recent lab draw. My note indicated that Mr. Kelly's labs were stable and there was no need for an urgent visit with healthcare at the time.

4

13. On February 18, 2021, Mr. Kelly underwent a CTA of his abdomen to determine the extent of the thrombus in his left renal vein.

14. On February 23, 2021, Mr. Kelly had a follow-up appointment with P.A. Clapper at Capitol Urological Associates to go over the results of his CTA and the plan of care. Per the notes from Capitol Urological Associates, the CTA revealed a tumor thrombus in the inferior vena cava as well as concern for new liver and left adrenal gland metastasis. The note from Capitol Urological Associates further indicated that Dr. Stockall would arrange for a tumor board to discuss Mr. Kelly's care and referred Mr. Kelly to McLaren Grater Lansing Medical Oncology as soon as possible. Accordingly, that day I submitted an urgent request for Mr. Kelly to receive an oncology consultation. That request was approved next day. Due to the decision to involve medical oncology, Mr. Kelly's Nephrectomy was postponed until after his Oncology consultation.

15. On April 12, 2021, Mr. Kelly was seen by Oncologist Dr. Pentapati at the Breslin Cancer Center. In the consultation note, Dr. Pentapati indicated that Mr. Kelly was schedule for medical parole July 7, 2021 and wished to seek treatment in Saginaw after his parole to be close to family. Dr. Pentapati ordered a PET scan and MRI Brian for staging, referred Mr. Kelly to interventional radiology for a liver biopsy, and recommended a follow-up in three (3) weeks. Accordingly, I submitted requests for Mr. Kelly to be accepted

to the "Choices" palliative/hospice care program, for an urgent PET scan, for an urgent MRI Brain, for an urgent liver biopsy, and for a follow-up with oncology. Mr. Kelly's PET scan, MRI, liver biopsy, and follow-up appointment were all approve same day.

16. On May 3, 2021, Mr. Kelly received his PET scan.

17. On June 9, 2021, Mr. Kelly received his liver biopsy.

18. On June 16, 2021, Mr. Kelly had a follow up appointment at the Breslin Cancer Center following on his kidney cancer diagnosis. The follow-up note indicates Mr. Kelly had no new complaints and indicated he was scheduled for medical parole July 7, 2021. The note further indicates Mr. Kelly expressed concerns about starting treatment as he did not want it to delay his parole. Oncology recommended additional lab work and rerecommended the MRI of the brain, which was already approved, and recommended Chemotherapy start June 30, 2021. Accordingly, I submitted a request for an oncology follow-up on June 17, 2021. That request was approved June 18, 2021.

19. On June 21, 2021, I submitted a renewed urgent request for an MRI brain prior to Mr. Kelly's June 30, 2021 follow-up appointment. That request was approved same day.

20. On June 30, 2021, Mr. Kelly returned to the Breslin Cancer Center to begin his chemotherapy treatment.

21. It is my understanding that Mr. Kelly was paroled on July 7, 2021. I had no further interactions with him after that date.

## MANNER OF COMPLIANCE WITH STANDARD OF CARE

22. I disagree with the opinions and conclusions set forth in Plaintiff's Complaint as to my alleged violations of the standard of care in evaluating and/or treating William Kelly between December 2020 and July 2021.

23. After a review of the pleadings, documents, and relevant medical records, it is my professional opinion that I, Ravi Yarid, D.O., complied with the applicable standard of care in all respects regarding my care and treatment of William Kelly between December 2020 and July 2021.

24. Contrary to the allegation in Plaintiff's Complaint, when presented with Mr. Kelly and his suspected malignant renal mass, I took appropriate steps to ensure that Mr. Kelly received all necessary diagnostic testing and medical treatment, as recommended by his consulting physicians, in a timely manner. All requests for specific diagnostic testing, imaging, or follow-up were entered same day as the requests were made by Mr. Kelly's consulting physicians. However, I have no part in scheduling appointments for inmates, that responsibility is the purview of the MDOC nurse scheduler. Further, due to the exigencies of the time and the shutdown of offsite medical consultations and movement of

inmates in response to the COVID-19 pandemic, as ordered by Governor Gretchen Whitmer, the timeline of care for all inmates was elongated.

## NO PROXIMATE CAUSE

25. It is my opinion that, contrary to the allegation in the Complaint, there is no proximate cause between the alleged injuries claimed by the plaintiff and the actions and or omissions by Defendant, Ravi Yarid, D.O.

26. Contrary to the allegation in the Complaint, the alleged injuries, and damages in this case are not related Defendant, Ravi Yarid, D.O.'s care and treatment.

27. The opinions contained herein are based upon the materials reviewed to date and may be modified as additional information becomes available.

28. This Affidavit of Meritorious Defense is filed in accordance with MCL § 600.2912(e).

Dated: 6/21/2022

Ravi Yarid, D.O.

Subscribed and sworn to before me this 21 day of June, 2022.

_____, Notary Public
County of Gwinnett
Acting in the County of Gwinnett
My Commission Expires: 3-17-23