# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**WILLIAM KELLY**,          )
          )
     Plaintiff,     )
          )     Case No.: 2:22-cv-10589
          )     Hon.: Terrence G. Berg
v.          )     Mag.: David R. Grand
          )
**CORIZON HEALTH, INC.**, et al,     )
          )
     Defendants.     )
_____  /

## YESCARE CORP. AND CHS TX, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE YESCARE CORP. AND CHS TX, INC. AS PARTY DEFENDANTS IN PLACE OF CORIZON HEALTH, INC., AND TO REQUIRE YESCARE CORP. AND CHS TX, INC. TO ASSUME CORIZON HEALTH, INC.'S DUTY TO INDEMNIFY DEFENDANTS BOHJANEN, KOCHA, ALFORD, GHASEMI AND YARID, OR, IN THE ALTERNATIVE, TO ADD YESCARE CORP. AND CHS TX, <u>INC. AS PARTY DEFENDANTS</u>

**B.**

## TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. iii

TABLE OF AUTHORITIES ......................................................................................iv

STATEMENT OF ISSUES ....................................................................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES .............................ix

INDEX OF EXHIBITS ...............................................................................................x

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .........................................................................................................4

STANDARD OF REVIEW.........................................................................................9

ARGUMENT .............................................................................................................10

I.       The Court Lacks Personal Jurisdiction over YesCare and CHS TX..............10

         A.       YesCare and CHS TX Are Not Subject to General Personal Jurisdiction in Michigan.................................................................................................10

         B.       Neither YesCare Nor CHS TX Is Subject to Limited Personal Jurisdiction in This Case. ...........................................................................................12

II.      Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiff's Claims Remains with Corizon Health. ...............13

         A.       Texas Law, Not Michigan Law, Applies to the Court's Assessment of Successor Liability Resulting from the 2022 Corporate Restructuring. ...............14

         B.       The Divisional Merger Complied with Texas Law. ............................16

         C.       Texas Law provides that Corizon Health is Exclusively Liable on Plaintiff's Claim.................................................................................................18

         D.       It Would Be an Abuse of Discretion for This Court to Find YesCare or CHS TX Liable for Plaintiff's Claims Because There Has Been No Transfer..............20

III.     The Motion Should Be Denied as an Improper Attack on the 2022 Corporate Restructuring under the Guise of Substitution. ................................................22

IV.      Plaintiff's Fraud, Alter Ego, and Successor Liability Theories Fail. ..............24

         A.       CHS TX Is Not Corizon Health's Alter Ego. ....................................24

         B.       Plaintiff Has Failed to Make the Required Showing for Veil-Piercing. ..............25

         C.       Plaintiff's Successor Liability Argument Fails...................................26

         D.       The 2022 Corporate Restructuring Was Not a *De Facto* Merger........................28

         E.       CHS TX Is Not a Mere Continuation of Corizon Health...................28

REQUEST FOR DUE PROCESS .............................................................................29

CONCLUSION..........................................................................................................30

**B.**

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

## <u>TABLE OF AUTHORITIES</u>

### CASES

*Allen v. Westpoint-Pepperell, Inc.*,
   933 F. Supp. 261 (S.D.N.Y. 1996) ........................................................................22

*Bailey v. Floyd County Bd. of Educ.*,
   106 F.3d 135 (6th Cir. 1997) ..............................................................................10

*Bayer Healthcare LLC v. Nektar Therapeutics*,
   No. 17-cv-05055-LHK, 2018 U.S. Dist. LEXIS 41193 (N.D. Cal. Mar. 12, 2018) ..............12

*Best Foods v. Aerojet-General Corp.*,
   173 F. Supp 2d 729 (W.D. Mich. 2001) .............................................................24

*Bouchillon v. Deutz-Fahr*,
   268 F. Supp. 3d 890 (N.D. Miss. 2017) .................................................. 14, 15, 16

*Channel Clarity Holdings LLC v. Klaas (In re Channel Clarity Holdings LLC)*,
   No. 21-bk-07972, 2022 Bankr. LEXIS 1985 (Bankr. N.D. Ill. July 18, 2022) ......................27

*City Envtl. v. United States Chem. Co.*,
   814 F. Supp. 624 (E.D. Mich. 1993) ...................................................................14

*Craig v. Oakwood Hosp.*,
   471 Mich. 67 (2004) ..........................................................................................28

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................11, 12

*Daymon v. Fuhrman*,
   No. 249007, 2004 Mich. App. LEXIS 2607 (App. Ct. 1st Dist. Oct. 5, 2004) ...............25, 26

*Emmet v. Franco*,
   No. 16-cv-11211, 2016 U.S. Dist. LEXIS 109726 (E.D. Mich. Aug. 18, 2016) ...................23

*Foodland Distribs. v. Al-Naimi*,
   220 Mich. App. 453 (1996) ................................................................................25

*Franklin Capital Funding, LLC v. Ace Funding Source, LLC*,
   No. 2:20-CV-12059-TGB-APP, 2021 U.S. Dist. LEXIS 62854 (E.D. Mich. Mar. 31, 2021)
   .............................................................................................................. 10, 13

*Gilmore v. Augustus*,
   No. 12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581 (E.D. Cal. May 27, 2015) ..10

## B.

*Green v. Zeigelman*,
310 Mich. App. 436 (2015) ................................................................. 25

*Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*,
No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209 (E.D. Mich. May 19, 2010) ................. 9

*Harris v. Nerium Int'l*,
No. 18-cv-02877-EDL, 2019 U.S. Dist. LEXIS 234461 (N.D. Cal. Jan. 25, 2019) .............. 12

*In re Merrill Lynch & Co., Inc. Rsch. Reps Sec. Litig.*,
No. 02 Civ. 8472 (JFK), 2008 U.S. Dist. LEXIS 53923 (S.D.N.Y. June 26, 2008) ............. 23

*Kitchen v. Farrell Log Structures LLC*,
No. 1:07-cv-219, 2008 U.S. Dist. LEXIS 132202 (W.D.N.C. Nov. 13, 2008) ................... 24

*Lee Contracting, Inc. v. Shore W. Mfg.*,
No. 1:19-cv-831, 2020 U.S. Dist. LEXIS 196309 (W.D. Mich. Oct. 22, 2020) ................. 11

*Leitner v. Sadhana Temple of N.Y., Inc.*,
No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479 (C.D. Cal. Oct. 17, 2014) ... 15

*Magna Powertrain de Mex. S.A. de C.V. v. Momentive Performance Materials USA LLC*,
192 F. Supp. 3d 824 (E.D. Mich. 2016) ................................................... 11

*McCourt v. A.O. Smith Water Prods. Co.*,
No. 14-221, 2015 U.S. Dist. LEXIS 110111 (D.N.J. Aug. 20, 2015) ......................... 12

*Mroz v. Lee*,
884 F. Supp. 246 (E.D. Mich. 1995) ...................................................... 20

*Opportunity Fund, LLC v. Savana, Inc.*,
No. 2:11-cv-528, 2014 U.S. Dist. LEXIS 115105 (S.D. Oh. Aug. 19, 2014) .................. 10

*Payne v. Sec. Sav. & Loan Ass'n, F.A.*,
924 F.2d 109, 111 (7th Cir. 1991) ....................................................... 14

*Phillips v. United Heritage Corp.*,
319 S.W.3d 156 (Tex. Ct. App. 2010) ..................................................... 16

*Plastronics Socket Parts., Ltd. v. Hwang*,
No. 18-cv-00014, 2019 U.S. Dist. LEXIS 111892 (E.D. Tex. June 11, 2019) ................. 19

*PNC Equip. Fin., LLC v. Darin (In re Darin)*,
631 B.R. 301 (Bankr. W.D. Mich. 2021) ................................................... 23

*Priestly v. Headminder, Inc.*,
647 F.3d 497 (2d Cir. 2011) ............................................................. 28

v

**B.**

*Provident Life & Accident Ins. Co. v. Adie*,
     982 F. Supp. 1269 (E.D. Mich. 1997) ...................................................................23

*Ryan Racing, LLC v. Gentilozzi*,
     231 F. Supp. 3d 269 (W.D. Mich. 2017) .............................................................25

*SCD Chem. Distribs., Inc. v Medley*,
     203 Mich. App. 374 (1994) ..................................................................................25

*Simplifi Health Benefit Mgmt., LLC v. Cayman Is. Nat'l Ins. Co.*,
     No. 2:13-cv-714, 2015 U.S. Dist. LEXIS 120137 (S.D. Ohio Sep. 9, 2015) .........20

*Software Freedom Conservancy, Inc. v. Best Buy Co.*,
     No. 09 Civ. 10155 (SAS), 2010 U.S. Dist. LEXIS 125426 (S.D.N.Y. Nov. 29, 2010)... 20, 21,
     22

*Soviet Pan Am Travel Effort v. Travel Comm., Inc.*,
     756 F. Supp. 126 (S.D.N.Y. 1991) ......................................................................15

*State Bank of India v. Chalasani (In re Chalasani)*,
     92 F.3d 1300 (2d Cir. 1996) ................................................................................21

*Stenger v. Freeman*,
     No. 14-cv-10999, 2015 U.S. Dist. LEXIS 127072 (E.D. Mich. Sep. 23, 2015)....................23

*Welco Indus., Inc. v. Applied Cos.*,
     617 N.E.2d 1129 (Ohio 1993).............................................................................14

*Wells v. Firestone Tire & Rubber Co.*,
     421 Mich. 641 (1984).........................................................................................25

*Wilcox v. Kalchert*,
     No. 2:20-cv-234, 2021 U.S. Dist. LEXIS 191701 (W.D. Mich. Oct. 5, 2021) .....................20

*Young-Allen v. Bank of Am., N.A.*,
     298 Va. 462 (2020)............................................................................................23

*Zinna v. Congrove*,
     No. 05-cv-01016-PAB, 2019 U.S. Dist. LEXIS 43783 (D. Colo. Mar. 18, 2019) ................21

### STATUTES AND OTHER AUTHORITY

15 Pa. Cons. Stat. § 361 ...........................................................................................18

Ariz. Rev. Stat. § 29-2601 .......................................................................................19

Del. Code tit. 6, § 18-217 ........................................................................................19

MCL 566.34...............................................................................................................24

**B.**

MCL 566.35.............................................................................................................24

Tex. Bus. Orgs. Code § 1.002................................................................................16

Tex. Bus. Orgs. Code § 10.001........................................................................ 16, 17

Tex. Bus. Orgs. Code. §10.002-004.......................................................................17

Tex. Bus. Orgs. Code § 10.003........................................................................ 17, 18

Tex. Bus. Orgs. Code § 10.008........................................................................ 19, 21

Tex. Bus. Orgs. Code §10.151................................................................................17

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ............................................................................................ 24, 28

Fed. R. Civ. P. 25 ............................................................................................... passim

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

## <u>STATEMENT OF ISSUES</u>

1.  **Is YesCare or CHS TX subject to personal jurisdiction in Michigan?**

    YesCare and CHS TX's Answer: No.

    Plaintiff May Answer: Yes.

2.  **What law applies to the question of whether YesCare or CHS TX is a successor to Corizon Health?**

    YesCare and CHS TX's Answer: Texas law

    Plaintiff May Answer: Michigan law

3.  **Does Texas law provide that YesCare or CHS TX is the proper defendant?**

    YesCare and CHS TX's Answer: No.

    Plaintiff May Answer: Yes.

4.  **Can Plaintiff seek the relief sought in his motion without a complaint?**

    YesCare and CHS TX's Answer: No.

    Plaintiff May Answer: Yes.

5.  **Does successor liability attach to YesCare or CHS TX under Michigan Law?**

    YesCare and CHS TX's Answer: No.

    Plaintiff May Answer: Yes.

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1. Tex. Bus. Orgs. Code § 10.001, *et al.*

2. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)

3. *Franklin Capital Funding, LLC v. Ace Funding Source, LLC*, No. 2:20-CV-12059-TGB-APP, 2021 U.S. Dist. LEXIS 62854 (E.D. Mich. Mar. 31, 2021)

4. *Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993)

5. *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 468 (2020)

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

## <u>INDEX OF EXHIBITS</u>

Exhibit A – Plan of Combination Merger

Exhibit B – Certificate of Conversion (Corizon Health)

Exhibit C – Form 805 Statement of Event or Fact (Combination Merger)

Exhibit D – Plan of Divisional Merger

Exhibit E – Form 805 Statement of Event of Fact (Divisional Merger)

Exhibit F – Certificate of Amendment (Corizon Health to Tehum Care Services)

Exhibit G – Certificate of Formation (YesCare)

x

**B.**

YesCare Corp. ("YesCare") and CHS TX, Inc. ("CHS TX") respond in opposition to *Plaintiff's Motion to Substitute YesCare Corp. and CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and to Require YesCare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendants Bohjanen, Kocha, Alford, Ghasemi and Yarid, or, in the Alternative, to Add YesCare Corp. and CHS TX, Inc. as Party Defendants* [ECF No. 25] (the "Motion").[1]

### PRELIMINARY STATEMENT

1. At the end of 2021, Defendant Corizon Health, Inc. ("Corizon Health") faced dire financial circumstances. Years of mounting costs, including litigation expenses relating to claims asserted by incarcerated individuals, threatened Corizon Health's ability to continue as a going concern. Corizon Health was deeply insolvent and headed towards bankruptcy. For a company in the highly regulated correctional healthcare industry, bankruptcy would have meant a liquidation of the company, a recovery of pennies on the dollar for the lenders of Corizon Health's nearly $100 million of first-priority secured debt, termination of employment for its over two thousand employees, potential interruption of necessary healthcare services to inmates of correctional facilities across the country during the pandemic, and zero recovery for its unsecured creditors and other stakeholders, including Plaintiff and other litigation claimants.

2. Faced with these circumstances, Corizon Health determined that the fairest and value-maximizing path forward would be a divisional merger under the Texas Business Organizations Code (the "TBOC")—a statutory framework that enables one or more corporate

---

[1] By responding to the Motion, YesCare and CHS TX do not concede that they are subject to personal jurisdiction in this Court or waive any defenses related to personal jurisdiction. As set forth herein, YesCare and CHS TX expressly assert those arguments and defenses.

1

**B.**

entities to merge into one or more surviving or new legal entities and re-allocate assets and liabilities among the resulting entities in a manner that is binding on creditors under Texas law.

3.       Corizon Health merged with several of its affiliates, survived that merger, and then divided into two entities:  (i) Corizon Health and (ii) CHS TX, a Texas corporation formed in connection with the merger.  In accordance with Texas law, that merger process re-allocated Corizon Health's assets and liabilities between these two entities.  The merger allocated to CHS TX all current customer contracts and related liabilities, including nearly $100 million of secured debt and litigation claims related to current customer contracts.  Corizon Health remained vested with, among other things, expired customer contracts, and certain cash, valuable rights to insurance coverage, and rights to additional funding from a credit-worthy affiliate under a funding agreement.  Because of the merger transaction, Corizon Health will be able to provide substantially greater consideration to unsecured creditors (including tort claimants like Plaintiff should he succeed in this action) than it would absent the merger.  This is because Corizon Health retained valuable assets while shedding nearly $100 million of secured debt that would otherwise have stood ahead of unsecured creditors.

4.       To ensure that this transaction was fair to all stakeholders, Corizon Health tasked FTI Capital Advisors, LLC ("FTICA") with conducting a fairness analysis and issuing a fairness opinion to the board of directors.  That expert opinion confirmed that the divisional merger rendered Corizon Health's unsecured creditors (such as Plaintiff) in a better position than if Corizon Health had been forced to liquidate or file for bankruptcy protection—paths that would have resulted in zero recoveries for these creditors.

5.       Without discussing any of the significant benefits to Corizon Health and its stakeholders from the divisional merger, the Motion seeks to portray that transaction as an attempt to shield Corizon Health's assets from litigation claimants.  To the contrary, the merger transaction

2

**B.**

preserved significant value for all unsecured creditors (such as litigation claimants). Substitution is both unnecessary and inappropriate under these circumstances.

6.  In addition to being wrong on the facts, Plaintiff is wrong on the law. The Motion should be denied for at least four independent reasons.

7.  ***First***, YesCare and CHS TX cannot properly be substituted in this action because neither is subject to personal jurisdiction in Michigan. Plaintiff does not even attempt to allege facts sufficient to establish either general or specific jurisdiction over either of the proposed new defendants. Nor can he because no such facts exist. Neither entity is "at home" in Michigan. Rather, both have their principal place of business in Tennessee, and are incorporated in Texas. YesCare has no contacts with Michigan whatsoever, and CHS TX has only two contracts with Michigan correctional facilities (and certain ancillary contracts related to those engagements), neither of which relate to Plaintiff's lawsuit. The Michigan long-arm statute does not allow Plaintiff to drag YesCare or CHS TX into this forum under these circumstances. The absence of personal jurisdiction requires the Court to deny the Motion.

8.  ***Second***, the question of successor liability is properly determined under Texas law, and under Texas law neither YesCare nor CHS TX are liable for any of the claims asserted in this case. The TBOC governs the challenged transaction, and it expressly provides that, in the context of a divisional merger, no interest is transferred, and the entity to which a claim is allocated under a plan of merger is the ***only*** successor to such claim. In accordance with Texas law, Plaintiff's lawsuit was allocated to (and thus remained vested in) Corizon Health through the divisional merger. As a result, Corizon Health is the only entity that is liable on Plaintiff's claim by operation of law. This, too, ends the inquiry.

9.  ***Third***, the Motion is an improper attempt to use Rule 25(c) to effect the "drastic" and "extraordinary" equitable remedy of rescinding the Texas divisional merger and other aspects

3

**B.**

of the 2022 Corporate Restructuring (as defined below).  The Motion makes various references to fraudulent conveyances and fraud, which are plainly Plaintiff's actual (though misguided) bases for the motion.  But each of these purported causes of action must be asserted in a complaint, not in a motion to substitute.  The Court should not permit Plaintiff to use the Motion as an end-run around the due-process rights of YesCare and CHS TX.

10.     ***Fourth***, even if Michigan law applied (and it does not), Plaintiff's claims for alter ego and successor liability fail.  This is not a case in which all valuable assets were stripped from an entity leaving creditors with claims against an empty shell.  Instead, Corizon Health was vested with valuable assets, and the 2022 Corporate Restructuring (as defined below) actually improved available recoveries for unsecured creditors.

11.     For these reasons, the Court should deny the Motion.  To the extent the Court does not deny the Motion as a matter of law, YesCare and CHS TX respectfully request that the Court set any factual disputes for an evidentiary hearing after appropriate time for discovery and supplemental briefing.

## BACKGROUND

12.     The Plaintiff William Kelly was incarcerated in the custody of the Michigan Department of Corrections ("MDOC") from April 2015 through July 2021.[2]  During this period, Corizon Health was obligated to provide medical services to MDOC prisoners under the terms of a five-year contract by and between MDOC and Corizon Health that became effective on June 1, 2016 (the "MDOC Contract").[3]  That contract has since expired and is no longer in effect.  On March 19, 2022, following his release from MDOC custody, Plaintiff filed a complaint (the

---

[2]     Complaint (as defined below) ¶ 9.

[3]     Complaint ¶ 10 ("At all relevant to this action, Defendant Corizon Health, Inc. was the contracted healthcare provider for the Michigan Department of Corrections.").

4

**B.**

"Complaint") against, among others, Defendant Corizon Health. [ECF No. 1]. In Count I of the Complaint, Plaintiff alleges that Defendant Corizon Health deprived him of his constitutional rights by acting with deliberate indifference to his medical needs. In Count II of the Complaint, Plaintiff alleges that Defendant Corizon Health committed common-law negligence, and in Count III of the Complaint, Plaintiff alleges that Defendant Corizon Health committed medical malpractice.

13.     On July 26, 2022, Plaintiff filed the instant Motion, seeking to substitute YesCare and CHS TX for Corizon Health as defendants in Plaintiff's lawsuit. [ECF No. 25].

14.     Corizon Health and several of its affiliates, including Corizon, LLC, formerly a Missouri limited liability company, Valitás Health Services, Inc. ("Valitas"), formerly a Delaware corporation, and Corizon Health of New Jersey, LLC, formerly a New Jersey limited liability company ("Corizon NJ" and together with Corizon Health, Corizon, LLC and Valitas, the "Company") experienced financial difficulties that reached a critical stage in 2021. Facing insolvency and the seemingly unavoidable prospect of bankruptcy and liquidation, the Company explored various restructuring alternatives. Eventually the Company's boards of directors determined that the 2022 Corporate Restructuring (as defined below) represented the best path forward for all stakeholders, including litigation claimants like Plaintiff.[4]

   **i.   *The Combination Merger***

15.     The 2022 Corporate Restructuring was effectuated under the TBOC through the following steps:

---

[4] *See* Exhibit A, Agreement and Plan of Combination Merger (the "Plan of Combination Merger"), Recitals ("the board of directors of [Corizon Health], the board of directors of Valitás, the Company in its capacity as the sole member of [Corizon, LLC] and Corizon NJ, Valitás in its capacity as the sole shareholder of [Corizon Health], Valitás Intermediate Holdings, Inc. . . , in its capacity as the sole shareholder of Valitás have each approved the Merger and this Plan.").

**B.**

- On April 28, 2022, Corizon Health (previously incorporated in Delaware) converted to a Texas corporation.[5]

- On May 1, 2022, the board of directors, shareholders, and members of the Company approved the 2022 Corporate Restructuring.[6]

- Each of Corizon Health, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").[7]

- Corizon Health filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022,[8] and the Combination Merger became effective on May 5, 2022;[9]

- Corizon Health was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.[10] The other entities ceased to exist.[11]

### ii.   *The Divisional Merger*

16.     With all assets and liabilities of the Company consolidated in Corizon Health, Corizon Health then completed a divisional merger (the "Divisional Merger"),[12] whereby, under the TBOC, all assets and liabilities of Corizon Health were allocated between Corizon Health and

---

[5] *See* Exhibit B, Certificate of Conversion dated April 28, 2022.

[6] *See* Plan of Combination Merger, Recitals ("the board of directors of [Corizon Health], the board of directors of Valitás, the Company in its capacity as the sole member of [Corizon, LLC] and Corizon NJ, Valitás in its capacity as the sole shareholder of [Corizon Health], Valitás Intermediate Holdings, Inc. . . , in its capacity as the sole shareholder of Valitás have each approved the Merger and this Plan.").

[7] *See* Plan of Combination Merger, Ex. A Certificate of Merger of Corizon Health, Valitas, Corizon NJ, and Corizon, LLC dated May 2, 2022 (the "Certificate of Combination Merger"); *see also* Plan of Combination Merger.

[8] *See* Certificate of Combination Merger.

[9] *See* Exhibit C, Form 805, Statement of Event or Fact, May 5, 2022.

[10] *See* Plan of Combination Merger.

[11] *See* Plan of Combination Merger; *see also* Certificate of Combination Merger.

[12] *See* Exhibit D, Agreement and Plan of Divisional Merger ("Plan of Merger"), Ex. A, Certificate of Merger dated May 3, 2022 (the "Certificate of Merger").

6

## B.

CHS TX, a Texas corporation formed through the Divisional Merger.[13]  The Divisional Merger was effectuated through the following steps:

·   Corizon Health drafted the Plan of Merger, which provided that CHS TX would be formed and documented which assets and liabilities were to remain with Corizon Health and which were to be allocated to CHS TX;[14]

·   The board of directors and sole shareholder of Corizon Health reviewed the Plan of Merger with the assistance of their respective outside advisors, determined that the Divisional Merger was in the best interests of Corizon Health, its shareholders and its creditors, and approved the Divisional Merger on May 1, 2022;[15]

·   The approved Plan of Merger was in writing and included all information required by the TBOC;[16]

·   Corizon Health filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022,[17] and the Divisional Merger became effective on May 5, 2022.[18]

17.    After the Divisional Merger became effective, CHS TX was acquired by YesCare as the last step, along with the Combination Merger and Divisional Merger, in Corizon Health's

---

[13] *See* Plan of Merger, Ex. B (Certificate of Formation).

[14] *See* Plan of Merger, §§ 3-4.

[15] *See* Plan of Merger, Recitals ("the board of directors of the Company and [Valitas], in its capacity as the sole shareholder of the Company, have each approved the Merger and this Plan."); Written Consent of the Sole Shareholder of Corizon Health, Inc., May 1, 2022 ("the Shareholder deems it advisable and in the best interest of [Corizon Health] to effectuate a divisional merger . . . pursuant to which . . . the assets and liabilities of [Corizon Health] will be allocated and vested in [Corizon Health] and [CHS TX], in accordance with and as further described in the [Plan of Merger]"); Unanimous Written Consent of the Board of Directors of Corizon Health, Inc., May 1, 2022 ("the board of directors deems it advisable and in the best interest of [Corizon Health] to effectuate a divisional merger . . . pursuant to which . . . the assets and liabilities of [Corizon Health] will be allocated and vested in [Corizon Health] and [CHS TX], in accordance with and as further described in the [Plan of Merger]").

[16] *See* Plan of Merger, §§ 1, 3-8.

[17] *See* Certificate of Merger.

[18] *See* Exhibit E, Form 805, Statement of Event or Fact, May 5, 2022.

**B.**

corporate restructuring (the "2022 Corporate Restructuring").  Corizon Health then changed its name to Tehum Care Services, Inc.[19]

18.    As a result of the 2022 Corporate Restructuring, Corizon Health was allocated and remained vested with all inactive or expired customer contracts (including the MDOC Contract, which has always been an asset of Corizon Health) as well as all liabilities related to such contracts.[20]  Corizon Health was also allocated and remained vested with, among other assets, (i) $1 million in cash, (ii) the right, subject to certain conditions being met, to $4 million under a $15 million total funding commitment (the "Funding Agreement") provided by M2 LoanCo, LLC ("M2 LoanCo"), an affiliate of Corizon Health and (iii) the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger (including the contract at issue in Plaintiff's case).[21]  Critically, Corizon Health was also released of nearly $100 million of senior secured credit debt that, absent the 2022 Corporate Restructuring, would have encumbered all of the Company's assets and left no value for unsecured creditors.[22]  This allowed Corizon Health's unsecured creditors the ability to assert claims against Corizon Health's assets, without standing behind nearly $100 million of secured debt.  The secured debt obligations were allocated to CHS TX.[23]

---

[19] *See* Exhibit F, Certificate of Amendment of Corizon Health, Inc. dated June 1, 2022.

[20] *See* Plan of Merger, Schedule 3.01(b); Schedule 4.01(b).

[21] *See* Plan of Merger, Schedule 3.01(b).

[22] *See* Plan of Merger, Schedule 4.01(a)(1).

[23] *See* Plan of Merger, Schedule 4.01(a).

## B.

19.     As noted above, the 2022 Corporate Restructuring was the subject of a fairness opinion from FTICA that determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors. Specifically, FTICA compared potential recoveries for unsecured creditors under the proposed transaction to those under a liquidation or a bankruptcy filing, and determined that unsecured creditors would have access to equal or greater recoveries if the Company completed the 2022 Corporate Restructuring. The 2022 Corporate Restructuring unlocks greater value for Corizon Health's unsecured creditors by (i) releasing Corizon Health from nearly $100 million of existing secured debt, which in turn was allocated to CHS TX;[24] (ii) providing Corizon Health the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger;[25] (iii) allocating $1 million in cash to Corizon Health;[26] and (iv) establishing the Funding Agreement provided to Corizon Health by M2 LoanCo, which provides up to $15 million for unsecured creditors of the Company, $4 million of which is allocated to Corizon Health's creditors.

### STANDARD OF REVIEW

20.     The party alleging a transfer of interest bears the burden of proving it by admissible evidence.  *See Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*, No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209, at *9 (E.D. Mich. May 19, 2010) (denying motion to substitute where the requesting party "ha[d] not demonstrated that a transfer of interest took place as contemplated by Fed. R. Civ. P. 25(c)."); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145

---

[24] *See* Plan of Merger, Schedule 4.01(a)(1).

[25] *See* Plan of Merger, Schedule 3.01(b)(9)-(11).

[26] *See* Plan of Merger, Schedule 3.01(b)(1).

9

**B.**

(6th Cir. 1997) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994)) (explaining

that evidence submitted with a motion must be admissible in substance); *Gilmore v. Augustus*, No.

12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581, at *13 (E.D. Cal. May 27, 2015)

(denying plaintiff's motion to substitute because it relied upon inadmissible hearsay).  The same

is true for a party asserting successor liability.  *See Opportunity Fund, LLC v. Savana, Inc.*, No.

2:11-cv-528, 2014 U.S. Dist. LEXIS 115105, at *7 (S.D. Oh. Aug. 19, 2014) ("The party that

asserts successor liability bears the burden of proving facts which bring the case within one of

[the] exceptions") (citation omitted).

## ARGUMENT

### I.     The Court Lacks Personal Jurisdiction over YesCare and CHS TX.

21.     "Michigan law recognizes two bases for personal jurisdiction over a corporation:

(1) general, and (2) specific (called 'limited personal jurisdiction' in state law parlance)."  *Franklin*

*Capital Funding, LLC v. Ace Funding Source, LLC*, No. 2:20-CV-12059-TGB-APP, 2021 U.S.

Dist. LEXIS 62854, at *8 (E.D. Mich. Mar. 31, 2021).  General personal jurisdiction exists when

an entity's contacts within the forum are so "continuous and systematic" as to render it essentially

at home in the forum state.  *Id.*  Limited personal jurisdiction, by contrast, subjects an entity to suit

in the forum state "only on claims that arise out of the [entity's] activities in the forum state."  *Id.*

at *16 (citation omitted).

22.     Neither YesCare nor CHS TX is subject to either general or limited personal

jurisdiction here.  That alone requires denial of the Motion.

### A.     YesCare and CHS TX Are Not Subject to General Personal Jurisdiction in Michigan.

23.     "[A] court may exercise general jurisdiction over corporations only 'when their

affiliations with the State are so 'continuous and systematic' as to render them essentially at home

in the forum State.'"  *Lee Contracting, Inc. v. Shore W. Mfg.*, No. 1:19-cv-831, 2020 U.S. Dist.

**B.**

LEXIS 196309, at *10 (W.D. Mich. Oct. 22, 2020).  General jurisdiction over a corporation is typically reserved for the corporation's principal place of business or state of incorporation.  *Id.* at *11.  As the United States Supreme Court has stated, "[w]ith respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction[,]'" and "have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable."  *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citation omitted); *see also Magna Powertrain de Mex. S.A. de C.V. v. Momentive Performance Materials USA LLC*, 192 F. Supp. 3d 824, 828 (E.D. Mich. 2016) (finding that corporations are "'at home' only in their place of incorporation or principal place of business").

24.     For parties seeking to assert general jurisdiction over an entity that does not have its headquarters or principal place of business in the State, "an 'exceptional case' must be shown[.]"  *Lee Contracting, Inc.*, 2020 U.S. Dist. LEXIS 196309, at *11 (citing *Daimler AG*, 571 U.S. at 139 n.19) ("We do not foreclose the possibility that in an exceptional case a corporation's operations in a forum other than its principal place of business may be so substantial and of such a nature as to render the corporation at home in that State.").

25.     Here, it is not disputed that YesCare and CHS TX's state of incorporation is Texas and their principal place of business is in Tennessee.[27]  Plaintiff does not even attempt to identify *any* basis for this Court's exercise of personal jurisdiction over these non-Michigan entities, much less an "exceptional" one.  Nor could such a case be made: YesCare has no business at all in Michigan, and CHS TX's contact with Michigan is limited to providing healthcare services to correctional facilities in two counties (St. Clair and Calhoun).[28]  These services have nothing to do

---

[27] *See* Certificate of Merger; *see also* Exhibit G, Certificate of Formation of YesCare Corp. dated January 31, 2022

[28] *See* Plan of Merger, Schedule 3.01(a)(NC).

B.

with Plaintiff's lawsuit.  Moreover, CHS TX operates its business almost entirely out of Tennessee and it has no offices in Michigan.[29]  The minimal contacts that CHS TX has with this state fall far short of the "exceptional" levels of contact necessary to create general jurisdiction over an out-of-state defendant.  *See Daimler AG*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them."); *Harris v. Nerium Int'l*, No. 18-cv-02877-EDL, 2019 U.S. Dist. LEXIS 234461, at *5 (N.D. Cal. Jan. 25, 2019) ("Even the presence of 'multiple offices, continuous operations, and billions of dollars' worth of sales' in the forum' is insufficient to subject a corporation to general personal jurisdiction."); *Bayer Healthcare LLC v. Nektar Therapeutics*, No. 17-cv-05055-LHK, 2018 U.S. Dist. LEXIS 41193, at *14 (N.D. Cal. Mar. 12, 2018) (allegations that defendants "have employees and a manufacturing facility in California, maintain a partnership with [a] California-based [company], buy products made in California, and sell products in California" are insufficient 'to support a finding that [defendants] are 'essentially at home in' California."); *McCourt v. A.O. Smith Water Prods. Co.*, No. 14-221, 2015 U.S. Dist. LEXIS 110111, at *12-13 (D.N.J. Aug. 20, 2015) (finding no general jurisdiction in New Jersey over corporation that leased two office spaces in New Jersey and had New Jersey employees).

### B.     Neither YesCare Nor CHS TX Is Subject to Limited Personal Jurisdiction in This Case.

26.     To determine whether a defendant may constitutionally be subjected to limited personal jurisdiction in Michigan, this Court applies a three-prong test.  *Franklin Capital Funding, LLC*, 2021 U.S. Dist. LEXIS 62854, at *16.  "First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.  Second, the cause of action must arise from the defendant's activities there.  Finally, the acts of the

---

[29] *See* Certificate of Merger.

**B.**

defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Id.* (citations omitted).

27.     YesCare has no contacts with Michigan whatsoever.  That ends the personal jurisdiction inquiry as to that entity.

28.     As for CHS TX, while it does conduct limited business in Michigan with two counties, the events giving rise to Plaintiff's claims in no way relate to either of those two counties or any other activity in Michigan that CHS TX conducts.  Rather, Plaintiff's claims and allegations arise out of events occurring at various correctional facilities that are part of the MDOC, where CHS TX has no contractual relationship.  The MDOC Contract—the one from which Plaintiff's alleged injuries arise—was entered into by Corizon Health and remains with Corizon Health following the 2022 Corporate Restructuring.[30]  YesCare and CHS TX have nothing to do with it.

**II.     Texas Law, Which Governs the Determination of Successor Liability, Provides That Liability for Plaintiff's Claims Remains with Corizon Health.**

29.     Even if the Court finds that it has personal jurisdiction over YesCare or CHS TX (it does not), the Court should still deny the Motion.  As shown below, (i) Texas law governs questions of successor liability arising from the 2022 Corporate Restructuring; (ii) the 2022 Corporate Restructuring complied with Texas law in all respects, (iii) Texas law provides that no

---

[30] *See* Plan of Merger, Schedule 3.01(b)(3).

**B.**

transfer occurred through the 2022 Corporate Restructuring and that liability remains with Corizon Health and (iv) it would be an abuse of discretion for this Court to allow substitution in this case.

A. **Texas Law, Not Michigan Law, Applies to the Court's Assessment of Successor Liability Resulting from the 2022 Corporate Restructuring.**

30. Texas law applies to the Court's analysis regarding the 2022 Corporate Restructuring for three separate and independent reasons. *First*, following a statutory merger, courts look to the governing statute to determine which party to the merger bears post-merger liability. *See Welco Indus., Inc. v. Applied Cos.*, 617 N.E.2d 1129, 1132 (Ohio 1993) (finding that if "the transaction was a merger," then the "liability [is] imposed by statute"); *see also Payne v. Sec. Sav. & Loan Ass'n, F.A.*, 924 F.2d 109, 111 (7th Cir. 1991) (looking to the "congressional scheme that governs the transfer of assets that took place" to determine the successor on plaintiff's claim following a statutory receivership). Accordingly, this Court must look to the TBOC to determine which entity resulting from the 2022 Corporate Restructuring bears liability in connection with Plaintiff's claims.

31. *Second*, the Court should apply the law of the state of incorporation of the purported successor to determine whether to impose alter ego or successor liability. *See City Envtl. v. United States Chem. Co.*, 814 F. Supp. 624, 634 (E.D. Mich. 1993) ("All the corporations involved here are creatures of state law and such questions [of successor liability] should be determined by reference to the law of the state of their incorporation, unless the application of that law would conflict with federal policy"); *see also Bouchillon v. Deutz-Fahr*, 268 F. Supp. 3d 890, 905 (N.D. Miss. 2017) (applying the laws of the place of incorporation to "the successor liability issues"). This is consistent with public policy, as the courts "should seek to further harmonious relations between states and to facilitate commercial intercourse between them," which would be

14

**B.**

undermined if courts of one state were to challenge the corporate formations made in accordance with other states' laws. *Bouchillon* at 905.

32.     ***Third***, as Plaintiff acknowledges, a court should apply "the local law of the state where [an] injury occurred, unless, with respect to the particular issues, ***some other state has a more significant relationship***." Mot. at 15 (emphasis added). While Michigan may have the most significant relationship to Plaintiff's alleged injuries, the matter at issue here is not the tort alleged in the Complaint, but the legal effect of a Texas merger on questions of successor liability. There is no doubt that Texas has a more significant relationship to that issue than does Michigan. *See Soviet Pan Am Travel Effort v. Travel Comm., Inc.*, 756 F. Supp. 126, 131 (S.D.N.Y. 1991) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away."); *Leitner v. Sadhana Temple of N.Y., Inc.*, No. CV 13-07902 MMM (Ex), 2014 U.S. Dist. LEXIS 198479, at *49 (C.D. Cal. Oct. 17, 2014) ("New York, as the Temple's state of incorporation, has a substantial interest in determining the nature and extent to which entities incorporated within its borders can be held liable. Whatever interest California has in regulating the conduct of foreign businesses is insubstantial by comparison.").[31]

33.     Applying Michigan law to determine successor liability in the context of a Texas statutory merger risks creating inconsistent results. *See Bouchillon*, 268 F. Supp. 3d at 905 (finding that applying the law of the state of merger would "advance the principles of certainty,

---

[31] Plaintiff argues that a state's alter-ego and successor-liability laws conflict with federal policy if they allow a state to "becom[e] a haven for companies seeking to avoid their obligations" (Mot. at 13-14). The TBOC has provided for divisional mergers for over 30 years, with no court finding that it creates a conflict with federal policy. Additionally, several other states have similar divisional merger statutes, and no court has found that any of their laws conflict with federal policy. In any event, far from providing Corizon Health with a "haven . . . to avoid [its] obligations," the Divisional Merger provided Corizon Health access to as much, if not *greater*, value for its unsecured creditors.

**B.**

predictability, and uniformity of result" and "is vastly preferable to the alternative, which would base a . . . corporation's successor liability on the law of whichever state an injury happened to occur").  For each of these reasons, this Court should look to Texas law when determining questions of successor liability resulting from the 2022 Corporate Restructuring.

<h3 style="text-align:center">B.   The Divisional Merger Complied with Texas Law.</h3>

34.   The TBOC "applies to all business entities, regardless of when such entities were formed." *Phillips v. United Heritage Corp.*, 319 S.W.3d 156, 163 n.5 (Tex. Ct. App. 2010).  The single party to the Divisional Merger, Corizon Health, was properly domiciled in Texas at the time of the Divisional Merger, and subject to Texas law.[32]  Corizon Health, therefore, was permitted to participate in a divisional merger under the TBOC.[33]

35.   The TBOC expressly permits a divisional merger by one organization whereby that entity's assets and liabilities are divided among two or more organizations that survive or are created by a plan of merger.  *See* Tex. Bus. Orgs. Code § 1.002(55)(A) ("Merger' means (A) the division of a domestic entity into two or more new domestic entities or other organizations or into a surviving domestic entity and one or more new domestic or foreign entities or non-code organizations"); *see also* Tex. Bus. Orgs. Code § 10.003 (providing for "more than one

---

[32] *See* Certificate of Conversion.  As discussed above, pursuant to the Combination Merger, which the parties underwent prior to the Divisional Merger, all assets and liabilities, including those of pre-merger Corizon Health, were merged into post-merger Corizon Health, as the survivor of such merger.  The Combination Merger was proper under Texas law.  *See* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) ("Merger' means . . . (B) the combination of one or more domestic entities[.]").

[33] *See* Tex. Bus. Orgs. Code Ann. § 10.001(a) ("A domestic entity may effect a merger by complying with the applicable provisions of this code. A merger must be set forth in a plan of merger."); *see also* Tex. Bus. Orgs. Code Ann. § 1.002(55)(A) ("Merger means . . . (A) the division of a domestic entity into two or more new domestic entities or other organizations or into a surviving domestic entity and one or more new domestic or foreign entities or non-code organizations").

16

**B.**

organization [] to survive or to be created by the plan of merger"). That is precisely what Corizon Health did here.

36.     The TBOC sets forth the procedures that an entity must follow to effect a divisional merger. It provides that "a domestic entity may effect a merger by complying with the applicable provisions of [the TBOC]" and that "[a] merger must be set forth in a plan of merger." Tex. Bus. Orgs. Code Ann. §§ 10.001(a) and (b).[34]  It also outlines the provisions that are required to be included in a plan of merger, and those provisions that are discretionary. *See* Tex. Bus. Orgs. Code. Ann. §10.002-004. If a divisional merger is being effectuated, then the plan of merger must specify the manner and basis of allocating and vesting the property and liabilities of each merger party among one or more of the surviving or new organizations. *See* Tex. Bus. Orgs. Code Ann. §§ 10.003 ("If more than one organization is to survive or to be created by the plan of merger, the plan of merger must include . . . (1) the manner and basis of allocating and vesting the property of each organization that is a party to the merger among one or more of the surviving or new organizations."). If any Texas organization is a party to the merger, a certificate of merger must be filed with the Secretary of State in order for the merger to take effect. *See* Tex. Bus. Orgs. Code Ann. §10.151.

37.     Corizon Health satisfied all of these requirements. Corizon Health effectuated the Divisional Merger through the Plan of Merger and Certificate of Merger. The Plan of Merger was properly approved by Corizon Health,[35] was in writing, and included all the information required

---

[34] "To effect a merger, each domestic entity that is a party to the merger must act on and approve the plan of merger in the manner prescribed by this code for the approval of mergers by the domestic entity." Tex. Bus. Orgs. Code Ann. § 10.001(b).

[35] *See* Plan of Merger, Recitals ("the board of directors of the Company and [Valitas], in its capacity as the sole shareholder of the Company, have each approved the Merger and this Plan.").

**B.**

by section 10.002 of the TBOC.[36]  The Plan of Merger also specified how all assets and liabilities

of the combined Corizon Health would be allocated among Corizon Health or CHS TX,

respectively, as required by Section 10.003 of the TBOC.[37]  The Plan of Merger provided that the

merger would take effect as set forth in the Certificate of Merger.[38]  Because Corizon Health is

and was a Texas entity at the time of the Divisional Merger, it filed the Certificate of Merger with

the Secretary of State.[39]  The Texas Secretary of State accepted the filing on May 3, 2022,[40] and

the Divisional Merger became fully effective on May 5, 2022.[41]

> **C.    Texas Law provides that Corizon Health is Exclusively Liable on**
> **Plaintiff's Claim.**

38.     For over 30 years, Texas law has permitted divisional mergers that exclusively

allocate assets and liabilities between the surviving entity and a new entity created by the

transaction.  Huff, The New Texas Business Corporation Act Merger Provisions, 21 St, Mary's

L.J. 109, 110 (1989).  Several other states have since enacted similar statutes.  *See* 15 Pa. Cons.

Stat. § 361; Ariz. Rev. Stat. Ann. § 29-2601; Del. Code Ann. tit. 6, § 18-217(b)-(c).  Any exclusive

allocation through a divisional merger under the TBOC is fully enforceable under Texas law.  *See,*

*e.g.*, *Plastronics Socket Parts., Ltd. v. Hwang*, No. 18-cv-00014, 2019 U.S. Dist. LEXIS 111892,

at *17–18 (E.D. Tex. June 11, 2019) *adopted* 2019 U.S. Dist. LEXIS 111206 (E.D. Tex. July 3,

---

[36] *See* Plan of Merger, §§ 1-6, 8.

[37] *See* Plan of Merger, § 3-4; Schedule 3.01(a)-(b); Schedule 4.01(a)-(b).

[38] *See* Plan of Merger, § 2(a).

[39] *See* Certificate of Merger.

[40] *See* Certificate of Merger.

[41] *See* Exhibit E, Form 805, Statement of Event or Fact, May 5, 2022.

**B.**

2019) (deciding rights of parties based on allocation of assets effected through a Texas divisional merger as provided by the TBOC).

39.     Importantly, the TBOC provides that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation." and "no other party to the merger. . . and no other new domestic entity. . . created under the plan of merger is liable for the debt or other obligation."  *Id.* § 10.008(a)(3) and (4).[42] The Plan of Merger confirms that it shall have the effects set forth in Section 10.008 of the TBOC.[43] Thus, under Texas law, CHS TX, an entity created by the Plan of Merger, cannot be liable for any obligations allocated to Corizon Health.  *See id.*

40.     In accordance with these provisions, once the Divisional Merger took effect, Corizon Health ceased to exist in its former capacity; all of its assets and liabilities were allocated between Corizon Health or CHS TX in accordance with the Plan of Merger.  As relevant here, Plaintiff's lawsuit was specifically listed on the schedule of lawsuits and claims that were allocated

---

[42] Tex. Bus. Orgs. Code § 10.008(a) provides in relevant part:

> When a merger takes effect: . . . (3) all liabilities and obligations of each organization that is a party to the merger are allocated to one or more of the surviving or new organizations in the manner provided by the plan of merger; (4) each surviving or new domestic organization to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation, and, except as otherwise provided by the plan of merger or by law or contract, no other party to the merger, other than a surviving domestic entity or non-code organization liable or otherwise obligated at the time of the merger, and no other new domestic entity or non-code organization created under the plan of merger is liable for the debt or other obligation . . .

[43] *See* Plan of Merger, § 2(c).

19

**B.**

to Corizon Health—*i.e.*, it was not allocated to CHS TX (or YesCare).[44]  CHS TX did not exist

prior to the 2022 Corporate Restructuring and therefore was never liable for Plaintiff's claim.

Rather, all liability in connection with Plaintiff's lawsuit rested with Corizon Health before the

Divisional Merger, and all liability in connection with Plaintiff's lawsuit remained with Corizon

Health after the Divisional Merger.  It is therefore Corizon Health alone—not CHS TX or

YesCare—that is and has always been the proper defendant in this action.

> **D.**     **It Would Be an Abuse of Discretion for This Court to Find YesCare or CHS TX Liable for Plaintiff's Claims Because There Has Been No Transfer.**

41.     "[S]ubstitution under Rule 25(c) is discretionary."  *Wilcox v. Kalchert*, No. 2:20-

cv-234, 2021 U.S. Dist. LEXIS 191701, at *3 (W.D. Mich. Oct. 5, 2021); *see also Mroz v. Lee*,

884 F. Supp. 246, 249 (E.D. Mich. 1995) ("Rule 25 sets out a discretionary standard for the Court

to determine whether a party should be substituted.  It also allows the original party to continue

the action.").  Importantly, Rule 25 permits (but does not require) substitution "[i]f an interest is

transferred."  Fed. R. Civ. P. 25.  It is well-established that "[i]t would be an abuse of discretion

for a court to allow a substitution in the absence of a transfer in interest."  *Software Freedom*

*Conservancy, Inc. v. Best Buy Co.*, No. 09 Civ. 10155 (SAS), 2010 U.S. Dist. LEXIS 125426, at

*9 (S.D.N.Y. Nov. 29, 2010) (internal quotation marks omitted); *Simplifi Health Benefit Mgmt.,*

*LLC v. Cayman Is. Nat'l Ins. Co.*, No. 2:13-cv-714, 2015 U.S. Dist. LEXIS 120137, at *5 (S.D.

Ohio Sep. 9, 2015) (denying substitution where "the cause of action in this case was specifically

excluded from the transfer"); *State Bank of India v. Chalasani (In re Chalasani),* 92 F.3d 1300,

1312 (2d Cir. 1996) ("For Society to be substituted for State Bank, there must have been a transfer

of interest from it to Society.  Here there was none.  Although granting substitution of one party

---

[44] *See* Plan of Merger, Schedule 4.01(b)(RL) (listing William Kelly's lawsuit as a liability allocated to Corizon Health).

## B.

in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest." (internal citation omitted)); *Zinna v. Congrove*, No. 05-cv-01016-PAB, 2019 U.S. Dist. LEXIS 43783, at *30-31 (D. Colo. Mar. 18, 2019) (holding that a party potentially liable to plaintiff pursuant to an indemnity agreement cannot be substituted because no transfer occurred).

42.     Texas law is clear that the allocation of assets and liabilities through a divisional merger is not a "transfer."  Tex. Bus. Orgs. Code § 10.008(a)(2)(C);[45] *see also Simplifi Health Benefit Mgmt.*, 2015 U.S. Dist. LEXIS 120137, at *7 ("To determine whether a transfer of interest has occurred, the Court applies state substantive law.").  As a result, the Motion should be denied.

43.     Courts have recognized that Rule 25(c) "does not easily lend itself to contested motions practice."  *Software Freedom Conservancy*, 2010 U.S. Dist. LEXIS 125426, at *9.  For that reason, the "primary consideration in deciding a motion pursuant to Rule 25(c)" is whether "substitution will expedite and simplify the action."  *Id.* at *8–9 (internal quotation marks omitted).  Here, Plaintiff's request for substitution will only complicate and delay the action, as it will require significant discovery, further briefing and a full trial or evidentiary hearing.  Under these circumstances, a protracted dispute regarding substitution serves no purpose.

44.     Nor will Plaintiff be prejudiced if substitution is denied.  Rule 25(c) is clear that a case may continue against the original defendant while still binding any successor entity, regardless of whether that entity was substituted during the case.  *Software Freedom Conservancy*, 2010 U.S. Dist. LEXIS 125426, at *9 (Rule 25(c) "permits automatic continuation of a lawsuit

---

[45] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested, subject to any existing liens or other encumbrances on the property, in one or more of the surviving or new organizations as provided in the plan of merger *without: . . . any transfer or assignment having occurred. . . .*" Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

against an original corporate party, although the outcome will bind the successor corporation, unless the court believes the transferee's presence would facilitate the conduct of the litigation." (internal quotation marks omitted)).  Substitution is therefore neither necessary nor appropriate.

### III.   The Motion Should Be Denied as an Improper Attack on the 2022 Corporate Restructuring under the Guise of Substitution.

45.     This is not a typical request for substitution following an asset sale or single-survivor merger resulting in an uncontested transfer of liability.  Rather, the Motion is really an attack on—and attempt to have this Court unwind—the 2022 Corporate Restructuring.  That is not a proper use of a Rule 25(c) motion, and the Court should reject it.

46.     First, as shown above, the relief Plaintiff seeks is incompatible with Texas law, which explicitly provides that Corizon Health is the only party liable to Plaintiff, should he succeed in this action.  The relief that Plaintiff seeks is not mere substitution, but the "drastic" and "extraordinary" equitable remedy of rescission.  *Allen v. Westpoint-Pepperell, Inc.*, 933 F. Supp. 261, 268 (S.D.N.Y. 1996) (internal quotation marks omitted), *aff'd sub nom Krumme v. Westpoint Stevens Inc.*, 143 F.3d 71 (2d Cir. 1998); *Young-Allen v. Bank of Am., N.A.*, 298 Va. 462, 468 (2020) (calling rescission "the highest and most drastic exercise of the power of a court of chancery—to annul and set at naught the solemn contracts of parties."); *see Provident Life & Accident Ins. Co. v. Adie*, 982 F. Supp. 1269, 1271 (E.D. Mich. 1997).  But rescission cannot be sought through motion.  Rather, "a claim seeking the equitable rescission of a contract must be adequately pled in a valid pleading." *Young-Allen*, 298 Va. at 468.  Not only that, but Plaintiff must show fraud or inequitable conduct through "clear and convincing evidence." *Stenger v. Freeman*, No. 14-cv-10999, 2015 U.S. Dist. LEXIS 127072, at *9 (E.D. Mich. Sep. 23, 2015).  By disregarding these requirements and presenting the issue as a Rule 25(c) motion, Plaintiff is attempting to skip the necessary steps of pleading his cause of action, allowing an answer,

**B.**

subjecting his claim to dispositive motion practice, and developing a factual record sufficient to prove his case by clear and convincing evidence. Due process does not allow such shortcuts.

47.     The same is true to the extent Plaintiff's request for substitution rests on allegations that the 2022 Corporate Restructuring constitutes a fraudulent transfer or any other type of fraud. *See, e.g.*, Mot. at 10, 16. These allegations require Plaintiff to state a claim in a complaint, not merely seek substitution by motion. Indeed, the Michigan Voidable Transfer Act, MCLS § 566.34, requires a plaintiff to plead the following to state a claim: "(1) that the defendant is a person under the Act; (2) that it made a conveyance; (3) that it did so with actual intent to hinder, delay, or defraud creditors; and (4) that plaintiffs are creditors under the Act." *Emmet v. Franco*, No. 16-cv-11211, 2016 U.S. Dist. LEXIS 109726, at *20-21 (E.D. Mich. Aug. 18, 2016) (finding Plaintiff failed to allege all necessary elements under the Fraudulent Conveyance Act); *see also PNC Equip. Fin., LLC v. Darin (In re Darin)*, 631 B.R. 301, 312 (Bankr. W.D. Mich. 2021) (granting summary judgment for defendants due to plaintiff's failure to state a "prima facie case"). These claims must also meet the heightened pleading standards of Rule 9(b). *See* Fed. R. Civ. P. 9(b); *In re Merrill Lynch & Co., Inc. Rsch. Reps Sec. Litig.*, No. 02 Civ. 8472 (JFK), 2008 U.S. Dist. LEXIS 53923, at *22 (S.D.N.Y. June 26, 2008) (applying Rule 9(b) to non-fraud claims that "indisputably [were] based on plaintiffs' allegations of Defendant's fraudulent conduct"); *Kitchen v. Farrell Log Structures LLC*, No. 1:07-cv-219, 2008 U.S. Dist. LEXIS 132202, at *3–4 (W.D.N.C. Nov. 13, 2008) (applying Rule 9(b) to allegations of fraudulent conduct in the context of an alter ego claim). Here, Plaintiff has not even sought to plead fraud or fraudulent conveyance, much less stated a claim for either cause of action. Plaintiff's attempt to end-run basic pleading requirements through the use of a Rule 25(c) motion should be rejected.

48.     Nor can Plaintiff succeed on its purported fraudulent transfer claim. ***First***, there was no transfer—as discussed above, the TBOC is clear that a merger does not operate as a

**B.**

transfer.  **Second**, even if there was a transfer, it was for reasonably equivalent value.  In exchange for certain assets being vested in CHS TX, Inc., CHS TX assumed nearly $100 million of secured debt, leaving Corizon Health with an enhanced ability to pay unsecured creditors.[46]  This is reasonably equivalent value under both MCL 566.34 and MCL 566.35.

### IV.   Plaintiff's Fraud, Alter Ego, and Successor Liability Theories Fail.

49.     Finally, Plaintiff argues that Michigan law applies to the issues of alter ego and successor liability.  Even if Plaintiff were correct that Michigan law applies here (and he is not), the Motion would still fail to state any basis for finding that YesCare or CHS TX is liable to Plaintiff.

50.     As an initial matter, there can be no successor liability as to YesCare, which did not participate in the Divisional Merger and is merely the parent of CHS TX.  *Best Foods v. Aerojet-General Corp.*, 173 F. Supp 2d 729, 757 (W.D. Mich. 2001) (parent corporation cannot be held liable solely on the basis of a *de facto* merger of a subsidiary with a predecessor).  Plaintiff asserts no basis for why corporate separateness between CHS TX and YesCare should be ignored.

### A.   CHS TX Is Not Corizon Health's Alter Ego.

51.     Plaintiff relies on alter ego theory to argue that the corporate separateness between CHS TX and YesCare, on the one hand, and Corizon Health, on the other, should be disregarded and all three entities should be treated as one.  But this theory is inapt, as it applies only in cases involving corporate parents or owners.  Every one of the cases Plaintiff cites occurs in this context. *Wells v. Firestone Tire & Rubber Co.*, 421 Mich. 641, 650-51 (1984) (analyzing corporate separateness between Firestone, parent, and its wholly owned subsidiary); *Green v. Zeigelman*, 310 Mich. App. 436, 452 (2015) (analyzing corporate separateness of owners and company);

---

[46] *See* Plan of Merger, Schedule 4.01(a)(1).

24

**B.**

*Foodland Distribs. v. Al-Naimi*, 220 Mich. App. 453, 456 (1996) (analyzing whether owner should be liable for it's company's debt); *Daymon v. Fuhrman*, No. 249007, 2004 Mich. App. LEXIS 2607, at *3-4 (App. Ct. 1ˢᵗ Dist. Oct. 5, 2004) (analyzing whether owner should be personally liable for default judgment against his defunct company); *Ryan Racing, LLC v. Gentilozzi*, 231 F. Supp. 3d 269, 281-82 (W.D. Mich. 2017) (applying alter ego to whether individual owner should liable for defunct company's claim and not to whether purchaser of defunct company's assets should be liable).

52.     Here, neither YesCare nor CHS TX is Corizon Health's parent or owner, so alter ego theory does not apply.

**B.     Plaintiff Has Failed to Make the Required Showing for Veil-Piercing.**

53.     Michigan law establishes the following standard for piercing the corporate veil: "First, the corporate entity must be a mere instrumentality of another entity or individual.  Second, the corporate entity must be used to commit a fraud or wrong.  Third, there must have been an unjust loss or injury to the plaintiff."  *SCD Chem. Distribs., Inc. v Medley,* 203 Mich. App. 374, 381 (1994) (citation omitted); *Gentilozzi*, 231 F. Supp. 3d at 281–83 (applying three-part test).  As Plaintiff's authority clarifies, a causal connection between factors two and three is required—*i.e.*, there must be evidence that the defendant used the corporate entity to commit a wrong that caused an injury or loss to the plaintiff.  *Daymon*, 2004 Mich. App. LEXIS 2607, at *3-4.

54.     Plaintiff has failed to allege any facts for how any of these factors are met.  First, he has failed to state any facts showing that CHS TX—an independent corporation with its own assets, liabilities and contractual relationships—is a "mere instrumentality" of Corizon Health.

55.     Additionally, Plaintiff fails to state any facts regarding what unjust loss or injury he has experienced.  Plaintiff may have experienced the injuries outlined in the Amended Complaint, but these injuries in no way relate to or arise from the 2022 Corporate Restructuring

**B.**

or any misuse of the corporate form.  Rather, Plaintiff's entire argument is that a Texas divisional merger is an abuse of corporate form and that YesCare, CHS TX, and Corizon Health's "separate legal personalities serve no legitimate business purpose and were merely contrived . . . as a device to evade legal obligations to creditors."  Mot. at 19.

56.     As an initial matter, this argument is at best premature.  Plaintiff has received no judgment against Corizon Health, much less one that he has been unable to collect on because of the Divisional Merger.  Given that Plaintiff has suffered no injury from the 2022 Corporate Restructuring, his veil-piercing argument is wholly theoretical, and he lacks standing to make it.  Moreover, a decision by the Court on this issue would constitute an advisory opinion, which the Court should decline to make.

57.     But even if Plaintiff's veil-piercing argument were procedurally proper (and it is not), it would still be wrong.  As discussed above, far from injuring Plaintiff, the 2022 Corporate Restructuring was the best device available to preserve jobs and ensure unsecured creditors could receive value on their claims.  In fact, Plaintiff's preferred outcome of treating CHS TX and Corizon Health as one entity may actually put him in a worse position than he is in now, as he would at best have an unsecured claim against an entity with nearly $100 million of secured debt.  The 2022 Corporate Restructuring thus served a "legitimate business purpose": it was the best restructuring alternative available for all of Corizon Health's stakeholders—including Plaintiff.

**C.     Plaintiff's Successor Liability Argument Fails.**

58.     Plaintiff's successor liability claim against CHS TX fares no better.  Michigan follows the traditional rule of non-liability for corporate successors who acquire a predecessor through the purchase of assets.  Michigan recognizes five narrow exceptions to the traditional rule of non-liability: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4)

26

**B.**

where some elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.  Here, none of these exceptions to the non-liability rule apply.

59.     Plaintiff concedes that the first exception does not apply.

60.     The second exception is effectively the de facto merger doctrine and it does not apply because the 2022 Corporate Restructuring was a statutory merger that complied with the TBOC.  It was not a consolidation or merger in which two or more entities combine to form one surviving entity.  Rather, as explained above, the relevant transaction of the 2022 Corporate Restructuring was a "divisional merger" under Texas law, whereby two entities emerged, each with different assets, liabilities, and contractual relationships.  *See Channel Clarity Holdings LLC v. Klaas (In re Channel Clarity Holdings LLC)*, No. 21-bk-07972, 2022 Bankr. LEXIS 1985, at \*20 (Bankr. N.D. Ill. July 18, 2022) (*de facto* merger only applies when statutory formalities are not met).   Additionally, as further explained below, there is no *de facto* merger.

61.     The third exception does not apply because Plaintiff fails to plead fraud both as a matter of procedure (by filing a motion rather than a complaint) and as a matter of substance (by failing to state facts sufficient to satisfy the heightened pleading standards of Rule 9(b)). Moreover, the Divisional Merger was not fraudulent because, among other things, the allocation of assets to CHS TX was for reasonably equivalent value and fair to creditors.

62.     The fourth exception does not apply because consideration was, in fact, provided to Corizon Health through the Divisional Merger.  Specifically, CHS TX assumed nearly $100 million of secured debt, and Corizon Health was allocated cash, a loan and insurance rights.

63.     The fifth exception does not apply because, as explained below, there was no mere continuation.

**B.**

      **D.**       **The 2022 Corporate Restructuring Was Not a *De Facto* Merger.**

      64.      Under Michigan Law, courts consider four factors to determine whether a transaction is a *de facto* merger: (1) there is a continuation of the enterprise of the seller corporation; (2) there is a continuity of shareholders which results from the purchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders of the seller corporation so that they become a constituent part of the purchasing corporation; (3) the seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; (4) the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation. *Craig v. Oakwood Hosp.*, 471 Mich. 67 (2004). Importantly, "[a]ll four factors must be present to find a de facto merger under Michigan law." *Best Foods*, 173 F. Supp. 2d at 757–58.

      65.      Among other things, Plaintiff has failed to allege facts sufficient to show the second requirement: continuity of shareholders. *Priestly v. Headminder, Inc.*, 647 F.3d 497, 506 (2d Cir. 2011) (holding that Plaintiff's allegations of de facto merger fail to include any evidence that establishes common ownership). Nevertheless, continuity of shareholders does not exist here because CHS TX did not pay for the assets it acquired with shares of its own stock. Rather, it provided consideration for the assets it acquired through the assumption of over $100 million of Corizon Health's secured debt.

      **E.**      **CHS TX Is Not a Mere Continuation of Corizon Health.**

      66.      To determine whether mere continuation applies, the Court must find common ownership and a transfer of substantially all assets. *See Stramaglia v. United* States, 377 Fed. Appx. 472, 475 (6th Cir. 2010) ("The only indispensable prerequisites to application of the [mere

**B.**

continuation] exception appear to be common ownership and a transfer of substantially all assets.").[47]

67.     Among other things, Plaintiff's fail to prove a transfer of substantially all assets. Corizon Health's pre-merger assets were not all transferred to CHS TX or YesCare.[48]  To the contrary, significant assets and contracts remained with Corizon Health as part of the Divisional Merger.[49]  These include $1 million in cash, access to additional funds under the Funding Agreement, and access to insurance policy proceeds.  And far from "transferring all its assets" to CHS TX through the 2022 Corporate Restructuring, Corizon Health transferred its most significant liability—nearly $100 million in secured debt.[50]  Thus, Plaintiff's successor liability theories fail.

## REQUEST FOR DUE PROCESS

68.     As noted above, Plaintiff improperly seeks to use the Motion to assert fraud and other causes of action against CHS TX and YesCare, and to cause the rescission of the 2022 Corporate Restructuring.  In the interest of due process, to the extent the Court is inclined to consider the Motion rather than deny it for the legal deficiencies identified above, CHS TX and YesCare respectfully request the opportunity to further develop the record in advance of an evidentiary hearing.  CHS TX and YesCare also respectfully request that the Court order Plaintiff

---

[47] It is also not clear whether the mere continuation doctrine applies to a statutory merger, as the doctrine was developed to address the issue of liability incurred by asset purchasers.  *See Stramaglia*, 377 Fed. Appx. at 475 (finding that the doctrine of mere continuation ensures that a "corporation which acquires the entire property of another corporation under an arrangement which has the effect of distributing the assets of the latter corporation among its stockholders, to the exclusion of its creditors, takes the property subject to payment of the debts of its vendor") (quoting *Grenell v. Detroit Gas Co.*, 70 N.W. 413, 413-14 (Mich. 1897)).

[48] *See* Plan of Merger, Schedule 3.01(a).

[49] *See* Plan of Merger, Schedule 3.01(b).

[50] *See* Plan of Merger, Schedule 4.01(a)(1).

29

**B.**

either to amend the Complaint or to commence a new action properly asserting the causes of action

embedded in the Motion, and provide CHS TX and YesCare with a full and fair opportunity to

exercise their rights as defendants to a complaint, rather than respondents to a Rule 25(c) motion.

## <u>CONCLUSION</u>

69.     For the foregoing reasons, YesCare and CHS TX respectfully submit that the

Motion should be denied.

IBUTZEL\999999999\0400\100011690.v1-8/17/22

**B.**

Respectfully submitted,

**WHITE & CASE LLP**

Attorneys for YesCare Corp. and CHS TX, Inc.

Samuel P. Hershey (admission application forthcoming)
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Email: sam.hershey@whitecase.com

Brian Pfeiffer (admission application forthcoming)
Amanda Parra Criste (admission application forthcoming)
200 South Biscayne Boulevard, Suite 900
Miami, FL 33131
Telephone: (305) 371-2700
Email: brian.pfeiffer@whitecase.com
Email: aparracriste@whitecase.com

Jason N. Zakia (admission application forthcoming)
111 South Wacker Drive, Suite 5100
Chicago, IL 60606
Telephone: (312) 881-5400
Email: jzakia@whitecase.com

By:_____/s/ Samuel P. Hershey_____

**BUTZEL LONG, P.C.**

_____/s/ Max J. Newman_____
By:     Max J. Newman (P51483)
Attorneys for YesCare Corp. and CHS TX, Inc.
201 W. Big Beaver Rd., Ste. 1200
Troy, MI  48084
(248) 258-2907
newman@butzel.com

31

**B.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via U.S.

Mail and facsimile this 17th day of August, 2022 upon:

| | |
|---|---|
| Laurence H. Margolis (P69635) | Ronald W. Chapman Sr., (P37603) |
| Ian T. Cross (P83367) | Delvin Scarber (P64532) |
| Attorneys for Plaintiff | *Chapman Law Group* |
| 214 S. Main St., Suite 200 | Attorneys for Defendants Corizon Health, |
| Ann Arbor, MI 48104 | Inc. and Keith Papendick, M.D. |
| Phone: (734) 994-9590 | 1441 West Long Lake Rd., Suite 310 |
| Email: larry@lawinannarbor.com | Troy, MI 48098 |
| Email: ian@lawinannarbor.com | Phone: (248) 644-6326 |
| | Email: rchapman@chapmanlawgroup.com |
| | Email: dscarber@chapmanlawgroup.com |

By:     Max J. Newman

IBUTZEL\999999999\0400\100011690.v1-8/17/22