# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

**WILLIAM KELLY**,
Plaintiff,

v.

Case No.: 2:22-cv-10589
Hon.: Terrence G. Berg
Mag.: Patricia T. Morris

**CORIZON HEALTH, Inc.,** et al,
Defendants.

**PLAINTIFF'S REPLY TO THE YESCARE PARTIES' RESPONSE [ECF NO. 32] IN OPPOSITION TO PLAINTIFF'S MOTION TO SUBSTITUTE YESCARE CORP AND CHS TX INC. AS PARTY DEFENDANTS IN PLACE OF CORIZON HEALTH, INC. [ECF NO. 25]**

i

## TABLE OF CONTENTS
| SECTION | PAGE NO. |
|---|---|
| Table of Contents…………..………………….………....………… | ii. |
| Index of Exhibits ………....……………………………..………… | iii. |
| Controlling or Most Appropriate Authorities………….…………… | iv. |

### PLAINTIFF'S REPLY BRIEF

| | |
|---|---|
| I) Preliminary Statement..….……………………………………........ | 1 |
| II) Personal Jurisdiction is Imputed to Successor Entities…...……..…. | 6 |
| III) The Allocation of Assets and Liabilities is not Even Enforceable Under Texas Law…………………………………………………… | 6 |
| IV) Substitution via Rule 25(c) in the Successor-Liability Context is Procedurally-Proper and does not Violate Due Process…………….. | 7 |

# Index of Exhibits

**Ex. A**: Declaration of Corizon Director Isaac Lefkowitz, filed in Case No. 22-cv-01673, Southern District of New York, executed June 27, 2022

**Ex. B**: Online-banking wire transfer confirmation for $1.8 million payment in COVID-test-kit arbitrage transaction, sent January 20, 2022

**Ex. C**: $3.25 million purchase order from Corizon Health, Inc. to Seven Trade LLC for COVID test kits, January 13, 2022 (filed in 22-cv-01673 (S.D.N.Y.) as Exhibit G)

**Ex. D**: New York Department of Health--Health Planning Counsel Meeting Minutes for Project No. 211132-B, April 13, 2021

**Ex. E**: Excerpt from New York City Mayor's Office – Contract Services, *Doing Business Report*: Entities with Related Officers, Owners, and Managers, June 20, 2022

**Ex. F**: CHS Oskaloosa, Inc. Articles of Incorporation, filed January 24, 2022

**Ex. G**: CHS Brevard, Inc. Articles of Incorporation, filed January 24, 2022

**Ex. H**: CHS AZ DOC, Inc. Articles of Incorporation, filed February 11, 2022

**Ex. I**: CHS Leon, Inc. Articles of Incorporation, filed January 24, 2022

**Ex. J**: CHS Bernallilo, Inc., New Mexico Entity Search results, incorporated February 2, 2022

**Ex. K**: CHS Polk, Inc. Articles of Incorporation, filed January 24, 2022

**Ex. L**: Florida 2021 Annual Report for Corizon Health, Inc., filed April 13, 2021

**Ex. M**: Articles of Organization for Yescare Holdings LLC, filed May 11, 2022

**Ex. N**: Articles of Organization for M2 LoanCo II LLC, filed June 2, 2022

## **<u>Controlling or Most Appropriate Authorities</u>**

1. *Sullivan v. Running Waters Irrigation Inc.,* 739 F.3d 354 (7th Cir. 2014)

2. *Perceptron, Inc. v. Silicon Video, Inc.,* 423 F. Supp. 2d. 722 (E.D. Mich. 2006)

3. *Rodríguez-Miranda v. Benin*, 829 F.3d 29 (1st Cir. 2016)

**Preliminary Statement**

The YesCare parties assert that their restructuring transaction must be fair to unsecured creditors, because before consummating the transaction, the Corizon Board of Directors obtained a fairness opinion from a third-party consultant. This undisclosed expert fairness opinion allegedly confirms that the transaction is fair. (ECF No. 32, PageID.1449).

But in early 2022, the Corizon Board of Directors was not a group of disinterested professional fiduciaries trying to insure fairness to all stakeholders. Immediately prior to the 2022 Restructuring, the Corizon board members were, **1)** Yitzchok (a/k/a "Isaac," "Jack") Lefkowitz, **2)** Jay Leitner, **3)** David Gefner, **4)** Sara Tirschwell, and **5)** Abraham ("Abe") Goldberger. (ECF No. 25-14, PageID.1265-66). In January of 2022, Director Lefkowitz, along with two individuals identified on a wire transfer confirmation as "JLEITNER," and "DAVID," tried to extract a $1.2 million arbitrage profit by purchasing COVID test kits for immediate resale to then-deeply-insolvent Corizon Health at a 57% markup. (**Ex. A**: *Declaration of Isaac Lefkowitz*; **Ex. B**; **Ex. C**).[1] Tirschwell became the CEO of Corizon in late 2021, and she is now the CEO of YesCare. Goldberger is not disinterested: he is the CEO of United Staffing Solutions ("USS"), a medical staffing agency that is owned by his wife, Faigy Goldberger. (**Ex. D**; **Ex. E**). In 2022, USS was awarded a contract to provide Corizon with nationwide nurse

---

[1] Seven Trade LLC, the company receiving the profits in this transaction, has the same address listed on the Corizon Health purchase order as the office of David Gefner and Jay Leitner's private equity firm, Perigrove. *See* https://www.perigrove.com/

1

staffing services, while Corizon was deeply-insolvent. (ECF No. 32-4, PageID.1627). In January and February of 2022, Goldberger, his wife, and his children formed corporations in various jurisdictions where Corizon/YesCare/CHS does business, with names like "CHS Oskaloosa, Inc." (Abe Goldberger) (**Ex. F**), "CHS Brevard, Inc." (Faigy Goldberger) (**Ex. G**), "CHS AZ DOC, Inc." (Joel Goldberger) (**Ex. H**), "CHS Leon, Inc." (Mayer Goldberger) (**Ex. I**), "CHS Bernallilo, Inc." (Moshe Goldberger) (**Ex. J**), and "CHS Polk, Inc." (Tovia Goldberger) (**Ex. K**). The corporate purpose listed for all of these entities is, "to provide personnel staffing services." The address for all of these corporations is the USS office in Manhattan.

What the Board members' self-dealing transactions in early 2022 demonstrate is *ownership.* It is not hard to infer why each of Goldberger's adult children received a CHS-branded staffing company. Directors Lefkowitz, "JLEITNER," and "David" would not have attempted to extract a $1.2 million arbitrage profit from Corizon in a two-week period if they were acting as fiduciaries for a third-party shareholder. Importantly, these Directors' ownership of the company commenced only *after Corizon Health was already insolvent*. Corizon represented that it was owned by Flacks Group, Michael Flacks' private equity fund, in February of 2021. (ECF No. 25-39, PageID.1359). On April 13, 2021, Mr. Flacks was still Chairman of the Board[2], and Lefkowitz, Leitner, Gefner, Tirschwell, and Goldberger were not board members. (**Ex. L**). But by April of

---

2  Corizon already knew in March of 2021 that its contract with the Michigan DOC, its largest remaining client, would not be renewed. *See* 2:19-cv-13382 ECF No. 66-1, PageID.1904.

2

2022, David Gefner had replaced Flacks as Chairman, Lefkowitz, Leitner, Tirschwell, and Goldberger had replaced the other 2021 Directors, (ECF No. 25-14, PageID.1265-66), and Corizon denied that Flacks Group was still its beneficial owner. (ECF No. 5, PageID.103, ¶ 12). On May 11, 2022, eight days after the divisional merger, David Gefner incorporated "Yescare Holdings LLC" in New York. (**Ex. M**). Yescare Holdings shares an office address with Gefner and Leitner's private-equity fund.[3]

Private equity funds purchase companies to make money. How can one make money by purchasing a company that is "deeply insolvent and headed towards bankruptcy[?]" (ECF No. 32, PageID.1441). Absent achieving a dramatic turnaround involving sudden, rapid growth, all remaining options for generating a return require the new owner to secrete assets to the detriment of creditors. That is what the 2022 Corporate Restructuring does. It abandons 475 personal-injury claims, 44 employment-law claims, and at least $15.4 million in trade debt in a rump shell company, which is allocated only $1 million to settle or defend all 519 lawsuits. This amounts to less than $2000 per lawsuit, without even considering the trade debt. All the assets go to the successor entity. The secured debt goes with the assets, because it has to: the assets are the collateral, and that is the nature of a lien.

Then, there is some sort of (undisclosed) funding agreement involving M2 LoanCo.[4] M2 LoanCo might provide the shell with up to $15 million, of which perhaps

---

3  See https://www.perigrove.com.
4  On June 2, 2022, David Gefner incorporated "M2 LoanCo II LLC" in New York. (**Ex. N**). This entity also shares Perigrove's address.

3

$4 million could be available to creditors, "subject to certain conditions being met." (ECF No. 32, PageID.1448). This "asset" is not listed in the plan of divisional merger, and it may just be a loan. (ECF No. 32, PageID.1467). We cannot see what the 'conditions' are, or why M2 LoanCo would agree to loan millions of dollars to an entity that has few assets, no operating business, and massive liabilities. But an examination of the funding agreements employed by other Texas-two-steppers provides hints at the answers to these questions.

If the controllers of these entities follow the standard Texas-two-step playbook, Tehum Care Services will soon declare bankruptcy. That is why they changed its name to "Tehum Care Services." There will be less negative publicity and consequent damage to the YesCare brand than if an entity named "Corizon" declared bankruptcy. The funding agreement between M2 LoanCo and Tehum will be enforceable only by Tehum, not by Tehum's creditors, and the "conditions to be met" for the provision of funding will involve a third-party release of liability for the YesCare parties. *See DBMP LLC v. Those Parties Listed on Appendix A to Complaint (In re DBMP LLC)*, 2021 Bankr. LEXIS 2194 at *30-*34 (Bankr. W.D.N.C. 2021). The $4 million supposedly available to creditors amounts to only $7,707 per tort claim, assuming the trade creditors receive nothing (which is unlikely). This is an insultingly small recovery for Mr. Kelly, who is dying of terminal cancer that he alleges the Defendants failed to treat.

4

After obtaining their channeling injunction and third-party release in the bankruptcy case, David Gefner and his associates will possess a solvent corporation, freed from 74% of its tort liability and tens of millions in trade debt. It will be worth a lot more than they paid for it in late 2021, when it was deeply insolvent.

Because the Directors purchased a deeply insolvent company so they could profit from this liability-shedding transaction, the Court should not accept their references to an undisclosed fairness opinion as proof that the transaction is fair to creditors. It is not. Approximately 25% of the personal injury claimants and 32% of employment-law claimants had their claims assigned to CHS TX Inc. in the divisional merger. (ECF No. 32-4, PageID.1637-40). These litigation claimants will be able to sue the solvent successor entity, and presumably receive a full recovery if they are successful. The remaining 75% of the personal-injury claimants and 67% of the employment law claimants will have their claims sequestered in a shell company's Chapter-11 proceeding, from which they will receive nothing, other than perhaps a pittance from M2 LoanCo, conditioned on voting in favor of a third-party release for the YesCare parties.

The individual medical-professional defendants named in the claims assigned to Tehum will also be prejudiced. Former prison doctors accused of malpractice in Maryland will be defended and indemnified, while those in Michigan may find themselves subject to suit with no insurance coverage once the automatic stay is lifted.

5

M2 LoanCo could try to extract third-party releases of claims against these former employees as a condition of providing funding to Tehum, but a bankruptcy court may not even have the authority to approve such releases. *See In re Purdue Pharma, L.P.*, 635 B.R. 26, 104-113 (S.D.N.Y. 2021) (bankruptcy court has no statutory authority to release direct, as opposed to derivative, third-party claims); *Patterson v. Mahwah Bergen Retail Grp., Inc.*, 636 B.R. 641, 695 (E.D. Va. 2022) (voiding releases of debtor's former employees and severing release provision from plan).

## Personal Jurisdiction Is Imputed to Successor Entities

On April 13, 2022, pre-merger Corizon Health admitted, in its Answer to Plaintiff's Complaint, that its contacts with the State of Michigan were sufficient to subject it to personal jurisdiction. (ECF No. 5, PageID.102, ¶¶ 3-4). It is well-established that in the successor-liability context, the predecessor's contacts with the forum are imputed to the successor entity. *See, e.g., Perceptron, Inc. v. Silicon Video, Inc.*, 423 F. Supp. 2d. 722, 725-28 (E.D. Mich. 2006); *Rodríguez-Miranda v. Benin*, 829 F.3d 29, 45 (1st Cir. 2016). Even if this were not the case, CHS' specific-jurisdiction argument would still fail in light of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1023-24 (2021).

## The Allocation of Assets and Liabilities is Not Even Enforceable Under Texas Law

Texas law does not apply, but it also does not require enforcement of whatever abusive allocation of assets and liabilities is chosen by the dividing entity:

6

The Divisional Merger statutes implicitly presume that the new corporation to which those liabilities are allocated will have the ability to pay those liabilities. If not, creditors of the old entity may contest the merger, including the asset and liability allocations. **They may seek to hold the other company responsible for those liabilities.**

*DBMP LLC,* 2021 Bankr. LEXIS 2194 at *56 (W.D.N.C. 2021) (emphasis added).

*See also, Plastronics Socket, Ltd. v. Hwang,* 2022 U.S. App. LEXIS 883 at *6-*11 (Fed. Cir. 2022) (holding allocation of assets and liabilities in a Texas divisional merger is unenforceable under Texas law when it prejudices third-parties).

### Application of Rule 25(c) in the successor-liability context is procedurally-proper and does not violate due process

A Rule 25(c) motion is unquestionably an appropriate procedural vehicle for substituting a successor or alter-ego entity for a corporate defendant that has been stripped of assets. *Sullivan v. Running Waters Irrigation Inc.,* 739 F.3d 354, 358-360 (7th Cir. 2014). Plaintiff is not required to file a new complaint against the successor entity where assets have been transferred, and the successor *is not even entitled to an evidentiary hearing* unless it can "show that an evidentiary hearing would have an articulable bearing on the material issues in dispute." *Id.* at 359. The YesCare parties have not shown what they intend to demonstrate at a hearing, or why witness credibility determinations are necessary to resolve the successor liability issue. They make reference to a M2 LoanCo funding agreement and a consultant's fairness opinion, but do not attach them as exhibits.

*/s/ Ian T. Cross* (P83367)
Attorney for Plaintiff/ 402 W Liberty St., Ann Arbor MI/ 734-994-9590/ ian@lawa2.com

7