**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**WILLIAM KELLY**,                    )
                                      )
          Plaintiff,                  )
                                      )          Case No.: 2:22-cv-10589
                                      )          Hon.: Mark A. Goldsmith
v.                                    )          Mag.: Patricia T. Morris
                                      )
**CORIZON HEALTH, INC.**, *et al.*,   )
                                      )
          Defendants.                 )
                                      )
_____      /

**CHS TX, INC.'S OBJECTION TO ORDER ON PLAINTIFF'S**
**MOTION FOR SUBSTITUTION**

## TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS........................................................................................... ii

TABLE OF AUTHORITIES ................................................................................... iv

STATEMENT OF ISSUES ................................................................................... viii

CONTROLLING OR MOST APPROPRIATE AUTHORITIES ................................ ix

INDEX OF EXHIBITS................................................**Error! Bookmark not defined.**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND .....................................................................................................3

I.      The 2022 Restructuring.................................................................................3

        i.      The Combination Merger.......................................................3
        ii.     The Divisional Merger...........................................................4

II.     Procedural History .....................................................................................7

LEGAL STANDARD..............................................................................................7

ARGUMENT ..........................................................................................................9

I.      The Magistrate Judge Erred by Ruling Without an Evidentiary Hearing...........9

II.     The Magistrate Judge Erred by Applying Michigan Law .................................11

        a.      The Magistrate Judge Erred by Failing to Apply the Internal Affairs
                Doctrine...................................................................................................13

        b.      This Is Not an "Extremely Rare" Circumstance Justifying Application of
                Michigan Law .........................................................................................16

III.    There is No Dispute That, under Texas Law, the Motion Must Be Denied .....................20

        a.      Under Texas Law, Corizon Did Not Transfer Its Interest in This Litigation ........20

        b.      Under Texas Law, CHS TX Is Not a "Mere Continuation" of Corizon ...............21

IV.     Under Michigan Law, the Motion Must Also Be Denied................................22

        a.      Under Michigan Law, Corizon Did Not Transfer Its Interest in This
                Litigation...................................................................................................22

        b.      Under Michigan Law, CHS TX Is Not a Mere Continuation of Corizon.............23

CONCLUSION...................................................................................................................25

CERTIFICATE OF SERVICE ........................................................................................26

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### CASES

*Allied Home Mortg. Corp. v. Donovan*,
  830 F. Supp. 2d 223 (S.D. Tex. 2011) ..................................................................21

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
  824 F. Supp. 2d 1164 (C.D. Cal. 2011) .............................................................13, 15, 18, 19

*Bailey v. Floyd County Bd. of Educ.*,
  106 F.3d 135 (6th Cir. 1997) .................................................................................8

*Boggio v. USAA Fed. Sav. Bank*,
  696 F.3d 611 (6th Cir. 2012) .................................................................................11

*Chrysler Corp. v. Ford Motor Co.*,
  972 F. Supp. 1097 (E.D. Mich. 1997).....................................................................19

*CTS Corp. v. Dynamics Corp. of Am.*,
  418 U.S. 69 (1987)....................................................................................................2

*Daystar Seller Fin., LLC v. Hundley*,
  326 Mich. App. 31 (Mich. Ct. App. 2018) ............................................................15

*Eng v. Battery City Car & Limousine Serv.*,
  00 Civ. 1615 (GEL), 2001 U.S. Dist. LEXIS 20919 (S.D.N.Y. Dec. 10, 2001) .....................9

*Ferguson v. Glaze*,
  No. 268586, 2008 WL 314544 (Mich. Ct. App. Feb 5, 2008)..............................24

*Finnerty v. RadioShack Corp.*,
  390 F. App'x 520 (6th Cir. Aug. 5, 2010) ..............................................................7

*Finnerty v. Wireless Retail, Inc.*,
  624 F. Supp. 2d 642 (E.D. Mich. 2009)..................................................................7

*Gaylord Alpine Invs., Inc. v. Mercy Props., LLC*,
  No. 356344, 2022 Mich. App. LEXIS 3040 (Mich. Ct. App. May 26, 2022).......................23

*Gilmore v. Augustus*,
  No. 12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581 (E.D. Cal. May 27, 2015) ....9

*Gougen Bros v. Phoenix Resins, Inc.*,
  No. 211738, 2000 Mich. App. LEXIS 2697 ..........................................................24

iv

*Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*,
    No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209 (E.D. Mich. May 19, 2010).............8, 22

*Hauanio v. Smith*,
    No. 352441, 2021 Mich. App. LEXIS 3759 (Mich. Ct. App. June 17, 2021) ..........................8

*Heine v. Streamline Foods, Inc.*,
    805 F. Supp. 2d 383 (N.D. Ohio 2011).................................................................................12

*Henkel of Am., Inc. v. Bell*,
    825 F. App'x 243 (6th Cir. 2020) .........................................................................................11

*In re Integra Realty Resources*,
    198 B.R. 352 (Bankr. D. Colo. 1996) ...................................................................................17

*Kalb, Voorhis & Co. v. Am. Fin. Corp.*,
    8 F.3d 130 (2d Cir. 1993).....................................................................................................18

*Klaxon Co. v. Stentor Electric Mfg. Co.*,
    313 U.S. 487 (1941)..............................................................................................................11

*Lockheed Martin Corp. v. Gordon*,
    16 S.W.3d 127 (Tex. App. 2000)..........................................................................................21

*Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*,
    13 F.3d 69 (3d Cir. 1993)..................................................................................................9, 10

*Mars, Inc. v. JCM Am. Corp.*,
    No. 05-3165(RBK), 2007 U.S. Dist. LEXIS 17351 (D.N.J. Mar. 9, 2007).............................9

*McClure v. Leafe*,
    No. 17-13106, 2018 U.S. Dist. LEXIS 166139 (E.D. Mich. Sep. 27, 2018).........................13

*Med. Mut. v. DeSoto*,
    245 F.3d 561 (6th Cir. 2001) ...............................................................................................11

*Motor Components, LLC v. Devon Energy Corp.*,
    338 S.W. 3d 198 (Tex. App. 2011).......................................................................................21

*Mudgett v. Paxson Mach. Co.*,
    709 S.W.2d 755 (Tex. App. 1986)................................................................................. ix, 21

*Nat'l City Bank v. Pharmacia & Upjohn Co., L.L.C. (In re Estate of Upjohn)*,
    No. 278668, 2010 Mich. App. LEXIS 352 (Mich. Ct. App. Feb. 23, 2010) .........................22

*Opportunity Fund, LLC v. Savana, Inc.*,
    No. 2:11-cv-528, 2014 U.S. Dist. LEXIS 115105 (S.D. Oh. Aug. 19, 2014) .........................9

*Pearce v. Schneider*,
    242 Mich. 28 (Mich. 1928) ...................................................................................24

*Pessin v. Chris-Craft Indus., Inc.*,
    586 N.Y.S.2d 584 (N.Y. App. Div. 1992) .............................................................19

*Productivity Techs. Corp. v. Levine*,
    268 F. Supp. 3d. 940 (E.D. Mich. 2017)..............................................................11

*Shapolsky v. Brewton*,
    56 S.W.3d 120 (Tex. App. 2001)..........................................................................21

*Shue & Voeks, Inc. v. Amenity Design & Mfg, Inc.*,
    203 Mich. App. 124 ..............................................................................................24

*Software Freedom Conservancy, Inc. v. Best Buy Co., No. 09 Civ. 10155 (SAS)*,
    No. 09 Civ. 10155, 2010 U.S. Dist. LEXIS 125426 (S.D.N.Y. Nov. 29, 2010) .................8, 9

*State Bank of India v. Chalasani (In re Chalasani)*,
    92 F.3d 1300 (2d Cir. 1996)...................................................................................8

*Stewart v. Geostar Corp.*,
    617 F. Supp. 2d 532 (E.D. Mich. 2007)................................................................13

*Stewart v. GeoStar Corp.*,
    No. 07-13675-BC, 2008 U.S. Dist. LEXIS 67964 (E.D. Mich. Sep. 5, 2008) .................13, 14

*Stramaglia v. United States*,
    377 F. App'x 472 (6th Cir. 2010) ....................................................................23, 24

*TFT Galveston Portfolio, Ltd. v. C.I.R.*,
    No. 1082-12,144 T.C. 96 (T.C. Feb. 26, 2015) ...................................................21

*Tyson Foods, Inc. v. McReynolds*,
    865 F.2d 99 (6th Cir. 1989) ..................................................................................12

*United States v. Shami*,
    754 F.2d 670 (6th Cir. 1985) ..................................................................................7

*VantagePoint Venture Partners 1996 v. Examen, Inc.*,
    871 A.2d 1108 (Del. 2005) ...................................................................................12

*Winskunas v. Birnbaum*,
    23 F.3d 1264 (7th Cir. 1994) ..................................................................................8

*Wojtczak v American United Life Ins Co*,
    293 Mich 449 (1940) ......................................................................................15, 16

## STATUTES AND OTHER AUTHORITY

28 U.S.C. § 636(b)(1) ................................................................................................7

28 U.S.C. § 636(b)(1)(B) ...................................................................................7, 9, 11

28 U.S.C. § 636(C) ...............................................................................................7, 8

Tex. Bus. Orgs. Code § 10.001 .................................................................................. ix

Tex. Bus. Orgs. Code § 10.008 ....................................................................20, 21, 22

Tex. Bus. Orgs. Code § 10.254 ........................................................................... ix, 21

## OTHER AUTHORITIES

Fed. R. Civ. P. 25(c) ......................................................................................... passim

Fed. R. Civ. P. 72 ........................................................................................... ix, 7, 24

Restatement (Second) of Conflicts of Laws § 302 .............................................. passim

## STATEMENT OF ISSUES

1. **Whether the Magistrate Judge erred in denying the request of CHS TX, Inc. ("<u>CHS TX</u>") for an evidentiary hearing and the opportunity to submit evidence before ruling on** *Plaintiff's Motion to Substitute YesCare Corp. and CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and to Require YesCare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendants Bohjanen, Kocha, Alford, Ghasemi and Yarid, or, in the Alternative, to Add YesCare Corp. and CHS TX, Inc. as Party Defendants* **(ECF No. 25) (the "<u>Motion</u>")**

   CHS TX's Answer: Yes.

   Plaintiff May Answer: No.

2. **Whether the Magistrate Judge erred in determining that Michigan law applies to the matters raised in the Motion.**

   CHS TX's Answer: Yes.

   Plaintiff May Answer: No.

3. **Whether the Magistrate Judge erred in determining that defendant Corizon Health, Inc. ("<u>Corizon</u>") transferred its interest in this litigation to CHS TX.**

   CHS TX's Answer: Yes.

   Plaintiff May Answer: No.

4. **Whether the Magistrate Judge erred in determining that CHS TX is a mere continuation of Corizon.**

   CHS TX's Answer: Yes.

   Plaintiff May Answer: No.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

1. Fed. R. Civ. P. 72(b)

2. 28 U.S.C. 636(b)(1)(B)-(C)

3. Tex. Bus. Orgs. Code § 10.001, *et al.*

4. Tex. Bus. Orgs. Code § 10.254

5. *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App. 1986)

CHS TX, Inc. ("CHS TX") respectfully objects to Magistrate Judge Morris's November 1, 2022 order [ECF. No. 43] (the "Order") granting in part and denying in part *Plaintiff's Motion to Substitute YesCare Corp. and CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and to Require YesCare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendants Bohjanen, Kocha, Alford, Ghasemi and Yarid, or, in the Alternative, to Add YesCare Corp. and CHS TX, Inc. as Party Defendants* (ECF No. 25) (the "Motion").

## PRELIMINARY STATEMENT

1.      On July 26, 2022, plaintiff William Kelly filed the Motion, seeking to substitute CHS TX and its affiliate, YesCare Corp. ("YesCare"),[1] for defendant Corizon Health, Inc. ("Corizon").  The Motion did not attach any admissible evidence, but relied on hearsay in the form of purported news articles and webpages.  YesCare and CHS TX objected to the Motion on the grounds that, in addition to being wrong on the law, an evidentiary record and evidentiary hearing were required before the Motion could meet the substantial burden imposed by Rule 25(c).  The Magistrate Judge denied CHS TX and YesCare's request for an evidentiary hearing and ruled based on the limited and improper evidence submitted with the Motion.  The Order is subject to *de novo* review, and should be reversed and remanded on the following grounds:

2.      *First*, the Magistrate Judge erred in ruling without an evidentiary record and without an evidentiary hearing.  Contrary to the Magistrate Judge's ruling, there remain material disputed facts, including the extent of CHS TX's contacts with Michigan.  The Magistrate Judge

---

[1] By objecting to the Order, CHS TX (and, for the avoidance of doubt, YesCare) do not concede that they are subject to personal jurisdiction in this Court or waive any defenses related to personal jurisdiction.  As set forth in *YesCare Corp. and CHS TX, Inc.'s Response in Opposition to Plaintiff's Motion to Substitute YesCare Corp. and CHS TX, Inc. as Party Defendants in Place of Corizon Health, Inc., and to Require YesCare Corp. and CHS TX, Inc. to Assume Corizon Health, Inc.'s Duty to Indemnify Defendants Bohjanen, Kocha, Alford, Ghasemi and Yarid, or, in the Alternative, to Add YesCare Corp. and CHS TX, Inc. as Party Defendants* [ECF No. 32] (the "Opposition"), YesCare and CHS TX assert those defenses.

did not consider the extent of CHS TX's contacts with Michigan, which is a critical factor in the analysis and which, as the evidence will demonstrate, are insufficient to justify the relief requested in the Motion.  Rejection of the Order is required for that reason alone.

3.      *Second*, the Magistrate Judge's application of Michigan law over Texas law was an error.  As the Magistrate Judge recognized, Michigan law should apply only in "extremely rare" circumstances.  Order at 16.  This case is not such a case.  If this case constitutes an "extremely rare" circumstance, then every tort case and corporate reorganization would qualify.  Nor can it be that every Texas divisional merger is an "extremely rare" case, as the Supreme Court commands the opposite.  *See CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 90 (1987) (stating that a corporation "is organized under, and governed by, the law of a single jurisdiction, traditionally the corporate law of the State of its incorporation").  The Magistrate Judge also erred when she applied tort choice of law standards after determining that corporate law standards should apply.  Order at 15-16.  The act giving rise to CHS TX's potential successor liability is the Divisional Merger.  The only question raised by the Motion, therefore, is whether the divisional merger that created CHS TX effected a transfer of Corizon's interest in this litigation.  Binding precedent is clear that as to *that* question, applying Michigan law is error.

4.      *Third*, the Magistrate Judge erred by finding that Corizon transferred its interest in this litigation to CHS TX, but also retained its interest such that CHS TX should be added, not substituted.  That ruling is wrong as a matter of Texas law.  The Texas Business Organizations Code ("TBOC") provides that any allocation of liability under a merger is not a "transfer."  That is dispositive.  The TBOC also provides that the allocation of liabilities in the plan of merger determines each merger party's liabilities upon completion of the merger.  Here, the plan of divisional merger allocates liability for this litigation (if any) to Corizon.

5.      *Fourth*, the Magistrate Judge erred by finding that CHS TX is a "mere continuation" of Corizon.  Texas law bans the mere continuation doctrine.  And even if Michigan law applied (it does not), one of the required elements to establish a mere continuation—that substantially all of the predecessor's assets have been transferred—has not been met.

## BACKGROUND

### I.      The 2022 Restructuring

6.      Corizon and several of its affiliates, including Corizon, LLC (formerly a Missouri LLC), Valitás Health Services, Inc. ("Valitas") (formerly a Delaware corporation), and Corizon Health of New Jersey, LLC ("Corizon NJ") (formerly a New Jersey LLC) (collectively, the "Company") experienced financial difficulties that reached a critical stage in 2021.  Facing insolvency and the seemingly unavoidable prospect of bankruptcy and liquidation, the Company explored various restructuring alternatives.  Ultimately, the Company's boards of directors determined that the 2022 Corporate Restructuring (as defined below) represented the best value-maximizing path forward for all stakeholders, including litigation claimants like Plaintiff.

### i.      *The Combination Merger*

7.      The 2022 Corporate Restructuring was effectuated through two merger transactions under the TBOC—a Combination Merger and a Divisional Merger.  For the Combination Merger:

- On April 28, 2022, Corizon (previously incorporated in Delaware) converted to a Texas corporation.[2]

- On May 1, 2022, the boards of directors, shareholders, and members of the Company approved the 2022 Corporate Restructuring.[3]

---

[2] *See* Opposition, Exhibit B, Certificate of Conversion dated April 28, 2022.

[3] *See* Plan of Combination Merger, Recitals.

3

- Each of Corizon, Corizon, LLC, Valitas, and Corizon NJ merged pursuant to a plan of combination merger under Texas law (the "Combination Merger").[4]

- Corizon filed the Certificate of Combination Merger with the Texas Secretary of State on May 2, 2022,[5] and it became effective on May 5, 2022;[6]

- Corizon was the sole survivor of the Combination Merger and was vested with all assets and liabilities of the merged entities.[7]  The other entities ceased to exist.[8]

### ii.    *The Divisional Merger*

8.    With all assets and liabilities of the Company having been allocated to Corizon under the Combination Merger, Corizon then completed a divisional merger (the "Divisional Merger"),[9] whereby all assets and liabilities were allocated between Corizon and CHS TX, a Texas corporation formed through the Divisional Merger.[10]  The board of directors and sole shareholder, with the assistance of their respective outside advisors, determined that the Divisional Merger was in the best interests of Corizon, its shareholders and its creditors, and approved the Divisional Merger on May 1, 2022.[11]  The following steps comprised the Divisional Merger:

- Corizon drafted the Plan of Merger, which provided that CHS TX would be formed and documented which assets and liabilities were to remain with Corizon and which were to be allocated to CHS TX;[12]

---

[4] *See* Plan of Combination Merger, Ex. A Certificate of Merger of Corizon, Valitas, Corizon NJ, and Corizon, LLC dated May 2, 2022 (the "Certificate of Combination Merger").

[5] *See* Certificate of Combination Merger.

[6] *See* Opposition, Exhibit C, Form 805, Statement of Event or Fact, May 5, 2022.

[7] *See* Plan of Combination Merger.

[8] *See* Plan of Combination Merger; *see also* Certificate of Combination Merger.

[9] *See* Opposition, Exhibit D, Agreement and Plan of Divisional Merger ("Plan of Merger"), Ex. A, Certificate of Merger dated May 3, 2022 (the "Certificate of Merger").

[10] *See* Opposition, Plan of Merger, Ex. B (Certificate of Formation).

[11] *See* Plan of Merger, Recitals; Written Consent of the Sole Shareholder of Corizon Health, Inc., May 1, 2022; Unanimous Written Consent of the Board of Directors of Corizon Health, Inc., May 1, 2022.

[12] *See* Plan of Merger, §§ 3-4.

- The approved Plan of Merger was in writing and included all information required by the TBOC;[13]

- Corizon filed the Certificate of Merger and Certificate of Formation for CHS TX with the Texas Secretary of State on May 3, 2022,[14] and the Divisional Merger became effective on May 5, 2022.[15]

- On May 11, 2022, the Texas Secretary of State approved and accepted the Certificate of Merger and Certificate of Formation for CHS TX, effective as of May 5, 2022.[16]

9.      After the Divisional Merger, YesCare acquired CHS TX as the last step, along with the Combination Merger and Divisional Merger, in Corizon's corporate restructuring (the "2022 Corporate Restructuring").  Corizon then changed its name to Tehum Care Services, Inc.[17]

10.     As a result of the 2022 Corporate Restructuring, Corizon was allocated and remained vested with all inactive or expired customer contracts (including the MDOC Contract, which has always been an asset of Corizon), as well as all liabilities related to such contracts.[18] Corizon was also allocated and remained vested with, among other assets, (i) $1 million in cash, (ii) a receivable, subject to certain conditions being met, of $4 million under a $15 million total funding commitment (the "Funding Agreement") provided by M2 LoanCo, LLC ("M2 LoanCo"), an affiliate of Corizon and (iii) the right to make claims on any and all of the Company's medical malpractice, general liability, or errors and omissions insurance policies relating to or arising from the assets it acquired or retained through the merger (including the contract at issue in Plaintiff's

---

[13] *See* Plan of Merger, §§ 1, 3-8.

[14] *See* Certificate of Merger.

[15] *See* Opposition, Exhibit E, Form 805, Statement of Event or Fact, May 5, 2022.

[16] *See* Opposition, Exhibit C.

[17] *See* Opposition, Exhibit F, Certificate of Amendment of Corizon Health, Inc. dated June 1, 2022.

[18] *See* Plan of Merger, Schedule 3.01(b); Schedule 4.01(b).

case).[19]  Critically, through the Divisional Merger, Corizon was also released from nearly $100 million of senior secured debt that prior to the 2022 Corporate Restructuring encumbered all of the Company's assets and left no value for unsecured creditors.[20]  The Divisional Merger allowed Corizon's unsecured creditors the ability to assert claims against Corizon's assets without remaining subordinate to nearly $100 million of secured debt.  Corizon's secured debt obligations were allocated to, and continue to be liabilities of, CHS TX through the Divisional Merger.[21]

11.     The 2022 Corporate Restructuring was the subject of a fairness opinion from FTI Capital Advisors LLC ("FTI"), which determined that the 2022 Corporate Restructuring was fair to the Company's unsecured creditors.  FTI compared potential recoveries for unsecured creditors under the then-proposed 2022 Corporate Restructuring to recoveries in a liquidation or a bankruptcy.  As a result of its analysis, FTI determined that unsecured creditors would have access to equal or greater recoveries if the Company completed the 2022 Corporate Restructuring.  The 2022 Corporate Restructuring unlocks greater value for Corizon's unsecured creditors by (i) releasing Corizon from nearly $100 million of existing secured debt, which was allocated to CHS TX;[22] (ii) providing Corizon the right to make claims on many of the Company's insurance policies relating to or arising from the assets it acquired or retained through the merger;[23] (iii) allocating $1 million in cash to Corizon;[24] and (iv) allocating to Corizon a receivable from M2

---

[19] *See* Plan of Merger, Schedule 3.01(b).

[20] *See* Plan of Merger, Schedule 4.01(a)(1).

[21] *See* Plan of Merger, Schedule 4.01(a).

[22] *See* Plan of Merger, Schedule 4.01(a)(1).

[23] *See* Plan of Merger, Schedule 3.01(b)(9)-(11).

[24] *See* Plan of Merger, Schedule 3.01(b)(1).

LoanCo under the Funding Agreement, which provides up to $15 million for unsecured creditors of the Company, $4 million of which is allocated to Corizon's creditors.

## II.    Procedural History

12.    Plaintiff William Kelly was incarcerated in the custody of the Michigan Department of Corrections ("MDOC") from April 2015 through July 2021.   During this period, Defendant Corizon was obligated to provide medical services to MDOC prisoners under the terms of a five-year contract with MDOC that became effective on June 1, 2016 (the "MDOC Contract").   That contract has since expired and is no longer in effect.   On March 19, 2022, Plaintiff filed a complaint Corizon.   [ECF No. 1].

13.    On July 26, 2022, Plaintiff filed the Motion, seeking to substitute YesCare and CHS TX for Corizon as defendants in Plaintiff's lawsuit.   [ECF No. 25].

14.    On August 17, 2022, CHS TX and YesCare opposed the Motion.   [ECF No. 32].

15.    On October 6, 2022, the Honorable Mark A. Goldsmith issued an Order of Reference (the "Order of Reference") referring the Motion to the Magistrate Judge "for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)."   [ECF No. 40].

16.    On November 1, 2022, the Magistrate Judge issued the Order, granting in part and denying in part the Motion.   The Magistrate Judge ordered the addition of CHS TX as a defendant, but denied the addition or substitution of YesCare.   [ECF No. 43].

17.    Review of the Order is governed by 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72 and E.D. Mich. LR.1(d).   Order at 36.

## LEGAL STANDARD

18.    The Order is subject to *de novo* review.   28 U.S.C. § 636(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."); Fed. R. Civ. 72(b)(3) ("The district judge must

determine *de novo* any part of the magistrate judge's disposition that has been properly objected to."); *see also United States v. Shami*, 754 F.2d 670 (6th Cir. 1985) (*de novo* review of magistrate judge's report); *Finnerty v. Wireless Retail, Inc.*, 624 F. Supp. 2d 642, 644 (E.D. Mich. 2009) *aff'd sub nom Finnerty v. RadioShack Corp.*, 390 F. App'x 520 (6th Cir. Aug. 5, 2010) (successor liability is a dispositive matter for which a magistrate judge issues a report and recommendation).[25]

19.     Federal Rule 25(c) provides that ***"[i]f an interest is transferred***, the action may be continued by or against the original party unless the court, on motion, ***orders the transferee*** to be substituted in the action or joined with the original party."  *See* Fed. R. Civ. P. 25(c) (emphasis added).  Without a transfer in interest, the court cannot substitute one party for another.  *See Hauanio v. Smith*, No. 352441, 2021 Mich. App. LEXIS 3759, at *4, 10-11 (Mich. Ct. App. June 17, 2021) (applying Michigan state law MCR 2.202(B) and stating substitution "is appropriate only if there has been a transfer of interest between two parties, and no transfer of interest occurred here."); *see also Software Freedom Conservancy, Inc. v. Best Buy Co., No. 09 Civ. 10155 (SAS)*, No. 09 Civ. 10155, 2010 U.S. Dist. LEXIS 125426, at *9 (S.D.N.Y. Nov. 29, 2010) ("It would be an abuse of discretion for a court to allow a substitution in the absence of a transfer in interest.") (internal quotation marks omitted); *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1312 (2d Cir. 1996) ("Although granting substitution of one party in litigation for another under Rule 25(c) is a discretionary matter for the trial court, such discretion may not be abused by allowing substitution in the absence of a transfer of interest.").

20.     The party alleging that a transfer of interest occurred under Federal Rule 25(c) bears the burden of proving it by admissible evidence.  *See Guar. Residential Lending, Inc. v. Homestead*

---

[25] Although the Magistrate Judge did not style the Order as a report and recommendation, CHS TX treats it as such, consistent with 28 U.S.C. § 636(C) and this Court's Order of Reference.

*Mortg. Co., L.L.C.*, No. 04-cv-74842-DT, 2010 U.S. Dist. LEXIS 49209, at *9 (E.D. Mich. May 19, 2010) (denying motion to substitute where the requesting party "ha[d] not demonstrated that a transfer of interest took place as contemplated by Fed. R. Civ. P. 25(c)."); *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997) (citing *Winskunas v. Birnbaum*, 23 F.3d 1264, 1267 (7th Cir. 1994)) (explaining that evidence submitted with a motion must be admissible in substance); *Gilmore v. Augustus*, No. 12-cv-00925-LJO-GSA-PC, 2015 U.S. Dist. LEXIS 68581, at *13 (E.D. Cal. May 27, 2015) (denying plaintiff's motion to substitute because it relied upon inadmissible hearsay).  The same is true for a party asserting successor liability.  *See Opportunity Fund, LLC v. Savana, Inc.*, No. 2:11-cv-528, 2014 U.S. Dist. LEXIS 115105, at *7 (S.D. Oh. Aug. 19, 2014) ("The party that asserts successor liability bears the burden of proving facts which bring the case within one of [the] exceptions") (citation omitted).

## ARGUMENT

### I.     The Magistrate Judge Erred by Ruling Without an Evidentiary Hearing

21.     The Motion was referred to the Magistrate Judge "for [a] report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)."  28 U.S.C. § 636(b)(1)(B) provides, in pertinent part, that "a judge may . . . designate a magistrate [magistrate judge] to conduct hearings, including evidentiary hearings, and to submit to a judge of the court ***proposed findings of fact and recommendations for the disposition***, by a judge of the court."  (emphasis added).

22.     This statutory mandate is especially important in the context of a motion under Rule 25(c).  Courts have recognized that Rule 25(c) "does not easily lend itself to contested motions practice."  *Luxliner P.L. Exp., Co. v. RDI/Luxliner, Inc.*, 13 F.3d 69, 72 (3d Cir. 1993); *Software Freedom Conservancy.*, 2010 U.S. Dist. LEXIS 125426, at *9.  For that reason, where there is conflicting evidence regarding a Rule 25(c) motion, the court should grant an evidentiary hearing.  *Luxliner*, 13 F.3d at 72; *Eng v. Battery City Car & Limousine Serv.*, 00 Civ. 1615 (GEL), 2001

U.S. Dist. LEXIS 20919 (S.D.N.Y. Dec. 10, 2001); *Mars, Inc. v. JCM Am. Corp.*, No. 05-3165(RBK), 2007 U.S. Dist. LEXIS 17351, at *6 (D.N.J. Mar. 9, 2007) ("a court cannot decide disputed successor liability fact issues by simply evaluating the parties' affidavits.  The Court held that an evidentiary hearing is necessary to resolve this issue").

23.     The Magistrate Judge committed at least five errors requiring remand for further factual development.  ***First***, the Magistrate Judge entered the Order despite lacking a record of admissible evidence.  Plaintiff's Motion attaches emails and webpage printouts for the proposition that YesCare allegedly holds itself out in the marketplace as a continuation of Corizon.  Motion at 24-25.  That unauthenticated hearsay does not provide a sufficient record for the Court to rule.

24.     ***Second***, virtually all of the purported evidence submitted with Plaintiff's Motion refers to YesCare, not CHS TX.  The Magistrate Judge nonetheless entered the Order adding CHS TX (and not YesCare) as a defendant, despite the barren record as to that entity.

25.     ***Third***, the Magistrate Judge denied CHS TX the opportunity to develop a proper and sufficient factual record by denying YesCare and CHS TX's request for an evidentiary hearing.  As noted above, the opportunity to present evidence is especially important in the context of a contested Rule 25(c) motion.  *See, e.g.*, *Luxliner*, 13 F.3d at 72.

26.     ***Fourth***, the Magistrate Judge premised her ruling on the finding that there are no facts in dispute.  Order at 5, n.2.  That is wrong.  Among other things, CHS TX disputes its alleged contacts with this forum, which the Court should (but failed to) consider in determining whether Michigan or Texas law should apply.  Restatement (Second) of Conflicts of Laws § 302, cmt. g (providing that a party's relationship to the forum is a factor in determining whether that state has an overriding interest).  The Magistrate Judge also premised her ruling on the finding that "all parties agree that CHS TX and YesCare have virtually no connection to Texas other than their

incorporation." Order at 20. That is also wrong. Among other things, CHS TX's chief executive officer is based in Texas, meaning that Texas is the location of all significant decisions affecting the corporation. Additionally, the divisional merger under which CHS TX was created was conducted in Texas under Texas law, CHS TX emerged from a Texas corporation, and the Texas Secretary of State approved the merger.

27. *Fifth*, by not issuing a report and recommendation as required by 28 U.S.C. § 636(b)(1)(B) and this Court's Order of Reference, the Magistrate Judge has failed to make clear the facts on which she relied. This Court should remand this matter for proper development and presentation of the factual record, as required by this Court's order and the law.

## II.    The Magistrate Judge Erred by Applying Michigan Law

28. The Magistrate Judge erred by applying Michigan choice of law rules instead of federal choice of law rules.[26] But even if Michigan choice of law rules applied, those rules make clear that Texas law should be applied to the matters raised in the Motion.

29. The threshold question in the choice-of-law analysis is whether the matter at issue is an "internal affair." If so, then under Michigan choice-of-law rules, the law of the state of incorporation (here, Texas) applies. *Henkel of Am., Inc. v. Bell*, 825 F. App'x 243, 253 (6th Cir. 2020). "Michigan statutes recognize that states have a strong interest in ordering the affairs of their respective corporations" and "the Michigan Business Corporation Act 'does not authorize this state to regulate the organization or internal affairs of a foreign corporation authorized to

---

[26] The Sixth Circuit has consistently held that courts should apply federal choice-of-law rules in federal question cases. *Med. Mut. v. DeSoto*, 245 F.3d 561, 570 (6th Cir. 2001) ("In determining which states' law applies, our analysis is governed by the choice of law principles derived from federal common law."); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620-21 (6th Cir. 2012) (same). The Order tries to avoid this by improperly extending *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487 (1941), a diversity case. Order at 11-12. Under federal choice-of-law rules, a court looks to the Restatement (Second) of Conflicts of Law. *Boggio*, 696 F.3d at 620-21 (6th Cir. 2012); *Med. Mut.*, 245 F.3d at 570.

transact business in this state.'" *Id.* (citing *Productivity Techs. Corp. v. Levine*, 268 F. Supp. 3d. 940, 947 (E.D. Mich. 2017) (quoting Mich. Comp. Laws § 450.2002(2)). As the Sixth Circuit has explained, the Constitution mandates the consistent application of the state of incorporation's law because it "is the only rule compatible with the constitutional prohibition against inconsistent regulations." *Tyson Foods, Inc. v. McReynolds*, 865 F.2d 99, 102 (6th Cir. 1989) (citing *CTS Corp.*, 481 U.S. at 90; *see also Heine v. Streamline Foods, Inc.*, 805 F. Supp. 2d 383, 391 (N.D. Ohio 2011) (quoting *VantagePoint Venture Partners 1996 v. Examen, Inc.*, 871 A.2d 1108, 1113 (Del. 2005)) (holding that application of the internal affairs doctrine "is mandated by constitutional principles, except in the 'rarest situations,' *e.g.*, when 'the law of the state of incorporation is inconsistent with a national policy on foreign or interstate commerce.'").

30. But if a matter is not an internal affair, then Michigan courts are guided by the Restatement (Second) of Conflicts of Laws (the "Restatement"). Order at 14-15. Under the Restatement, the court must consider whether the matter at issue relates to an act that can either (i) be performed only by a corporate entity, in which case the corporate law standards of section 302 of the Restatement govern, or (ii) be performed by a natural person, in which case section 301 of the Restatement governs, looking to the applicable non-corporate choice of law standards (i.e., contract or tort). Order at 15-16; *see also* Restatement § 302, cmt a ("The rule of this Section [302] is concerned with issues involving matters that are peculiar to corporations and other associations, whereas the rule of § 301 is concerned with issues arising from corporate acts of a sort that can also be done by individuals."). If the matter at issue falls within section 302, the law of the state of incorporation (*i.e.*, Texas) must apply absent an "extremely rare" situation where the forum state has an overriding interest. Order at 16 (*citing* Restatement § 302 cmt. g).

31.     The Order errs both by finding that the internal affairs doctrine does not apply and by failing to apply section 302 of the Restatement.

### a.    The Magistrate Judge Erred by Failing to Apply the Internal Affairs Doctrine

32.     As the Magistrate Judge acknowledged, "without exception [internal affair] matters are determined by the law of the state of incorporation."  Order at 12 (citing *Stewart v. Geostar Corp.*, 617 F. Supp. 2d 532, 537-38 (E.D. Mich. 2007); *see also* the Business Corporation Act, MCL 450.2002(2) (stating that the Business Corporation Act does not "authorize this state to regulate the organization or internal affairs of a foreign corporation"); MCL 450.5001 ("Subject to the constitution of this state, the laws of the jurisdiction under which a foreign limited liability company is organized shall govern its organization and internal affairs . . . .").  Nonetheless, the Magistrate Judge incorrectly found that the internal affairs doctrine does not apply to the Motion.  In so doing, the Magistrate Judge committed several errors, each of which requires reversal.

33.     *First*, the Magistrate Judge acknowledges that the matters at issue in the Motion are the events allegedly giving rise to YesCare and CHS TX's liability—*i.e.*, the Texas law divisional merger—not the alleged underlying tortious conduct.  *See* Order at 15 ("And to be clear, the relevant 'act,' is not the underlying claim, but the 'transaction giving rise to potential successor liability[.]'"); *see also Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1173-74 (C.D. Cal. 2011) ("a court should look to the transaction giving rise to potential successor liability, not the underlying tortious act" in determining which state's law to apply).  Yet the Magistrate Judge ignores binding authority that the internal affairs doctrine applies to corporate mergers and reorganizations, including the divisional merger at issue here.  *See McClure v. Leafe*, No. 17-13106, 2018 U.S. Dist. LEXIS 166139, at *10-11 (E.D. Mich. Sep. 27, 2018) (finding that plaintiff's claims regarding mergers undertaken by Delaware LLC should be analyzed under Delaware law because "Mich. Comp. Laws § 450.5001 . . . provides that 'the laws of the

13

jurisdiction under which a foreign limited liability company is organized shall govern its organizations and internal affairs."); *Stewart v. GeoStar Corp.*, No. 07-13675-BC, 2008 U.S. Dist. LEXIS 67964, at \*17-19 (E.D. Mich. Sep. 5, 2008) (finding that the law of the state of incorporation should be applied to analyze the effects of a merger under the internal affairs doctrine); Restatement § 302, cmt. a (noting that "the 'internal affairs' of a corporation" include "mergers, consolidations and reorganizations and the reclassification of shares").

34.     *Stewart v. GeoStar Corp.* is particularly instructive.  2008 U.S. Dist. LEXIS 67964. There, certain Michigan corporations conducted a merger under Michigan law, and pre-merger stock in those entities was converted into stock in a related Delaware corporation.  *Id.*  A shareholder of one of the pre-merger entities sued.  The Court applied Michigan choice of law principles to analyze whether Michigan or Delaware law should apply to determine the effect of the merger on plaintiff's shares in the Delaware corporation.  *Id.* at \*16.  The Court found that the merger was an internal affair of the merger parties, and therefore the laws of their state of incorporation, Michigan, governed.  *Id.* at \*17-19 ("The question before the Court . . . is the effect of the merger on Plaintiff's [] shares in a merger with another Michigan corporation.  Thus, Michigan is the state of incorporation, not Delaware, and Michigan law applies.").  As additional factors supporting the application of Michigan law, the Court looked to the fact that the merger was conducted under the Michigan Business Corporation Act ("MBCA"), the plan of merger stated that that the merger "will have the effects specified in the MBCA," and that the merger "shall be governed by and construed in accordance with the laws of [Michigan]."  *Id.*  Here, there is no dispute that the parties to the Divisional Merger, Corizon and CHS TX, are Texas corporations (pre- and post-merger), were never domiciled in Michigan, and that the Divisional Merger was conducted under the TBOC.  Moreover, the Plan of Merger expressly states that Texas law shall

govern and that the merger "will have the effects set forth in Section 10.008 of the TBOC." *See*
Plan of Merger ¶ 2(c).  Texas law therefore applies.

35.    ***Second***, despite acknowledging that the matter at issue is the divisional merger, not
the alleged tort (Order at 15), the Magistrate Judge improperly focuses on the alleged tort as a basis
for finding that the internal affairs doctrine does not apply.  *See* Order at 13-14 ("Kelly, of course,
is not a member of the corporation, and the theories he relies on to show a transfer of interest
concern CHS TX and YesCare's liability for actions which affected an external party.").  This is
clear error.  *Allstate*, 824 F. Supp. 2d at 1172 ("The internal affairs doctrine, expressed in the
Restatement, is clear that the state of incorporation's law should govern matters that are internal
to the corporation.  ***Even corporate functions which implicate the rights of creditors, such as
mergers and reorganizations, fall within the doctrine***.") (emphasis added).[27]

36.    ***Third***, the Magistrate Judge erred by limiting the internal affairs doctrine to claims
involving shareholders, members, officers, or directors.  *See* Order at 13 ("Because [Plaintiff's]
successor liability and alter ego theories concern CHS TX and YesCare's liability to a third party—
instead of their shareholders, directors, or officials—this Court is not required by the internal
affairs doctrine to apply Texas substantive law.").  This finding is inconsistent with Michigan law.
Indeed, the Order relies on the seminal Michigan Supreme Court case *Wojtczak v American United
Life Ins Co*. for the definition of an "internal affair" as "an act, performed on behalf of the
corporation, which 'affects the complainant solely in his capacity as a member of the corporation.'"
Order at 13 (quoting *Wojtczak v American United Life Ins Co*., 293 Mich. 449, 453-54 (1940)).

---

[27] The Magistrate Judge cites cases where courts applying the internal affair doctrine analyzed the
underlying claims.  But neither of these cases involved a choice of law dispute, let alone a choice of law
for a Rule 25(c) motion.  *See Daystar Seller Fin., LLC v. Hundley*, 326 Mich. App. 31, 37-38 (Mich. Ct.
App. 2018) (motion to dismiss for lack of subject matter jurisdiction); *Wojtczak v American United Life Ins
Co*, 293 Mich 449, 453-54 (1940) (analyzing whether plaintiff's claim for injunction under assumption and
reinsurance contract is an internal affair).

But the Order mistakenly treats this definition as precluding the application of the internal affairs doctrine to plaintiffs who are not "members of the corporation"—a misreading that is refuted by *Wojtczak* itself.  In that case, a life insurance policy holder (*i.e.*, not a shareholder, member, or director) sued an Indiana life insurance company to enjoin its assumption and reinsurance of all outstanding policy obligations of an insolvent Michigan corporation.  The Michigan Supreme Court affirmed the trial court's finding that the matters at issue concerned an internal affair of the Indiana corporation and declined to exercise jurisdiction in favor of the Indiana courts.  *Id.* at 454.

**b.     This Is Not an "Extremely Rare" Circumstance Justifying Application of Michigan Law**

37.     In addition to improperly failing to apply the internal affairs doctrine, the Magistrate Judge erred by failing to select Texas Law under the Restatement's section 302 standard for corporate matters.

38.     Under the Restatement, "issues involving the rights and liabilities of a corporation are determined by the local law of the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties."  Restatement § 302 (1).  The Restatement also provides that "the local law of the state of incorporation will be applied to determine such issues, except in the unusual case where, with respect to the particular issue, some other state has a more significant relationship to the occurrence and the parties, in which event the local law of the other state will be applied."  Restatement § 302 (2).  Comment g to section 302 of the Restatement explains that "the local law of the state of incorporation has been applied ***almost invariably*** to determine issues involving matters that are peculiar to corporations" and "the local law of the state of incorporation should be applied except in the ***extremely rare*** situation . . ." (emphasis added).

39.     The Magistrate Judge acknowledges that there is a "growing consensus" among Michigan courts that "the law of the state of incorporation presumptively governs corporate law issues."  Order at 16-17.  The Magistrate Judge also acknowledges that it is only in "extremely rare" situations that a deviation from state law should occur.  Order at 17.  Nevertheless, the Magistrate Judge held that this case is an "extremely rare" situation where Michigan rather than Texas state law applies.  The Magistrate Judge offers no analysis for the extraordinary proposition that this case presents an "extremely rare" situation.  In fact, there is nothing rare about this case.

40.     Under the Restatement, a matter presents an "extremely rare" situation where the forum state has an "overriding interest" in applying its law.  Courts have found "overriding interests" when (i) the *sole contact* with the state of incorporation is the incorporation itself and (ii) basically *all other significant contacts* are with the forum state.  *See, e.g.*, *In re Integra Realty Resources*, 198 B.R. 352, 362 (Bankr. D. Colo. 1996) (holding that Texas law should apply where incorporation was defendant's sole contact with Delaware, whereas the fraudulent transfer at issue "originated from Texas . . . was approved by directors in Texas and otherwise derivative of actions taken in Texas, [t]he distribution was directed from Texas, [the corporation's] principal place of business was Texas" and a significant number of shareholders and creditors were in Texas).

41.     Under the Restatement, in analyzing whether an "extremely rare" situation exists, courts should consider three factors: (1) the corporation's relationship to its state of incorporation; (2) the corporation's relationship to the state whose local law is sought to be applied; and (3) whether the act can practicably be governed by the local law of more than one state.  Restatement § 302, cmt. g.  As result of these factors, cases in which courts have found that "extremely rare" circumstances justified departure from applying the law of the state of incorporation involve corporations with overwhelming contacts with the forum state.  For

17

example, in *Western Air Lines, Inc. v. Sobieski*, the court found that California law should apply, notwithstanding the corporation's incorporation in Delaware, because (i) the corporation's principal place of business was in California, (ii) the corporation was formerly a California corporation, (iii) the corporation did substantial business in California, and (iv) the corporation had "recognized and submitted to the continuing jurisdiction of the California Corporations Commissioner."  191 Cal. App. 2d 399 (2d DCA Cal. 1961).  The Restatement supports this high standard.  Restatement § 302, cmt. g ("[a]pplication of the local law of a state other than the state of incorporation can most easily be justified in situations where the corporation does ***all, or nearly all***, of its business in that state and most of the corporation's shareholders are domiciled there.") (emphasis added).  That is not the case here.

42.     As to the first factor (relationship with state of incorporation), without citing any evidence (or holding an evidentiary hearing), the Magistrate Judge found that CHS TX's only contact with Texas is that it is incorporated there.  Order at 20.  As noted above, that is not correct. Among other things, (1) CHS TX's chief executive officer is based in Texas, meaning that significant decisions regarding CHS TX occur in Texas, (2) the Divisional Merger giving rise to CHS TX was conducted in Texas under Texas law, (3) CHS TX merged out of a Texas corporation, (4) the Plan of Merger is governed by Texas law, and (5) the transaction was approved by the relevant Texas authorities, including the Texas Secretary of State.  The Magistrate Judge failed to consider any of these facts, which dispel any notion that Michigan has an "overriding interest" compared with Texas.  To the contrary, Texas' interest as the state of incorporation is plainly greater.  *See Allstate*, 824 F. Supp 2d. at *1172 ("Corporations are creatures of the state, and a key purpose of the corporate form is to structure and channel liability.  This is part of the reason that corporations pick one state over another to incorporate in, and it follows that the law of the state

of incorporation should govern such a core attribute.") (citations omitted); *Kalb, Voorhis & Co. v. Am. Fin. Corp.*, 8 F.3d 130, 132 (2d Cir. 1993) ("Because a corporation is a creature of state law whose primary purpose is to insulate shareholders from legal liability, the state of incorporation has the greater interest in determining when and if that insulation is to be stripped away.").

43.     As to the second factor (relationship with forum state), CHS TX does not conduct "all, or nearly all" of its business in Michigan.  Restatement § 302, cmt. g.  To the contrary, CHS TX conducts minimal business in Michigan and none of its corporate officers or board members are located there.  The only contact with Michigan that the Order identifies is CHS TX's potential connection, through Corizon, with Plaintiff's tort claim.  Not only does this singular item not outweigh the many significant contacts CHS TX has with Texas, but it is irrelevant to the corporate act at issue—the Divisional Merger.  *See Allstate*, 824 F. Supp. 2d at 1172 ("The question, therefore, is which state has the greater interest in the application of its de facto merger law, not which state has the greater interest in the case generally.").

44.     The third factor (whether more than one states law could practicably govern) is disposed of by comment e to section 302 of the Restatement, which lists mergers and reorganizations among the matters that "cannot practicably be determined differently in different states."  Restatement § 302, cmt. e ("[M]any matters involving a corporation cannot practicably be determined differently in different states.  Examples of such matters . . . include . . . mergers, consolidations, and reorganizations.").  Moreover, a specific statute—the TBOC—governs the effects of the Divisional Merger and successor liability.  That strengthens the case for deferring to Texas law.  *See, e.g.*, *Pessin v. Chris-Craft Indus., Inc.*, 586 N.Y.S.2d 584, 586-87 (N.Y. App. Div. 1992) (holding that because the issue was the "contemporaneous ownership" requirement for

a shareholders' derivative action and New York had a law explicitly on point and providing that it applied to foreign corporations, New York law should be applied.).[28]

## III.    There is No Dispute That, under Texas Law, the Motion Must Be Denied

45.    Under Texas law the Motion clearly fails.

### a.    Under Texas Law, Corizon Did Not Transfer Its Interest in This Litigation

46.    There is no dispute that the 2022 Corporate Restructuring, including the divisional merger, complied in all respects with the TBOC.  The Plan of Merger confirms that it shall have the effects set forth in Section 10.008 of the TBOC.[29]  The TBOC expressly states that the allocation of assets and liabilities through a divisional merger is not a "transfer."  Tex. Bus. Orgs. Code § 10.008(a)(2)(C);[30] *see also Simplifi Health Benefit Mgmt.,* 2015 U.S. Dist. LEXIS 120137, at *7 ("To determine whether a transfer of interest has occurred, the Court applies state substantive law.").  Moreover, the TBOC provides that the surviving or new entity "to which a liability or obligation is allocated under the plan of merger is the primary obligor for the liability or obligation" and "no other party to the merger . . . and no other new domestic entity . . . created under the plan of merger is liable for the debt or other obligation."  Tex. Bus. Orgs. Code § 10.008(a)(3) and (4).

47.    Plaintiff's lawsuit was listed on the schedule of claims that were allocated to Corizon—*i.e.*, it was not allocated to CHS TX.[31]  CHS TX did not exist prior to the 2022 Corporate

---

[28] The Order's reliance on *Chrysler* for a "flexible" choice-of-law analysis is misplaced.  Order at 13.  The *Chrysler* court applied tort choice-of-law principles based on Restatement section 301—not section 302— after concluding the relevant act could be committed by a private individual.  *Chrysler Corp. v. Ford Motor Co.*, 972 F. Supp. 1097, 1102 (E.D. Mich. 1997).  That is not the case here.  Chrysler also involved a defendant whose principal place of business was in Michigan.

[29] *See* Plan of Merger, § 2(c).

[30] "When a merger takes effect: . . . all rights, title, and interests to all real estate and other property owned by each organization that is a party to the merger is allocated to and vested … in one or more of the surviving or new organizations as provided in the plan of merger *without: . . . any transfer or assignment having occurred. . . .*" Tex. Bus. Orgs. Code § 10.008(a)(2)(C) (emphasis added).

[31] *See* Plan of Merger, Schedule 4.01(b)(RL) (William Kelly's lawsuit is a liability allocated to Corizon).

Restructuring and therefore was never liable for Plaintiff's claim. Rather, all liability in connection with Plaintiff's lawsuit rested with Corizon before the Divisional Merger, and all liability in connection with Plaintiff's lawsuit remained with Corizon after the Divisional Merger. Thus, under Texas law, Corizon did not transfer an interest in this litigation to CHS TX. *See id.* It is therefore an abuse of discretion to add CHS TX as a defendant under Rule 25(c). Order at 35.

**b.      Under Texas Law, CHS TX Is Not a "Mere Continuation" of Corizon**

48.      The Magistrate Judge's finding that CHS TX is a mere continuation of Corizon is contrary to Texas law. Texas law expressly bans "de facto merger" as a means to impose liabilities on an acquiring corporation. *See Shapolsky v. Brewton*, 56 S.W.3d 120, 138-39 (Tex. App. 2001). Instead, the TBOC controls in Texas. *Lockheed Martin Corp. v. Gordon*, 16 S.W.3d 127, 135 & 139 (Tex. App. 2000) (pointing out the now-expired Business Corporation Act controls in Texas and Article 5.10(B)(1) eliminated the "de facto doctrine"). Texas codifies this rule against applying the "de facto merger" doctrine in the TBOC. Tex. Bus. Orgs. Code § 10.254 & Revisor's Notes ("Section 10.254 codifies for all domestic entities to which Chapter 10 applies that a disposition of assets will not constitute a merger or conversion such that the acquiring entity would be liable for the obligations of the transferring entity under the 'de facto merger' doctrine or otherwise unless the acquiring person expressly assumes an obligation.").

49.      The mere continuation theory, "an even more liberal means of imposing liability" than is the de facto merger doctrine must also be rejected under Texas law. *Mudgett v. Paxson Mach. Co.*, 709 S.W.2d 755, 758 (Tex. App. 1986) ("Certainly if the de facto merger doctrine is contrary to the public policy of our state, so must be the mere continuation doctrine."); *Motor Components, LLC v. Devon Energy Corp.*, 338 S.W. 3d 198, 205 (Tex. App. 2011) (confirming *Mudgett*); *see also TFT Galveston Portfolio, Ltd. v. C.I.R.*, No. 1082-12,144 T.C. 96, 113 (T.C. Feb. 26, 2015) ("Texas courts have also refused to apply the doctrine of mere continuation.");

*Allied Home Mortg. Corp. v. Donovan*, 830 F. Supp. 2d 223, 233 (S.D. Tex. 2011) ("[T]he Texas legislature has refused to recognize the theory that a successor corporation is a mere continuation of its predecessor as an exception to the traditional rule that a successor corporation does not assume the liabilities of a predecessor.").

## IV.     Under Michigan Law, the Motion Must Also Be Denied

### a.     Under Michigan Law, Corizon Did Not Transfer Its Interest in This Litigation

50.     Under Michigan law, "a 'transfer of interest' in a corporate context occurs when one corporation becomes the successor by merger or other acquisition of *the interest the original corporate party had in the lawsuit*." *Guar. Residential Lending, Inc. v. Homestead Mortg. Co., L.L.C.*, No. 04-CV-74842-DT, 2010 U.S. Dist. LEXIS 49209, at *8 (E.D. Mich May 19, 2010) (emphasis added) (denying motion for substitution under Rule 25(c)).  Michigan law also provides that "the effect of a merger or consolidation on the existing constituent corporations depends upon the terms of the statute under which the merger or consolidation is accomplished." *See Nat'l City Bank v. Pharmacia & Upjohn Co., L.L.C. (In re Estate of Upjohn)*, No. 278668, 2010 Mich. App. LEXIS 352, at *13-14 (Mich. Ct. App. Feb. 23, 2010) (applying Delaware merger and conversion statutes to analyze the effects of various mergers between Delaware corporations and a conversion of a Delaware corporation to a Delaware limited liability company).  Therefore, even when applying Michigan law, the Court should consider the TBOC in its analysis of whether a transfer of interest occurred.  Under such analysis, there is no question that the Divisional Merger allocated the interest in this lawsuit to Corizon—not to CHS TX.  CHS TX did not purchase any assets or any equity interests of Corizon.  Therefore, CHS TX is not in possession of "the interest the original corporate party had in the lawsuit." *Guar. Residential Lending*, 2010 U.S. Dist. LEXIS 49209, at *8.  As discussed above, the TBOC also expressly states that the allocation of assets and liabilities in a divisional merger is not a "transfer." *See* Tex. Bus. Orgs. Code § 10.008(a)(2)(C).

51.     In another attempt to avoid the TBOC, the Magistrate Judge relies on the alternative theories of successor liability and mere continuation to find that a transfer of interest occurred. Order at 23.  The Order's "Transfer of Interest" section only applies Michigan law to consider successor liability and "mere reincarnation[s]", without examining whether there was an actual transfer of interest.  Order at 23-30.  This is contrary to Michigan law, which provides that whether a corporation transferred an interest is a separate inquiry than whether successorship liability applies—one dependent on the corporate form and the specific facts, not an equitable analysis. *See, e.g., Gaylord Alpine Invs., Inc. v. Mercy Props., LLC*, No. 356344, 2022 Mich. App. LEXIS 3040, at *8 (Mich. Ct. App. May 26, 2022) (refusing to find a corporation transferred interest where the theory of transfer relied upon blurring the lines between the corporation and its owners).

52.     The Magistrate Judge suggests that Michigan's traditional rule of successorship liability instead requires it to identify whether the Divisional Merger takes one of three forms: (i) a combination statutory merger, (ii) an asset purchase, or (iii) an equity purchase.  Order at 24.  This is not required to determine successor liability under Michigan law.  Michigan law provides that only an examination of the nature of the transaction between the predecessor and successor corporations is required.  *See* Order at 25 ("[U]nder Michigan's 'traditional rule.' successorship liability depends largely on the type of merger as issue").  A Michigan court would look to the TBOC and the Plan of Merger in examining the question of whether CHS TX should be liable as a successor to Corizon.  The Plan of Merger is governed by Texas law and has the effects provided by section 10.008 of the TBOC.  The TBOC provides that CHS TX is liable only for the liabilities that were allocated to it under the Plan of Merger, and this does not include Plaintiff's claims.

**b.     Under Michigan Law, CHS TX Is Not a Mere Continuation of Corizon**

53.     Under Michigan Law, courts consider (1) the degree of common ownership, (2) whether substantially all of the assets of the predecessor were transferred, (3) the new

corporation's retention of the old corporation's officers and employees, and (4) whether the main corporate business was to conduct the same business.  *See Stramaglia v. United States*, 377 F. App'x 472, 475 (6th Cir. 2010). "The only indispensable prerequisites to application of the exception appear to be common ownership and a transfer of substantially all assets."  *Id.*

54.     The Order challenges whether a transfer of substantially all assets to a successor is a required element under Michigan's mere continuation factors.  Order at 29-30.  But all of the cases cited by the Order either concerned a transfer of all or substantially all of the predecessor's assets, or found no successor liability.  *Pearce v. Schneider*, 242 Mich. 28, at *31 (Mich. 1928) (all assets transferred); *Gougen Bros v. Phoenix Resins, Inc.,* No. 211738, 2000 Mich. App. LEXIS 2697, at *6 (same); *Stramaglia*, 377 F. App'x at 476 ("the company had ***no assets*** after it transferred its physical property to [successor].") (emphasis added); *Ferguson v. Glaze*, No. 268586, 2008 WL 314544, at *16 (Mich. Ct. App. Feb 5, 2008)  (no successor liability); *Shue & Voeks, Inc. v. Amenity Design & Mfg, Inc.*, 203 Mich. App. 124, 128 (no successor liability).

55.     Here, Corizon's pre-merger assets were not all transferred to CHS TX.[32] Significant assets and contracts remained with Corizon.[33]  *Cf. Stramaglia*, 377 F. App'x at 477 (finding mere continuation where transaction left "[predecessor's] creditors without recourse").  These include $1 million in cash, access to $4 million of additional funds under the Funding Agreement, and access to insurance policy proceeds.  These assets would not otherwise be available to Corizon's creditors if not for the 2022 Corporate Restructuring, including CHS TX's assumption of all of Corizon's secured debt.[34]

---

[32] *See* Plan of Merger, Schedule 3.01(a).

[33] *See* Plan of Merger, Schedule 3.01(b).

[34] *See* Plan of Merger, Schedule 4.01(a)(1).

## <u>CONCLUSION</u>

56.     CHS TX respectfully requests that this Court reverse the Order under Federal Rule

72(b)(3) and remand this case to the Magistrate Judge for further proceedings.


Dated: November 15, 2022

Respectfully submitted,

**BUTZEL LONG, P.C.**                              **WHITE & CASE LLP**

*/s/ Max J. Newman*                                */s/ Samuel P. Hershey*
By:  Max  J. Newman (P51483)          Samuel P. Hershey (admitted pro hac vice)


Attorneys for CHS TX, Inc.                     Attorneys for CHS TX, Inc.

201 W. Big Beaver Rd., Ste. 1200          1221 Avenue of the Americas
Troy, MI  48084                                    New York, NY 10020
Telephone: (248) 258-2907                    Telephone: (212) 819-8200
Email: newman@butzel.com                  Email: sam.hershey@whitecase.com

                                                        Jason N. Zakia (admitted pro hac vice)
                                                        111 South Wacker Drive, Suite 5100
                                                        Chicago, IL 60606
                                                        Telephone: (312) 881-5400
                                                        Email: jzakia@whitecase.com

25

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served via the

Court's ECF system this 15th day of November, 2022 upon all parties of record.

By: *<u>/s/ Max J. Newman</u>*