UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM KELLY,

        Plaintiff,

vs.

CORIZON HEALTH INC., et al.,

        Defendants.
_____/

Case No. 22-10589

HON. MARK A. GOLDSMITH

**OPINION & ORDER DENYING DEFENDANT CORIZON HEALTH INC.'S MOTION FOR SANCTIONS (DKT. 14)**

This matter is before the Court on Defendant Corizon Health Inc.'s (Corizon's) motion for sanctions (Dkt. 14). For the reasons set forth below, the Court denies the motion.[1]

## I. BACKGROUND

Plaintiff William Kelly brings this action against Corizon, which contracts with state and municipal governments to provide healthcare to incarcerated individuals, and various medical professionals, some of whom are employed by Corizon, alleging that he received constitutionally inadequate healthcare while he was incarcerated. Compl. (Dkt. 1). Specifically, he alleges that, due to a "compounding series" of acts and omissions by Defendants, the diagnosis and treatment of his renal cell carcinoma (kidney cancer) was "repeatedly postponed, deferred, and delayed," allowing his cancer to grow and spread. Id. ¶ 33. Kelly brings an Eighth Amendment claim pursuant to 42 U.S.C § 1983, asserting that Defendants violated his right to be free from cruel and

---

[1] Because oral argument will not aid the Court's decisional process, the motion will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the motion, the briefing includes Plaintiff William Kelly's response (Dkt. 16) and Corizon's reply (Dkt. 18).

unusual punishment, and claims of common-law negligence and medical malpractice. Id. ¶¶ 198–266.

Corizon has filed a motion for sanctions under Federal Rule of Civil Procedure 37 and the Court's inherent powers based on an alleged violation of a stipulated protective order (Dkt. 14). Corizon states that it and Plaintiff's counsel agreed to a stipulated protective order in another § 1983 case in this district: 19-13382, Jackson v. Corizon Health, Inc., et al. Mot. at 1. The protective order provides that any party that receives through the discovery process confidential information about Corizon will use that information only for the purposes of the Jackson litigation, will keep the information confidential, and will not disclose or disseminate the information. Stipulated Protective Order at 3 (Dkt. 14-2). According to Corizon, in response to a discovery request in Jackson, it produced confidential information on its internal policies and procedures, including its 2017 Utilization Management (UM) manual. Mot. at 2. Corizon contends that, in violation of the protective order, Kelly's counsel used information from the manual to form the basis of the complaint in this action. Id. at 4. In particular, Corizon states that paragraphs 83, 87, and 90 of the complaint contain information that could have been derived only from the information in the manual produced in Jackson.[2] Reply at 2 (Dkt. 18).

These paragraphs set forth facts about Corizon's internal policies for Corizon medical providers' referrals to specialists. The paragraphs allege that Corizon medical providers at Michigan prisons could order a prisoner to be transported to the emergency room (ER) in the case of a medical emergency without pre-approval, but they could not make any referrals to specialists

---

[2] Corizon initially argued the paragraphs 83 through 90 contained information from the manual. Mot. at 4. In its reply, however, it concedes that the information contained in paragraphs 84 through 86 and paragraphs 88 through 89 could have come from sources that were not subject to the protective order in Jackson. Reply at 2. Therefore, the Court discusses only the three paragraphs that Corizon maintains rely on the manual.

2

without pre-approval from Corizon's UM department. Compl. ¶ 83. The paragraphs also allege that Corizon monitored the number of specialist referrals that medical providers requested, that medical providers were expected to request such referrals only when absolutely necessary, and that a high number of referral requests indicated poor performance. Id. ¶¶ 87, 90. This process for specialist referrals is relevant to Kelly's Eighth Amendment claim: he alleges that Corizon's methods for monitoring and evaluating the performance of medical providers caused the medical providers who treated him—and who were aware that his symptoms possibly indicated kidney or bladder cancer—to hesitate to request a urology referral. Id. ¶ 90. According to Kelly, this hesitation caused at least a two-month delay in the diagnosis of his cancer. Id. ¶ 96. The allegations in paragraphs 83, 87, and 90 form the basis of Monell liability: Kelly asserts that Corizon had a "policy or custom . . . of discouraging providers from requesting specialty-care consultations unless absolutely necessary," which was the moving force behind the defendant medical providers' decision to wait two months before making a referral request. Id. ¶¶ 206–207.

Corizon requests that the Court hold Kelly's counsel in contempt; strike the complaint; require Kelly to refile the complaint without the improperly obtained information; preclude him from using in this action any information produced under the protective order in Jackson; and award such costs, attorney fees, or other monetary sanctions that the Court deems appropriate. Mot. at 9.

## II. DISCUSSION

Corizon seeks sanctions pursuant to Rule 37, which authorizes courts to impose sanctions for failure to comply with a discovery order, see Fed. R. Civ. P. 37(b)(2)(A), and the Court's inherent powers. Mot. at vii. "The party seeking sanctions under Rule 37 bears the burden to show that an opposing party failed to comply with discovery-related obligation[s] under the federal rules or a

3

court order." Middlebrooks v. Equifax, Inc., No. 1:20-cv-1825-SCJ-JSA, 2021 WL 8268127, at *3 (N.D. Ga. Dec. 14, 2021). "If the party can establish that a discovery violation occurred, that party then has the burden of establishing the appropriateness of a requested sanction at least by a preponderance of the evidence." DeepGulf Inc. v. Moszkowski, 333 F.R.D. 249, 253 (N.D. Fla. 2019). For certain sanctions, such as civil contempt sanctions, the moving party "must demonstrate by clear and convincing evidence that the opposing party knowingly violated a definite and specific order of the court." Gascho v. Global Fitness Holdings, LLC, 875 F.3d 795, 800 (6th Cir. 2017) (punctuation modified).

The Court finds that Corizon has not carried its initial burden of showing that Kelly's counsel violated the protective order in Jackson. Because the evidence is insufficient to demonstrate any misconduct by Kelly's counsel, no sanctions are warranted.

**A. Alleged Violation of the Protective Order in Jackson**

Corizon asserts that the information in paragraphs 83, 87, and 90 of the complaint was derived from the UM manual produced in Jackson. Reply at 2. Kelly compares the paragraphs of the complaint with the amended complaint in Jackson, which was filed before the parties exchanged any discovery in that case, asserting that the similarities show that his counsel knew of and pled the information at issue in this case before Corizon produced documents in Jackson. Resp. at 1–6.[3] He also points to various documents filed in other cases in this district, contending that these reveal that information about Corizon's UM policies and procedures has long been publicly available. Id. at 8–14.

The Court discusses in turn each paragraph of the complaint at issue.

---

[3] Kelly's counsel filed the amended complaint in Jackson on January 3, 2020 (No. 19-13382, Dkt. 12). Corizon produced the UM manual to Kelly's counsel on November 13, 2020. Mot. at 3.

4

1. **Paragraph 83**

Paragraph 83 of the complaint in this case alleges the following:

> At all times relevant to this action, Defendant Corizon's medical providers at Michigan prisons were allowed to order a prisoner transported to the ER in the case of a medical emergency. But they were not allowed to make any referrals to specialists without seeking and obtaining prior authorization from Defendant Corizon's Utilization Management department.

Compl. ¶ 83.

The amended complaint in Jackson alleges the following:

> The MPs [medical providers] employed by Corizon are typically Physician's Assistants or Nurse Practitioners. Corizon's MPs cannot refer a prisoner for any off-site care, such as appointments with specialists, MRIs, surgeries, etc. without obtaining prior approval from Corizon's Utilization Management office in Lansing, Michigan.
>
> When a Corizon MP wants to refer a prisoner to a specialist or surgeon, the MP fills out a "407 request" detailing the MP's clinical findings and reasons for requesting the referral.

Am. Compl. ¶¶ 30–31 (No. 19-13382, Dkt. 12).

Both complaints allege that medical providers at Corizon could not make referrals to specialists without obtaining prior approval from Corizon's UM department. The complaint in Jackson does not reference transportation to the ER. Corizon contends that the other publicly available documents attached to and cited in Kelly's response refer only to an incarcerated individual's need for outpatient specialty care, rather than other types of care such as emergent or inpatient. Reply at 3. Therefore, it states, while Kelly's counsel "may have been able to derive Corizon's review and alternative treatment plan process for approval of outpatient specialty referrals based on publicly available information, the dichotomy between that process and the process for ER visits comes directly from the documents produced in [Jackson]." Id.

5

But, as Kelly notes, documents describing Corizon's UM process for emergent medical needs have been filed in other cases in this district. A document titled "Michigan DOC and Quality Correctional Care of Michigan, PC Specialty Consultation (407) Standard Operating Protocol" was attached to a deposition in case number 16-13587, Estate of Franklin v. Heyns, et al. (E.D. Mich. 2016) (No. 16-13597, Dkt. 86-16). In a section that defines "emergent need," the document states that "[t]he patient's medical condition may require they be sent to the Emergency Department after notification of the on-call practitioner for evaluation and treatment." Michigan DOC and Quality Correctional Care of Michigan, PC Specialty Consultation (407) Standard Operating Protocol at PageID.12661 (Dkt. 16-15). In addition, a document titled "Introduction to Utilization Management," which was filed in case number 16-13587 (No. 16-13597, Dkt. 86-16) and case number 17-13581, Lashuay v. DeLine, et. al. (E.D. Mich. 2017) (No. 17-13581, Dkt. 113-11), states that "[i]npatient hospitalizations are pre-approved by the OMD [Outpatient Medical Director] prior to admission for all non-emergent admissions." Introduction to Utilization Management at PageID.3593 (Dkt. 16-16) (emphasis in original). Information about Corizon's policies for emergent care is publicly available, and one could infer from this information that pre-approval is not required for emergent care admissions.

Further, the manual produced in Jackson, which contains a section on policies for emergency services, see UM Manual at PageID.288–289 (Dkt. 15), does not explicitly state that prior approval is unnecessary to transport an individual to the ER. Rather, it states that "[i]n the event of an emergency, the patient should be sent to an emergency department without undue delay" and that it is the responsibility of the medical provider to discuss the case with the hospital ER physician to determine whether to admit the patient or send the patient back to the facility. Id. at PageID.288.

6

It is not apparent that the contrast between Corizon's process for outpatient specialty referrals and the process for ER visits could have come only from the UM manual.

2. **Paragraph 87**

Paragraph 87 of the complaint alleges the following:

> Corizon employees at Corizon's Brentwood, Tennessee headquarters monitored specialist-referral activity for the individual primary-care providers working in Michigan prisons, including the number of specialist referrals requested by each medical provider, and the percentage of each provider's requests that were "ATP'd" [resulted in an Alternative Treatment Plan].

Compl. ¶ 87.

The amended complaint in Jackson alleges the following:

> Corizon's Utilization Management Office for Michigan submits reports to corporate management detailing the number of 407 requests that are approved vs. ATP'd, with breakdowns by facility and by requesting [medical provider]. Dr. Papendick's supervisors base their assessments of his performance, at least in part, on the percentage of 407 requests that he approves.

Am. Compl. ¶¶ 38 (No. 19-13382, Dkt. 12).

The allegations in the two complaints—both of which state fundamentally that Corizon's corporate employees track individual medical providers' referrals and the percentage of those referrals that are approved or result in an ATP—are extremely similar.

In addition to pointing to the similarities between the two complaints, Kelly states that the fact that Corizon tracks ATP rates for individual providers has been available since the filing of the Corizon regional medical director's deposition transcript in 2020. Resp. at 8. That deposition was filed in a case in the Western District of Michigan, Case No. 19-00533, Spiller v. Stieve, et al. (W.D. Mich. 2019). In the deposition, the regional medical director stated the following:

> [W]e track to see what percentages people are getting of approvals and denials, because we want people to achieve something like a . . . 90 percent approval rate, so if they are getting, like, a 50 percent approval rate, then they are not doing something right. Either they are not filling it out right with the information that we

7

> need or they are asking for too many things that are just, you know, unnecessary, they are not doing the steps that could be done in the right order, so in that case, we would go back and try to retrain that person.

Lacey Dep. at PageID.542–543 (Dkt. 16-9). Thus, the fact that Corizon tracks and assigns importance to its individual medical providers' referrals and the percentage of referrals that result in an ATP is contained in publicly available documents. The difference in framing that Corizon points out—that the complaint in Jackson focuses on an individual provider, while the complaint in this case describes a global policy—may be attributed to differences in context between the two cases. As with paragraph 83, Corizon has not established that the allegations in paragraph 87 could have come only from the manual.

### 3. Paragraph 90

Paragraph 90 alleges the following:

> Both a high ATP rate and a high number of referral requests were indicators of poor job performance for medical providers working in Michigan prisons. Corizon's providers, such as Defendants Bohjanen and Kocha, were expected to request specialist referrals sparingly, and only when absolutely necessary.

Compl. ¶ 90.

The fact that a high ATP rate reflects poorly on the performance of a Corizon medical provider is evident from the Corizon regional medical director's testimony in Spiller, which stated that a 90% approval-of-referral rate is the goal and that 50% would indicate a problem. The allegation that Corizon providers were expected to request specialist referrals only when absolutely necessary is evident in the testimony of Dr. Papendick, Corizon's UM director, in case number 16-12113, Wright v. Sperling, et. al. (E.D. Mich. 2016) (No. 16-12113, Dkt. 77-7). In that case, Dr. Papendick was asked whether he had any criteria for determining whether some cases are referred to a specialist or given an alternative treatment plan. Papendick Dep. at PageID.2286 (Dkt. 16-10). He responded, "medical necessity," which he defined as "difficulty with activities of daily living,

8

risks to life or limb." Id. These depositions indicate that the relevant information—that a high ATP rate and number of referrals indicate an issue with an individual medical provider and that referrals were to be used in cases of medical necessity—was available before the parties exchanged documents in the Jackson litigation. Further, while Corizon identifies sections in the manual that show that medical providers were evaluated on the number of referrals, number of ATPs, and percentage of ATPs, it does not point to a place in the manual that states that a high ATP rate is an indicator of poor performance. Therefore, Corizon has not shown that these allegations must have come from the manual.

The Court finds that Corizon has not shown that Kelly's counsel violated the stipulated protective order in Jackson by using the UM manual to form the basis of his complaint in this action.

**B. Sanctions**

Because the evidence does not establish that Kelly's counsel violated the stipulated protective order in Jackson, sanctions are not warranted.

### III. CONCLUSION

For the reasons set forth above, the Court denies Corizon's motion for sanctions (Dkt. 14).

SO ORDERED.

Dated: February 16, 2023　　　　　　　　　　s/Mark A. Goldsmith
　　　　Detroit, Michigan　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　　　United States District Judge